Firm I.D. 33179                                          527-1-8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**JUDGE LEFKOW**
**MAGISTRATE JUDGE SCHENKIER**

| | |
|---|---|
| PLATINUMTEL COMMUNICATIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ZEFCOM, LLC d/b/a TELISPIRE, TELISPIRE, INC., U.S. MOBILE, INC., EZ STREAM, INC., QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO, and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**J. N.**

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, PLATINUMTEL COMMUNICATIONS, LLC, by its attorneys, John P. Lynch, Jr., Brian A. O'Gallagher, Jessica L. Lesniewski and CREMER, KOPON, SHAUGHNESSY & SPINA, LLC, and for its Complaint against Defendants, ZEFCOM, LLC d/b/a TELISPIRE, U.S. MOBILE, INC., EZ STREAM, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO, and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO states as follows:

## NATURE OF THE ACTION

1.     This action arises from a systematic scheme by the Defendants to deceive and/or mislead consumers who use pre-paid wireless voice and data services to the Defendants' economic advantage.  In violation of Section 43(a) of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act, the Defendants have intentionally, willfully and deceitfully not provided consumers of their services with the wireless minutes that the Defendants promised them.

2.     The consumer fraud perpetrated by the Defendants injures both the consumer and this Plaintiff, in that the Plaintiff competes with the Defendants in the same industry and market.

3.     The Defendants' deceptive practices have damaged consumers because the consumer ultimately pays a higher rate per minute for the calls than promised by the Defendants, because the number of minutes actually delivered is substantially less than represented.

4.     The Plaintiff is injured because consumers have elected not to purchase the Plaintiff's services because the Defendants' plans are represented as being less expensive, i.e. more minutes are being provided at a lower cost, according to the Defendants' misrepresentations.

5.     The prepaid wireless business includes in its target market teenagers, individuals with credit problems and those in economically less affluent communities.  As such, the Defendants' deception preys on those segments of our population that are often less sophisticated in commercial matters such as this, or are otherwise less likely to challenge consumer fraud.

## PARTIES AND JURISDICTION

6.     Plaintiff, PLATINUMTEL COMMUNICATIONS, LLC ("PlatinumTel") is a Delaware Corporation with its principal place of business located at 8106 South Roberts Road,

2

Justice, Illinois 60458 and is in the business of providing prepaid wireless voice and data services to consumers.

7.    On information and belief, Defendant ZEFCOM, LLC d/b/a TELISPIRE ("Telispire"), is a limited liability company with its principal place of business at Galaxy Center 2, Suite G, 4309 Jacksboro Highway, Wichita Falls, Texas 76302, and is a nationwide provider of wireless voice and data services, providing private label branding to companies including, but not limited to, Defendants U.S. MOBILE, INC. and EZ STREAM, INC. who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

8.    In the alternative, on information and belief, Defendant TELISPIRE, INC., ("Telispire"), is a foreign corporation with its principal place of business at Galaxy Center 2, Suite G, 4309 Jacksboro Highway, Wichita Falls, Texas 76302, and is a nationwide provider of wireless voice and data services, providing private label branding to companies including, but not limited to, Defendants U.S. MOBILE, INC. and EZ STREAM, INC. who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

9.    On information and belief, Defendant U.S. MOBILE, INC. ("U.S. Mobile") is or was an Illinois corporation with its principal place of business located at 350 North Cicero, Chicago, Illinois 60644.

10.    On information and belief, Defendant RAMSEY NATOUR is doing business as U.S. MOBILE, INC., and is an Illinois resident residing at 16317 South Terrace Court, Orland Hills, Illinois 60477.

11.    On information and belief, Defendant EZ STREAM, INC. ("EZ Stream") is an Illinois corporation with its principal place of business located at 1880 West Fullerton Avenue, Building A, Lot J, Chicago, Illinois 60614.

12.     On information and belief, Defendant QUICK COMM, INC. a/k/a QUICK COM, INC., is or was an Illinois corporation with its principal place of business located at 12316 S. Halsted, Calumet Park, Illinois 60409 and/or 5245 West Madison, Chicago, Illinois 60644 and/or 358 North Laramie, Chicago, Illinois 60644.

13.     On information and belief, Defendant QUICK COM II, INC., is or was an Illinois corporation with its principal place of business located at 4042 West Lawrence, Chicago, Illinois 60630.

14.     On    information    and    belief,    Defendant    QUICK    COM    CELLULAR CORPORATION, is or was an Illinois corporation with its principal place of business located 3755 West 26th Street, Suite B, Chicago, Illinois 60623.

15.     On information and belief, Defendant EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO is an Illinois corporation with its principal place of business located at 7957 S. Kilbourn, Chicago, Illinois 60652.

16.     On information and belief, Defendant RAMSEY NATOUR is doing business as QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and/or EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO and is an Illinois resident residing at 16317 South Terrace Court, Orland Hills, Illinois 60477.

17.     On information and belief, Defendants U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO are all owned and operated by Defendant RAMSEY NATOUR and, therefore, share common ownership, marketing and advertising plans and schemes.

18.    As Defendants are engaged in a massive fraud on the public, this is a complaint for false advertising, and unfair and deceptive trade practices under: the Trademark Act of 1946, 15 USC §§ 1051 et seq. (The Lanham Act); 815 ILCS 505/1 (The Illinois Consumer Fraud and Deceptive Business Practices Act); 815 ILCS 510/1 (The Illinois Uniform Deceptive Trade Practices Act); and for civil conspiracy.

19.    This Court has original jurisdiction over this action under 15 USC §§ 1116, 1121, and 1125. This Court has jurisdiction over the state law claims pursuant to 28 USC §§ 1338(b) and 1367(a), and the doctrine of pendent jurisdiction.

20.    This Court has personal jurisdiction over the Defendants because they have their principal places of business in this district, live in this district, have committed acts of false advertising and unfair competition and deceptive trade practices in this district, and/or have sufficient minimum contacts with this district.

21.    Venue is proper in this Court pursuant to 28 USC §§ 1391 because a substantial part of the injury, acts of false advertising, and deceptive trade practices took place in this district.

22.    PlatinumTel is a well recognized and respected provider of retail prepaid wireless voice and data services. It has been in the prepaid wireless services industry since 2002.

23.    Telispire is a nationwide provider of wireless voice and data services, providing private label branding of such services to companies including, but not limited to, Defendants U.S. Mobile, EZ Stream and Natour who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

22.    U.S. Mobile is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff.

23.    EZ Stream is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff.

24.    Natour is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff

25.    Defendants QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO, (hereinafter "Quick Com entities") and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO (hereinafter "Natour"), sell U.S. Mobile cell phones and U.S. Mobile-sponsored wireless voice and data services to consumers throughout retail stores in the Chicago area.

26.    PlatinumTel's cell phones and services are sold nationwide at authorized retail stores and on its Online Store. The Plaintiff has devoted a substantial amount of time, effort, money and resources to the promotion, advertising, and marketing of its pre-paid wireless services and continues to do so. A combination of the low price and high quality of PlatinumTel's services generated considerable consumer loyalty. However, this loyalty is being lost as a result of the Defendants' unlawful activities.

27.    The purchaser of prepaid wireless services buys access to wireless telephone minutes and as the consumer uses up the minutes he or she has or should have the ability to access through the internet a Call Detail Report ("CDR") that identifies the minutes remaining along with details regarding each call placed. The detail includes the date, time and length of the call along with the phone number called. Since the services are prepaid, the consumer does not receive invoices with detailed information regarding the calls.

28.    Once the consumer has exhausted the minutes purchased, he or she has the option of purchasing additional minutes to add to his or her prepaid wireless program.

29.    On information and belief, in 2005, EZ Stream entered the prepaid wireless services market in the Chicago region.  Shortly thereafter, PlatinumTel began to notice EZ Stream advertisements that made little or no economic sense.  Prepaid wireless minutes were being offered by EZ Stream at prices that simply could not be profitable.

30.    On information and belief, in 2006, U.S. Mobile and Natour entered the prepaid wireless services market in the Chicago region.  Shortly thereafter, PlatinumTel began to notice U.S. Mobile advertisements that made little or no economic sense.  U.S. Mobile and Natour were offering prepaid wireless minutes at prices that simply could not be profitable.

31.    PlatinumTel began to investigate the services provided by U.S. Mobile, Natour and EZ Stream.  It purchased phones from U.S. Mobile and EZ Stream along with their prepaid wireless services.

32.    The wireless services provided to PlatinumTel by U.S. Mobile and EZ Stream were purchased by those Defendants from Telispire.  On information and belief, Telispire was aware of the prepaid wireless programs being offered by Defendants U.S. Mobile and EZ Stream through, among other sources, billing and reconciliation documents its received from Sprint PCS. Like PlatinumTel, Telispire acquires its minutes from Sprint PCS.

33.    U.S. Mobile represents to its customers that a one-minute, per day connection fee would be assessed to the consumer.  In other words, one minute would be automatically deducted from the account per day.   U.S. Mobile, however, refuses to produce a copy of its terms and conditions to consumers and directs its customers to obtain the terms and conditions from the dealer who sold the customers the phone.  When attempts are made to obtain those

terms and conditions from dealers, dealers advise there are no such terms and conditions.    No terms and conditions for U.S. Mobile prepaid services appear on its website.

34.    In many circumstances, the dealers advising U.S. Mobile customers that there are no terms and conditions for U.S. Mobile cellular programs are Quick Com entities owned and operated by Natour, who also owns and operates U.S. Mobile.

35.    U.S. Mobile significantly and routinely misrepresents the minutes available under its prepaid wireless programs to consumers including:  imposing more than a one minute, per day connection fee in violation of its policies, contrary to its representations and without notice to the customer; arbitrarily adding time to calls, without notice to the customer, such that the minutes erode from the program more quickly than represented; and not providing the minutes promised under its various plans.  This fraud generates a significant profit for U.S. Mobile.

36.    U.S. Mobile also misleads its customers into believing that it has a Customer Service Program, when in facts the customer service number listed on its website is frequently disconnected as it has been since at least February 8, 2008.

37.    Many if not most of the U.S. Mobile phones and prepaid programs are advertised and sold by Quick Com entities at its retail stores throughout Chicago.  As such, the Quick Com entities provide a venue for the fraudulent scheme, and participate in and profit from it.

38.    EZ Stream engages in some of the same conduct as U.S. Mobile.  EZ Stream represents in advertisements that "calls made or received during peak time are billed at a one minute connection fee on all Talk More plans."  However, EZ Stream routinely, arbitrarily, willfully and without notice to its customers imposes on its customers a connection fee of substantially more than one minute.

39.    EZ Stream significantly and routinely misrepresents the minutes available under its prepaid wireless programs including:  imposing more than a one minute connection fee in violation of its policies and without notice to the customer; arbitrarily adding time to calls, without notice to the customer, such that the minutes erode from the program more quickly than represented; and not providing the minutes promised under its various plans.  This fraud generates a significant profit for EZ Stream.

40.    After years of investment and building a reputation of providing high quality pre-paid wireless services, PlatinumTel became a leading prepaid wireless provider in the United States.  However, since the entry of EZ Stream, U.S. Mobile and Natour into the prepaid wireless market in the Chicago region and their employment of fraudulent advertising in their marketing plans, PlatinumTel's revenue and profitability have declined considerably.  PlatinumTel posted substantial, seven-figure losses in 2005 and 2006 as a result of this activity.

41.    Because PlatinumTel cannot compete with Defendants' fraudulent and deceptive marketing efforts, and will not engage in similar conduct, it has been forced to terminate the employment of nearly half of its employees over the last 24 months.

42.    Upon discovering the fraudulent activity of the Defendants, PlatinumTel contacted Telispire, which has knowledge of the Defendants' scheme and is economically benefiting from it.  PlatinumTel contacted Curtis Knobloch, Telispire's CEO, and requested that Telispire intervene and stop the conduct of U.S. Mobile and EZ Stream.  Telispire has refused to take any action and instead continues to provide services to U.S. Mobile and EZ Stream in furtherance of their fraud and accept profits that result from it and, therefore, is aiding and abetting this fraudulent scheme.

43.    Unless the Defendants' conduct is stopped immediately, PlatinumTel will continue to lose millions of dollars in sales, its market share and perhaps be forced to close. The Defendants' consumer fraud is also causing irreparable harm to PlatinumTel's reputation. Consumers have been and continue to be misled into believing that PlatinumTel's services are not as economically competitive as those of the Defendants, but those consumers are not receiving the minutes the Defendants claim they will provide. They will also continue to be harmed without an appropriate injunction.

### FACTS SPECIFIC TO EZ STREAM

44.    Upon information and belief, EZ Stream creates, disseminates and distributes advertising to promote the sale of its prepaid wireless services.

45.    Upon information and belief, EZ Stream's advertising consists of point of purchase posters and literature, flyers, website advertisements, packaging and voice prompts.

46.    Upon information and belief, EZ Stream's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

47.    Upon information and belief, the minutes actually delivered to consumers by EZ Stream are significantly less than those marketed in EZ Stream advertising and, as such, said advertising is false, misleading and deceptive.

### FACTS SPECIFIC TO U.S. MOBILE

48.    Upon information and belief, U.S. Mobile creates, disseminates and distributes advertising to promote the sale of its prepaid wireless services.

49.    Upon information and belief, U.S. Mobile's advertising consists of point of purchase posters and literature, website advertisements, and voice prompts.

50.    Upon information and belief, U.S. Mobile's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost and provide certain customer services.

51.    Upon information and belief, the minutes actually delivered to consumers by U.S. Mobil are significantly less than those marketed in U.S. Mobile advertising and, as such, said advertising is false, misleading and deceptive.

52.    Upon information and belief, U.S. Mobile does not provide the represented customer services.

## FACTS SPECIFIC TO THE QUICK COM ENTITIES

53.    Upon information and belief, the Quick Com entities create, disseminate and distribute advertising to promote the sale of the prepaid wireless services and cell phones on behalf of and in concert with U.S. Mobile.

54.    Upon information and belief, the Quick Com entities' advertising on behalf of and in concert with U.S. Mobile consists of sales presentations, point of purchase posters, literature, advertisements, and packaging.

55.    Upon information and belief, the Quick Com entities' advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

56.    Upon information and belief, the Quick Com entities assist U.S. Mobile in its effort to avoid consumer questions and complaints.

57.    Upon information and belief, the minutes actually delivered to consumers by U.S. Mobile are significantly less than those marketed in the Quick Com entities' advertising on behalf of and in concert with U.S. Mobile and, as such, said advertising is false, misleading and deceptive.

58.    Upon information and belief, the Quick Com entities' profit from and participate in the false, misleading and deceptive advertising and marketing in question.

## FACTS SPECIFIC TO RAMSEY NATOUR

59.    Upon information and belief, Natour creates, disseminates and distributes advertising to promote the sale of the prepaid wireless services and cell phones on behalf of and in concert with entities including U.S. Mobile and the Quick Com entities, which are businesses owned and operated by him.

60.    Upon information and belief, the Natour advertising on behalf of and in concert with entities including U.S. Mobile and the Quick Com entities consists of point of purchase posters, literature, advertisements, packaging and voice prompts.

61.    Upon information and belief, the Natour's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

62.    Upon information and belief, the minutes actually delivered to consumers by Natour are significantly less than those marketed in said advertising and, as such, said advertising is false, misleading and deceptive.

63.    Upon information and belief, the Quick Com entities' profit from and participate in the false, misleading and deceptive advertising and marketing in question.

## FACTS SPECIFIC TO TELISPIRE

64.    Upon information and belief, Telispire is and has been aware of the false advertising of U.S. Mobile and EZ Stream relative to their prepaid wireless services from numerous sources.

65.     Upon information and belief, Telispire knowingly benefits financially from the sales of U.S. Mobile and EZ Stream programs and their false advertising scheme to defraud consumers of wireless minutes.

66.     Upon information and belief, that despite its knowledge of the fraudulent practices of U.S. Mobile and EZ Stream, and the fact that it benefits from the fraudulent activity, Telispire has refused to take any action to stop it and, rather, continues to aid and abet the Defendants' fraudulent scheme.

67.     Upon information and belief, since Telispire sells the wireless minutes to the other Defendants it has the ability and obligation to stop that activity.

## COUNT I
## False Advertising under the Lanham Act

68.     Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1 through 67 as if fully set forth herein.

69.     Defendants' advertising and connection with prepaid wireless services constitutes use in commercial advertising or promotion of false and misleading descriptions of fact, and false and misleading representations of fact, which misrepresent the characteristics and qualities of their respective goods and services, in violation of 15 USC §§ 1125(a)(1).

70.     Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

71.     PlatinumTel is without an adequate remedy at law.

72.     As a result of Defendants' actions alleged above, PlatinumTel has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and

will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

**COUNT II**
**<u>Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act</u>**

73.    PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 72 as if fully set forth herein.

74.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with their respective prepaid wireless services in violation of 815 ILCS 505/2.

75.    Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

76.    Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers, and the Plaintiff, as to the true characteristics and qualities of Defendants' products.

77.    PlatinumTel is without an adequate remedy at law.

78.    As a result of Defendants' acts as alleged above, consumers of the State of Illinois have been deceived and mislead.

79.    As a result of Defendants' acts as alleged above, PlatinumTel has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation, and good will, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising and marketing practices.

## COUNT III
## Violations of the Illinois Uniform Deceptive Trade Practices Act

80.    PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with their respective prepaid wireless services in violation of 815 ILCS 510/2.

82.    Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

83.    Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

84.    PlatinumTel is without an adequate remedy at law.

85.    As a result of Defendants' actions alleged above, consumers of the State of Illinois have been deceived and mislead.  As a result of Defendants' actions alleged above, PlatinumTel has suffered and will continued to suffer irreparable harm in the form of damage and injury to its business, reputation, and good will, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT IV
## Civil Conspiracy – Telispire and EZ Stream

86.    PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 85 as if fully set forth herein.

87.    Telispire and EZ Stream have agreed and conspired to engage in the fraud on the consumers as described in this complaint.

15

88.    Telispire and EZ Stream have willfully become members of this conspiracy.

89.    Both Telispire and EZ Stream have committed overt acts in furtherance of the conspiracy to defraud consumers, as described in this complaint, and have benefited therefrom.

90.    PlatinumTel has been damages as a direct and proximate result of this conspiracy.

## COUNT V
### Civil Conspiracy – Telispire, U.S. Mobile and Quick Com Entities

91.    PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 85 as if fully set forth herein.

92.    Telispire, U.S. Mobile, the Quick Com entities and Natour have agreed and conspired to engage in the fraud on the consumers as described in this complaint.

93.    Telispire, U.S. Mobile the Quick Com entities and Natour have willfully become members of this conspiracy.

94.    Telispire, U.S. Mobile the Quick Com entities and Natour have committed overt acts in furtherance of the conspiracy to defraud consumers, as described in this complaint, and have benefited therefrom.

95.    PlatinumTel has been damages as a direct and proximate result of this conspiracy.

### RELIEF SOUGHT

WHEREFORE, Plaintiff asks this Court to:

(1)    Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendants and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of all Defendants, and all those in privity, concert or participation with Defendants; from

(a)    Using any false or misleading description that can or is likely to misrepresent to the trade or public, or individual members thereof, the characteristics or qualities of any product or service advertised, promoted, offered or sold by Defendants, including but not limited to descriptions on or in point-of-purchase advertising, sales presentations, television commercials, radio commercials, print advertising, and voice prompts;

16

(b)     Engaging in any other activity constituting unfair competition with the plaintiff;

(c)     Destroying or otherwise disposing of any of the aforementioned advertising or any documents pertaining to such advertising or to any sales of products or services or purchase of wireless minutes or services heretofore made;

(d)     Assisting, aiding, or abetting other persons or business entities in engaging or performing any of the activities enumerated in this complaint.

(2)     Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendant, Telispire and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns, and all those in privity, concert or participation with Telispire, from providing any wireless minutes, services or otherwise engaging in business with Defendants U.S. Mobile, Natour and EZ Stream and any of their principals, officers, agents, servants, employees, successors and assigns.

(3)     Find that the Defendants have used false representations and competed unfairly under federal law and state law, and have damaged Plaintiff by the acts complained of herein.

(4)     Issue an order requiring recall of all false advertising distributed and requiring Defendants to issue notices to all current distributors and sellers of their products and all distributors with whom they have done business in the past 12 months in order to effect said recall.

(5)     Issue an order requiring the Defendants to provide a copy of said injunctive order to all the Defendants' current distributors and sellers of their products and all distributors and sellers of their products with whom they have done business in the past 12 months.

(6)     Direct Defendants to file with this Court and serve on counsel for Plaintiffs, within fourteen (14) days after entry of the Preliminary Injunction, a written report setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

(7)     Direct Defendants to produce to the Plaintiff all contract, billing, reconciliation and all other documentation reflecting their business relationship, transactions, and customs and practices with each other and Sprint PCS from January 1, 2005 to the present, within fourteen (14) days.

(8)     Find Defendants liable and award to the Plaintiff monetary relief in amount to be fixed by the Court in its discretion as just, including all damages sustained by the

Plaintiff, and/or all of Defendants' profits or gains of any kind resulting from their unlawful practices, said amount to be trebled and exemplary damages in view of the intentional nature of the acts complained of herein.

(9)     Order an accounting and render judgment against Defendants for all profits wrongfully derived by Defendants by reason of their false statements and representations, conspiracy and unfair competition.

(10)    Award all damages to compensate Plaintiff for Defendants' acts of false statements and representations, conspiracy and unfair competition.

(11)    Require Defendants to pay Plaintiff's prejudgment and post judgment interest at the applicable rates on all amounts awarded.

(12)    Require Defendants to disseminate corrective advertising, at Defendants' expense, that informs consumers, the trade and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and or require Defendants to pay Plaintiff's costs in producing and disseminating such corrective advertising.

(13)    Require Defendants to pay Plaintiff's costs and attorneys fees incurred in the prosecution of this action.

(14)    Permanently enjoin Ramsey Natour, U.S Mobile, the Quick Com entities and EZ Stream from participating in the prepaid wireless market anywhere in the continental United States.

(15)    Grant to Plaintiff such other and further relief, as this Court may deem just, proper and equitable under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims so triable.

CREMER, KOPON, SHAUGHNESSY & SPINA, LLC.


By: _____ /s/ John P. Lynch, Jr. _____
                    Attorneys for Plaintiff


John P. Lynch, Jr.
Brian A. O'Gallagher
Jessica L. Lesniewski
CREMER KOPON SHAUGHNESSY & SPINA, LLC
180 North La Salle Street
Suite 3300
Chicago, Illinois 60601
(312) 726-3800 – Telephone
(312) 726-3818 – Facsimile
#184422

## **PROOF OF SERVICE**

I, the undersigned attorney, certify that I filed this Proof of Service and the documents identified herein through the Court's ECM/CF document filing system, which will cause electronic notification of the filing to be sent to all counsel of record.


/s/ John P. Lynch, Jr.