JPL/BAO/JLL                    Firm I.D. 33179                    526-1-8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 2 1 2008

JUDGE JOAN H. LEFKOW
UNITED STATES DISTRICT COURT

| | |
|---|---|
| PLATINUMTEL    COMMUNICATIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No.: 08 CV 1062 |
| ) | |
| ZEFCOM, LLC d/b/a TELISPIRE, ) | |
| TELISPIRE, INC., U.S. MOBILE, INC., EZ ) | |
| STREAM, INC., QUICK COM, INC., ) | |
| QUICK COM II, INC., QUICK COM ) | |
| CELLULAR CORPORATION, EZ COM, ) | |
| CHICAGO, INC., d/b/a QUICK COM ) | |
| CHICAGO, and RAMSEY NATOUR, ) | |
| individually and d/b/a U.S. MOBILE, INC., ) | |
| QUICK COMM, INC. a/k/a QUICK COM, ) | |
| INC., QUICK COM II, INC., QUICK COM ) | |
| CELLULAR    CORPORATION    and/or ) | |
| QUICK COM CHICAGO, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff, PLATINUMTEL COMMUNICATIONS, LLC, (hereinafter "PlatinumTel"), by its attorneys, John P. Lynch, Jr., Brian A. O'Gallagher, Jessica L. Lesniewski and CREMER, KOPON, SHAUGHNESSY & SPINA, LLC, respectfully requests that this Honorable Court enter an Order granting a Temporary Restraining Order and Preliminary Injunction against Defendants, ZEFCOM, LLC, d/b/a TELISPIRE (hereinafter "Telispire"), U.S. MOBILE INC., EZ STREAM, INC., QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR

CORPORATION, EZ COM CHICAGO, INC., d/b/a QUICK COM CHICAGO, and RAMSEY NATOUR individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO. In support of its Emergency Motion, PlatinumTel states as follows:

## I.    FACTUAL BACKGROUND

PlatinumTel is a provider of retail prepaid wireless voice and data services, and has been in that industry since 2002. PlatinumTel has a direct contract with Sprint PCS that enables PlatinumTel to support wireless services PlatinumTel sells to consumers through Sprint's nationwide cellular network. (*See ¶ 3 of Affidavit of Omar M. Aqel, Vice President of PlatinumTel; the Affidavit of Omar M. Aqel is attached hereto as **Exhibit 1**.*) PlatinumTel sells its services at retails stores throughout the Chicago area and through its online store.

Telispire is a nationwide provider of wireless voice and data services, providing private label branding of such services to companies including, but not limited to, Defendants, EZ STREAM, INC., U.S. MOBILE INC. and/or RAMSEY NATOUR, who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel. Telispire also supports the support wireless services it sells to consumers through Sprint's nationwide cellular network. *See ¶ 7 of Affidavit of Omar M. Aqel.* Telispire shares a similar place in the prepaid wireless market as PlatinumTel in that it resells wireless minutes and is, therefore, a competitor.

Like PlatinumTel, and in competition with it, EZ Stream and U.S. Mobile sell their prepaid wireless services and minutes (purchased from Telispire) at retails stores throughout the Chicago area. U.S. Mobile's sales are conducted through "Quick Com" stores that are owned and operated by Ramsey Natour, who also owns and operates U.S. Mobile. As such, U.S. Mobile and the Quick Com entities share common ownership, marketing and advertising plans and schemes.

2

Through its sales force and contacts with wireless retailers, PlatinumTel learned of the highly suspect rate plans that EZ Stream and U.S. Mobile were selling. Based on PlatinumTel's general knowledge of the industry and specific knowledge regarding the cost of supporting wireless services through Sprint, PlatinumTel did not believe it was possible for EZ Stream and U.S. Mobile to actually charge the rates they claimed to charge their customers and make any profit. *See ¶ 7 of Affidavit of Omar M. Aqel.* Because of this concern, PlatinumTel conducted an investigation headed by its Vice President, Omar M. Aqel, in which four PlatinumTel employees purchased cell phones and rate plans marketed by EZ Stream and U.S. Mobile. *Id.*

PlatinumTel found through this investigation that EZ Stream and U.S. Mobile are engaged in a fraud on consumers in this industry. U.S. Mobile's efforts are supported by retail stores operating under the Quick Com label. U.S. Mobile and these Quick Com stores are owned and operated by Ramsey Natour. Moreover, PlatinumTel informed Telispire of this conduct and Telispire continues to support these fraudulent programs. This conduct must be stopped.

### A.    Conduct of EZ Stream

In November of 2007, PlatinumTel employees purchased three wireless cellular phones, along with prepaid service from EZ Stream. *See ¶8 of Affidavit of Omar M. Aqel.* The cellular phones were all represented to be sold with a certain amount of prepaid minutes. *Id.* PlatinumTel began timing the calls made to and from the phones to see if EZ Stream was accurately reporting the length of calls. *Id.* Between November of 2007, and January of 2008, certain calls were made between the phones purchased at EZ Stream and a cellular telephone belonging to a PlatinumTel employee with T-Mobile wireless service. *Id.* at ¶ 9.

EZ Stream maintains a website containing information on the length of calls that are made using EZ Stream's wireless services. Only Retail dealers of EZ Stream can access this

website; consumers can only access the website with the assistance of EZ Stream dealers. *Id.* at ¶ 11. T-Mobile maintains a website that shows the length of calls made to or from T-Mobile phones and consumers can access this website directly. *Id.*

Upon checking the websites maintained by EZ Stream and T-Mobile to determine what each company had recorded as to call lengths, it was clear that EZ had overstated the length of at least 33 calls made or received. *Id.* at pgs. 3-7. As to one of the cellular phones purchased, EZ Stream overstated the length of seven calls. *Id.* at ¶ 12. The seven calls in question had actual durations of approximately 59 minutes and EZ Stream's website indicated that the calls had expended 90 minutes of usage. *Id.* at ¶ 13. EZ Stream's terms and conditions indicate that a one-minute, per call, connection fee will be charged to all calls. *Id.* Since seven calls were made, connection fees should have been added in the amount of seven minutes, bringing the total number of minutes expended to 66. *Id.*

When Areej Malley, an employee of PlatinumTel, contacted EZ Stream's customer service line to protest EZ Stream's calculations, Ms. Malley was put into contact with a woman who represented herself as an EZ Stream "manager". (*See ¶10 of Affidavit of Areej Malley; the Affidavit of Areej Malley is attached hereto as Exhibit 2.*) Ms. Malley informed the "manager" that EZ Stream's calculations of minute use were incorrect. *Id.* The "manager" stated that Ms. Malley should contact Sprint directly and the "manager" also said that she would send an email to Sprint. *Id.* Ms. Malley asked to speak to a supervisor but the "manager" stated that she was the only person present in the customer service office. Ms. Malley also asked if she could leave a voicemail for EZ Stream's owner, but the "manager said that the owner did not have a voice mailbox. *Id.*

As stated in the Affidavits of Omar M. Aqel and Areej Malley, EZ Stream also overstated the amount of minutes expended on the other two cellular phones purchased from EZ Stream by PlatinumTel. EZ Stream is routinely and willfully misrepresenting the minutes available under its prepaid wireless programs.

### B.    Conduct of U.S. Mobile, Quick Com Entities and Ramsey Natour

Ramsey Natour, owns and operates U.S. Mobile, as well as the Quick Com entities. The Quick Com entities work on behalf of, and in conjunction with, U.S. Mobile advertising and selling U.S. Mobile wireless services.

In November of 2007, a PlatinumTel employee purchased two cellular phones with prepaid services from U.S. Mobile. *Id.* at ¶¶ 20-24. The cellular phones were represented to be sold with a certain amount of prepaid minutes. *Id.* PlatinumTel began timing the calls made to and from the phones to see if U.S. Mobile was accurately reporting the length of calls made. *Id.* at ¶ 8. Between November of 2007, and January of 2008, certain calls were made between the phones purchased at U.S. Mobile and a cellular telephone belonging to a PlatinumTel employee with T-Mobile wireless service. *Id.* at ¶ 9.

U.S. Mobile maintains a website where its customers can monitor how many prepaid wireless minutes have been used. Id. at ¶ 21. U.S. Mobile employs a one-minute daily connection fee. *Id.* at ¶ 22. One of the cellular phones purchased by PlatinumTel from U.S. Mobile was sold with a purported amount of 250 prepaid minutes. The cellular phone was used between December 20, 2007, and January 11, 2008, and therefore the maximum daily connection fee charged should have been 23 minutes. *Id.* PlatinumTel expended 33 minutes of actual usage on the cellular phone. *Id.* By combining the 23 minutes that result from U.S. Mobile's connection fee, with the 33 minutes of PlatinumTel's actual usage, a total of 56 minutes should

5

have been deducted from the original 250, leaving 194 minutes. *Id.* However, as of January 11, 2008, U.S. Mobile's website showed a total of 146 minutes available left for the cellular phone in question. *Id.* at ¶ 23.

U.S. Mobile also overstated the amount of minutes expended on the other cellular phone purchased from U.S. Mobile by PlatinumTel. U.S. Mobile and Natour are routinely and willfully misrepresenting the minutes available under its prepaid wireless programs. Quick Com is supporting this fraudulent scheme.

### C.    Conduct of Telispire

The prepaid wireless services sold by EZ Stream and U.S. Mobile are provided and supported by Telispire. *See ¶26 of Affidavit of Omar M. Aqel.* On December 12, 2007, Omar Aqel, Vice President of PlatinumTel, wrote to CEO Telispire Curt Knoblach and supplied him with documentation demonstrating the fraudulent practices of EZ Stream and U.S. Mobile; Telispire provided no response. *Id.* at ¶ 27. Telispire is, and has been, aware of the false advertising and deceptive tactics employed by U.S. Mobile and EZ Stream, and Telispire continues to participate in the fraud and profit from it.

### D.    PlatinumTel Damages

Since 2002, PlatinumTel has invested significant amounts of time, money and resources into the advertising, promotion and overall success of its prepaid wireless business. By combining reasonable pricing with outstanding customer service, PlatinumTel has become a well-recognized and respected retail provider of nationwide, prepaid wireless voice and data services. PlatinumTel is seeking temporary and preliminary injunctive relief to staunch the irreparable harm that it will suffer if Defendants are permitted to continue their deceptive and fraudulent business practices.

PlatinumTel refuses to engage in the same dishonest marketing and sales tactics engaged in by the Defendants and, as a result, cannot fairly compete in the prepaid wireless marketplace. Consequently, PlatinumTel has been forced to terminate nearly half of its workforce over the last two years and has lost millions of dollars in sales and revenue. PlatinumTel is also losing the business goodwill it has spent the last 6 years cultivating, and will continue to lose that goodwill as customers will continue to be lured by the deceptive, advertisements and offers of the Defendants. PlatinumTel has already suffered significant damages as a result of the Defendants' wrongful conduct. If the Defendants are permitted to continue to mislead consumers by significantly and routinely misrepresenting the prepaid wireless minutes provided under their prepaid wireless programs, PlatinumTel will suffer irreparable harm that cannot be adequately redressed by monetary damages. The following discussion of law demonstrates that immediate injunctive relief is both appropriate and necessary.

## II.     LEGAL ARGUMENT

The purpose of a temporary restraining order or a preliminary injunction is to "minimize hardship to the parties pending the ultimate resolution of the lawsuit." *AlliedSignal, Inc., v. B.F. Goodrich Co.,* 183 F.3d 492, 493 (7th Cir. 1999) citing *Kellas v. Lane,* 923 F.2d 492, 493 (7th Cir. 1990). The standards for obtaining a temporary restraining order and a preliminary injunction are identical. *Nav-Aids Ltd., v. Nav-Aids USA, Inc.,* 2001 WL 1298719, *4 (N.D. Ill. 2001). A temporary restraining order or preliminary injunction should be granted when the movant can show: (1) it has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. *Ty, Inc., v. The Jones Group, Inc.,* 237 F.3d 891, 895 (7th Cir. 2001).

If a court is satisfied that the three conditions for injunctive relief have been met, it must then consider any irreparable harm to the non-moving party, and balance any such harm with the irreparable harm the moving party will suffer if relief is denied. *Nav-Aids Ltd., v. Nav-Aids USA, Inc.*, 2001 WL 1298719, *4 (N.D. Ill. 2001). Lastly, the public interest must be considered. *Id.* When ruling on requests for injunctive relief, a sliding scale is employed; the more likely that the plaintiff will succeed on the merits, the less the balance of harms need favor him. *Id.*

## A.    PLATINUMTEL IS LIKELY TO SUCCEED ON THE MERITS

The threshold in demonstrating a likelihood of success on the merits is low and a plaintiff need only show a better than negligible chance of succeeding. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). PlatinumTel far exceeds this threshold and accordingly, should be granted its requested injunctive relief.

### 1.    Lanham Act Violations

The Defendants' have violated, and continue to violate, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B). Section 43(a) provides in pertinent part:

> *"Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term...or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities or geographic origin of his or her product or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."*

To establish a claim for false advertising under Section 43(a), a plaintiff must prove that: (1) the defendants made a false statement of fact in a commercial advertisement about its or another's product; (2) the statement actually deceives or is likely to deceive a substantial

segment of the advertisement's audience; (3) the deception is material in that it is likely to influence the purchasing decision; (4) the defendants caused the statement to enter interstate commerce and (5) the defendants' statement injured or is likely to injure the plaintiff by direct diversion of sales from it to defendants or by loss of goodwill. *Energizer Holding, Inc., v. Duracell, Inc.*, 2002 WL 10676888, * 4 (N.D. Ill. 2002).

The Defendants continuously create false product literature and advertisements related to commercial prepaid wireless services. The false advertisements and literature are found in The Defendants' retail stores throughout the Chicagoland area. *See ¶ 9 of Affidavit of Omar M. Aqel; See ¶ 3 of Affidavit of Areej Malley.* Consumers who view the Defendants' advertisements and literature are deceived into believing that they will receive the amount of prepaid wireless minutes stated in those materials. They do not. Once consumers purchase the Defendants' wireless services, the Defendants employ a minute reduction scheme in which the amount of minutes actually used by consumers is overstated through the Defendants' false reporting techniques. Consumers do not actually receive the amount of prepaid wireless minutes guaranteed in advertisements and literature. *See Affidavits of Omar M. Aqel and Areej Malley.*

There can be no doubt that consumers are deceived by the Defendants' misrepresentations as to the amount of prepaid minutes being purchased. PlatinumTel's own investigation reveals the nature of the Defendants' fraud. *See Affidavits of Omar M. Aqel and Areej Malley.* The Defendants' misrepresentations are material and undoubtedly influence consumer decisions as to purchasing. Through their fraudulent activities, the Defendants represent to consumers that they are offering prepaid wireless minutes at costs and quantities that the Plaintiff cannot match, while the Defendants are not providing the prepaid minutes they

claim to provide.   This fraud understandably and unfairly directs business away from the Plaintiff to the Defendants.

PlatinumTel has demonstrated a "more than negligible" chance of succeeding on its Lanham Act claim.

### 2.   Violations of The Illinois Consumer Fraud And Deceptive Business Practices Act

The Defendants have violated, and continue to violate, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, which states in pertinent part:

> *"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment...in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby..."*

The Illinois Consumer Fraud and Deceptive Business Practices Act was intended to protect Illinois consumers and prohibit fraud in the conduct of any trade or commerce. *Fry v. UAL Corp.*, 136 F.R.D. 626, 637 (N.D. Ill. 1991).  When a dispute involves businesses that are not consumers of each other's products, a plaintiff must establish that a defendant has engaged in fraudulent or deceptive conduct that involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns. *Empire Home Services, Inc., v. Carpet America, Inc.*, 274 Ill.App.3d 666, 669, 653 N.E.2d 852 (1st Dist. 1995).

Defendants have engaged in fraudulent advertising and business practices that effect not only PlatinumTel, but also all consumers in the prepaid wireless marketplace who purchase products from the Defendants.  The evidence resulting from PlatinumTel's investigation into the Defendants' wrongful activities clearly establishes that the Defendants engage in conduct, which

implicates consumer protection concerns. *See Affidavits of Omar M. Aqel and Areej Malley.* Defendants' misrepresentations, which cause PlatinumTel to lose business and profits, render the Defendants liable under the Illinois Consumer Fraud and Deceptive Business Practices Act. *See BASF Corp. v. World Trading Co. Inc.*, 41 F.3d 1081 (7th Cir. 1994)(holding defendant, a business competitor of plaintiff, liable under Illinois Consumer Fraud Act and Lanham Act for misrepresentations in product advertising that diverted business and profits from plaintiff).

PlatinumTel has demonstrated a "more than negligible" chance of succeeding on its claim under the Illinois Consumer Fraud and Deceptive Business Practices Act.

### 3.    Violations of the Illinois Uniform Deceptive Trade Practices Act

The Defendants have violated and continue to violate, the Illinois Uniform Deceptive Trade Practices Act (hereinafter "IUDTPA"), 815 ILCS 510/2, which states in pertinent part:

> *"A person engages in deceptive trade practice when, in the course of his or her business, vocation or occupation the person...(5) represents that goods or services have sponsorship...benefits, or quantities that they do not have...(9) advertises goods or services with intent not to sell them as advertised."*

The IUDPTA is intended to deal with conduct involving either misleading trade identification or false or deceiving advertising. *Industrial Specialty Chemicals, Inc., v. Cummins Engine Co., Inc.*, 902 F. Supp. 805, 812 (N.D. Ill 1995). The IUDPTA is directed toward unfair competition and acts that unreasonably interfere with another's conduct of business. *Id.* For a violation of the IUDPTA to occur, a plaintiff must show that a representation in the course of business is false, misleading or deceptive. *Lynch Ford Inc., v. Ford Motor Inc.*, 957 F.Supp.142, 147 (N. D. Ill. 1997).

Defendants engage in false and misleading advertising tactics by misrepresenting the number of prepaid wireless minutes that will be provided to consumers. In the context of the IUDPTA, Illinois courts have consistently held that an advertisement is deceptive if it creates the likelihood of deceit or has the capacity to deceive. *Cavoto v. Chicago National League Baseball Club*, 2006 WL 2291181 *12 (1st Dist. 2006). The Defendants' advertisements, which represent to consumers that they will receive a specific amount of prepaid wireless, are clearly deceiving since the Defendants' purposefully reduce the amount of prepaid minutes provided to consumers by overstating usage amounts. Moreover, the repetitive and continual nature of the Defendants' deceptive practices evidences the Defendants' intent not to sell prepaid wireless services and products as advertised.

PlatinumTel has demonstrated a "more than negligible" chance of succeeding on its claim under IUDPTA.

### 4.    The Civil Conspiracy

PlatinumTel has alleged two separate counts of Civil Conspiracy against the Defendants. In order to succeed on a claim for civil conspiracy, a plaintiff must establish the existence of an agreement between two or more persons and a tortious act committed in furtherance of that agreement. *McClure v. Owens Corning Fiberglas Corporation*, 188 Ill.2d 102, 133, 720 N.E.2d 242 (Ill. 1999). Civil conspiracy is an intentional tort and requires proof that a defendant knowingly and voluntarily participates in a common scheme to commit an unlawful act or a lawful act in an unlawful manner. *Id.* A civil conspiracy can be proven with only circumstantial evidence. *Id.*

Telispire provides prepaid wireless services to EZ Stream who in turn sells prepaid wireless services to consumers. Telispire is aware of the advertised amount of minutes and the

12

actual amount of minutes consumers receive. As evidenced by the Affidavits of Omar M. Aqel and Areej Malley, and the discussion set forth above, Telispire and EZ Stream, Inc. have acted in agreement in violation of The Lanham Act, the Illinois Consumer Fraud and the IUDPTA. Telispire is aware of, profits from and perpetuates the fraudulent activities if EZ Stream, Inc.

Telispire also provides prepaid wireless services to U.S. Mobile and Ramsey Natour. Telispire is aware of the advertised amount of minutes and the actual amount of minutes consumers receive through the prepaid wireless services Telispire provides to Ramsey Natour and Natour's business entities. As evidenced by the Affidavits Omar M. Aqel and Areej Malley, and the discussions set forth above, Telispire and Ramsey Natour, U.S. Mobile, Inc., Quick Com, Inc., Quick Com II, Inc., Quick Com Cellular Corporation and EZ Com Chicago, Inc., have acted in agreement in violation of the Lanham Act, the Illinois Consumer Fraud and the IUDPTA. Telispire is aware of, profits from and perpetuates the fraudulent activities of these Defendants.

PlatinumTel has demonstrated a "more than negligible" chance of succeeding on its claims of Civil Conspiracy.

**B.    PLATINUMTEL WILL SUFFER IRREPARABLE HARM IF DEFENDANTS ARE NOT ENJOINED IMMEDIATELY**

The Defendants must be enjoined from engaging in these fraudulent business practices that result in damage to PlatinumTel's goodwill and ability to succeed in the prepaid wireless marketplace. The deceptive sales and advertising techniques that the Defendants have employed, and continue to employ, allow the Defendants to compete unfairly against PlatinumTel. In the context of claims asserted under the Illinois Uniform Deceptive Trade Practices Act, "unfair competition likely to extend into the future is deemed to cause irreparable injury and consequently, equity has jurisdiction of an action to prevent unfair competition and to grant relief

13

by way of injunction." *Bonner v. Westbound Records, Inc.*, 49 Ill.App.3d 543, 551, 364 N.E.2d 570 (1st Dist. 1977). Furthermore, loss of goodwill qualifies as irreparable harm. *American Food & Vending Corporation v. United Parcel Service Oasis Supply*, 2003 WL 256865 *2 (N. D. Ill 2003). PlatinumTel has already suffered a loss of goodwill and will continue to do so, as consumers in the prepaid wireless marketplace are diverted from PlatinumTel to Defendants.

### C.   PLATINUMTEL HAS NO ADEQUATE REMEDY AT LAW

PlatinumTel will continue to suffer losses in sales, profits and goodwill if Defendants are not enjoined from engaging in false and deceptive conduct. The ongoing damages to PlatinumTel's goodwill are difficult to assess and leave PlatinumTel with no adequate remedy at law. See *American Food & Vending Corporation v. United Parcel Service Oasis Supply*, 2003 WL 256865 *2 (N. D. Ill 2003)(holding that goodwill damages are difficult to assess and therefore such damages can constitute an inadequate remedy at law in and of themselves). Moreover, as a direct result of Defendants' conduct, not only has PlatinumTel lost goodwill, but also lost sales and profits, and has been forced to terminate nearly half of its workforce. Consequently, PlatinumTel is at risk of failing if the Defendants are not enjoined from their fraudulent conduct. A potential threat to a business's ability to survive constitutes inadequate remedy at law and irreparable harm. *See Cleveland Hair Clinic, Inc., v. Puig*, 968 F.Supp.1227, 1246 (N.D. Ill. 1996).

### D.   THE BALANCE OF HARMS AND PUBLIC INTEREST FACTORS WEIGH DECIDELY IN PLATINUMTEL'S FAVOR.

The Defendants are not likely to suffer from pecuniary damages if they are enjoined from carrying out fraudulent and deceptive advertising and sales tactics. They will merely be forced to compete fairly in the prepaid wireless marketplace. On the other hand, PlatinumTel faces significant harm if Defendants are allowed to continue in their deceptive activities.

14

The public has an interest in business marketplaces free from fraud, deception and unfair competition. The fraud committed upon the public by the Defendants causes undue harm and damages to consumers, as well as PlatinumTel. Accordingly, Defendants' wrongful conduct must be enjoined.

### III.    CONCLUSION

The Defendants have engaged in fraudulent and deceptive advertising and sales tactics by significantly and routinely misrepresenting the amount of prepaid wireless minutes provided to consumers. The Defendants' false advertising and literature misleads consumers into purchasing products and services they do not receive. PlatinumTel has suffered irreparable harm as a result of the Defendants' minute reduction scheme and no adequate remedy at law exists. Therefore, PlatinumTel respectfully requests the Court grant its Emergency Motion For Temporary Restraining Order and Preliminary Injunction, to enjoin Defendants from current and future wrongful conduct.

CREMER, KOPON, SHAUGHNESSY & SPINA, LLC.


By: _____ /s/ John P. Lynch, Jr. _____
           Attorneys for Plaintiff

John P. Lynch, Jr.
Brian A. O'Gallagher
Jessica L. Lesniewski
CREMER KOPON SHAUGHNESSY & SPINA, LLC
180 North La Salle Street
Suite 3300
Chicago, Illinois 60601
(312) 726-3800 – Telephone
(312) 726-3818 – Facsimile
185519

## **PROOF OF SERVICE**

I, the undersigned attorney, certify that I filed this Proof of Service and the documents identified herein through the Court's ECM/CF document filing system, which will cause electronic notification of the filing to be sent to all counsel of record.

/s/ John P. Lynch, Jr.

JPL/BAO/JLL                     Firm I.D. 33179                      526-1-8-38

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

PLATINUMTEL     COMMUNICATIONS,   )
LLC,   )
  )
      Plaintiff,   )
  )
  )    Court No.: 08 CV 1062
v.   )
  )
ZEFCOM,   LLC   d/b/a   TELISPIRE,   )
TELISPIRE, INC., U.S. MOBILE, INC., EZ   )
STREAM,   INC.,   QUICK   COM,   INC.,   )
QUICK   COM   II,   INC.,   QUICK   COM   )
CELLULAR   CORPORATION,   EZ   COM,   )
CHICAGO,   INC.,   d/b/a   QUICK   COM   )
CHICAGO,   and   RAMSEY   NATOUR,   )
individually and d/b/a U.S. MOBILE, INC.,   )
QUICK COMM, INC. a/k/a QUICK COM,   )
INC., QUICK COM II, INC., QUICK COM   )
CELLULAR   CORPORATION   and/or   )
QUICK COM CHICAGO,   )
  )
      Defendants.   )

## Affidavit of Omar M. Aqel

Omar M. Aqel, being first duly sworn on his oath, deposes and states as follows:

1.     I am currently employed as the Vice President of PlatinumTel Communications LLC (hereinafter referred to as "PlatinumTel") and have held that position since PlatinumTel began operating in 2002.

2.     PlatinumTel is in the business of providing pre-paid wireless services. As part of those services, PlatinumTel sells cellular phones and rate plans that allow consumers to use cell phones on a "pay as you go" basis. Under the "pay as you go" structure, a consumer pays a fixed fee and in return obtains a set number of minutes of cellular phone service. For example, under


EXHIBIT
1

PlatinumTel's basic "starter plan", a consumer will obtain 250 minutes of cell phone use over 30 days (plus unlimited cell phone minutes on nights and weekends) in exchange for a payment of $35.00.

3.    PlatinumTel has a direct contract with Sprint PCS that enables PlatinumTel to support the wireless services PlatinumTel sells to consumers through Sprint's nationwide cellular network.

4.    Although PlatinumTel has the capacity to provide services to consumers on a nationwide basis, the majority of PlatinumTel's customers reside in the Chicago metropolitan area. PlatinumTel markets its products and services in a number of retail stores located in and around Chicago.

5.    During 2005, PlatinumTel became aware that a new business entity known as "EZ Stream" (hereinafter referred to as "EZ") was selling pre-paid wireless services in the Chicago area. During 2006, PlatinumTel became aware that a new business entity known as "US Mobile PCS" (hereinafter referred to as "US") was also selling pre-paid wireless services in the Chicago area.

6.    On information and belief, the services EZ and US sell are supported by a company known as Telispire. Telispire, like PlatinumTel, has a direct contract with Sprint that allows Telispire to support the consumer services sold on its behalf through Sprint's nationwide cellular network.

7.    Through its sales force and its contacts with retailers of wireless services in the Chicago area, PlatinumTel learned information regarding the rate plans that EZ and US were selling. Based on PlatinumTel's general knowledge of the industry and specific knowledge regarding the cost of supporting wireless services through Sprint, PlatinumTel did not believe it

was possible for EZ and US to actually charge the rates they claimed to charge. Essentially, EZ and US were selling "pay as you go" cell phone plans at below market rates. PlatinumTel knew the cost of obtaining support through Sprint would essentially make it impossible for EZ or US to make a profit if they were actually providing the minutes they claimed to provide for the prices they were charging. For example, attached to this Affidavit, as **Exhibit A** is a copy of an advertising flier EZ has distributed to retailers in the Chicago area. It claims that EZ is selling 100 minutes of cell phone use during peak hours, plus unlimited cell phone use on nights and weekends, for $5.00.

8.    Based on these suspicions, PlatinumTel conducted an investigation of the services provided by EZ and US. Four PlatinumTel employees, Aracely Morales, Areej Malley, Nadia Deeb and Naheel Hinnawi purchased cell phones and rate plans marketed by EZ and US. Thereafter, PlatinumTel timed the calls made to and from the phones to see if EZ and US were accurately reporting the length of the calls that were made using their products.

9.    For $50.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 559-1140. For $60.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 494- 4532. For $90.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 665- 8063. All three phones were purchased on November 21, 2007 from the Phone Plus store at 2454 S. California Avenue in Chicago, Illinois. A receipt for the purchase of the phones is attached hereto as **Exhibit B.**

10.    Between December 27, 2007 and January 30, 2008, certain calls were made between the (773) 494- 4532 number and another cellular phone a PlatinumTel employee maintained through T-Mobile.

3

11.    EZ maintains a website that shows EZ's records as to the length of calls that were made using EZ's wireless services. Retail dealers of EZ products can access this website. Only with the assistance of a dealer of EZ's products, a consumer of EZ's services can use this website to monitor how many usage minutes have been expended under the phone or rate plan the consumer has purchased. T-Mobile maintains a website (which consumers can access directly without a dealer's assistance) that shows the length of calls made to or from a T-Mobile phone.

12.    PlatinumTel checked the websites maintained by EZ and T-Mobile in order to see what each company had recorded as to the length of the calls between the (773) 494- 4532 number provided by EZ and the T-Mobile phone.

13.    After checking these records, it was clear that EZ had overstated the length of seven separate calls. The seven calls in question had an actual duration of approximately 59 minutes. EZ's website indicated that these calls had expended 90 minutes of cellular service. As part of its usage terms and conditions, EZ charges a one-minute per call connection fee (regardless of the call's actual length). Since 7 calls were made, the one-minute per call connection fee should have only added 7 minutes to the 59 minute actual duration of the calls. Thus, EZ's records should have shown a maximum of 66 minutes was expended for the seven calls in question. Instead, as noted above, EZ's website showed 90 minutes were expended, which made a total overcharge of 24 minutes. EZ's website recorded the times for the individual calls as follows: a call that lasted 11 minutes was shown as lasting 16 minutes; two calls that lasted 4 minutes and 23 seconds each were both shown as lasting 8 minutes; one call that lasted 4 minutes and 47 seconds was shown as lasting 8 minutes; one call that lasted 8 minutes and 18 seconds was shown as lasting 14 minutes; one call that lasted 7 minutes and 14 seconds was shown as lasting 12 minutes; and, one call that lasted 15 minutes and 16 seconds was shown as

lasting 24 minutes.

14.    Attached to this affidavit as **Exhibit C** is a copy of the page from EZ's website that shows EZ's records as to the purported length of the calls described in paragraph 13. Attached to the affidavit as **Exhibit D** is a copy of the page from T-Mobile's website that shows T-Mobile's records as to the length of the calls described in paragraph 13. Attached to this affidavit as **Exhibit E** is a spreadsheet prepared by PlatinumTel that summarizes the discrepancy in the records and calculates what PlatinumTel believes to be the overcharge by EZ on the seven calls in question.

15.    Platinum's investigation also revealed that EZ inaccurately calculated the minutes in connection with nine calls that were made between November 29, 2007 and December 10, 2007 using the phone with the (773) 494- 4532 number. The nine calls in question lasted a total of approximately 24 minutes. However, EZ's website indicated that 46 minutes were used during these calls. Even after EZ's one-minute per call connection fee is factored in, a maximum amount of 33 minutes should have been expended in connection with the calls. Attached to this affidavit as **Exhibit F** is a copy of the page from EZ's website that shows EZ's records as to the purported length of the nine calls described in this paragraph. Attached to this affidavit as **Exhibit G** is a spreadsheet prepared by PlatinumTel that shows (1) when each of the nine calls was made, (2) the actual length of each call and (3) the length of the call as shown by EZ's website.

16.    As part of its investigation, PlatinumTel also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 559-1140. EZ's website shows that on November 27, 2007, two calls were made from the (773) 559-1140 number within a very short time of each other. The first call was commenced at 12:13:04 p.m. The second call

was commenced at 12:14:48, which is 1 minute and 44 seconds after the first call was commenced. EZ's website showed that 4 minutes were expended with each call (see attached **Exhibit H**). Even factoring in EZ's one-minute per call connection fee, EZ's recording of the minutes that were expended on the first call cannot be correct. The first call lasted a maximum of 1 minute and 44 seconds, but EZ's records show 4 minutes being used.

17.     PlatinumTel employee Areej Malley called EZ's customer service line to protest EZ's calculation of minutes used for the call made at 12:13:04 p.m on November 27, 2007. Ms. Malley was put in contact with a woman named "Marlene" who represented she was a "manager" at EZ. Ms. Malley explained to Marlene that EZ's calculation of the minutes used for the call in question was clearly inaccurate. Marlene directed Ms. Malley to take up the matter with Sprint and also indicated that she would send an e-mail to Sprint regarding the billing error. Ms. Malley asked to speak to Marlene's superior but Marlene indicated she was the only person present in customer service office. Ms. Malley asked if she could leave a voice mail message for EZ's owner, but Marlene indicated EZ's owner did not have a voice mailbox.

18.     As part of its investigation, PlatinumTel also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 655-8063. Attached to this affidavit as **Exhibit I** is a copy of a page from EZ's website that purports to show the minutes used by this phone during the period of November 23, 2007 to December 11, 2007. PlatinumTel monitored the actual duration of the calls made using the phone during this time period. EZ's website overstated the minutes used on a total of seventeen calls that were made during that time period. The actual duration of the seventeen calls was 64 minutes. Even including EZ's one minute per call connection fee, the maximum amount of minutes used in connection with the seventeen calls should have been 82 minutes. EZ's website inaccurately

showed 102 minutes were used in connection with the seventeen calls. Attached to this affidavit as **Exhibit J** is a spreadsheet prepared by PlatinumTel that shows (1) when each of the seventeen calls was made, (2) the actual length of each call and (3) the length of the call as shown by EZ stream's website.

19.     In addition to the conversation described in paragraph 15 above, PlatinumTel's employees have contacted EZ's customer service department on several occasions to complain about the overcharging described above.   On each occasion, EZ's customer service representatives insisted that no overcharging was taking place.

20.     As noted above, PlatinumTel also conducted an investigation of the services provided by US.  A PlatinumTel employee purchased a cellular phone from US that was assigned the cellular phone number of (773) 953-3761.  It was represented to PlatinumTel that 250 minutes of cell phone access during peak hours accompanied the purchase of the phone.

21.     US maintains a website where a consumer of US's services can monitor how many minutes have been used under the phone or plan purchased from US. As of January 11, 2008, US's website showed 146 minutes were remaining from the 250 minutes that were originally included in the purchase of the phone with the (773) 953-3761 number.

22.     During the period between December 20, 2007 and January 11, 2008, a total of 15 calls were made to or from the (773) 953-3761 number.  Those calls lasted a maximum of 33 minutes.  The US plan also has a "one minute daily connection fee." Between December 20, 2007 and January 11, 2008, the maximum daily connection fee that could be charged was 23 minutes (one minute per day).  Combining the 23 minute daily connection fee with the 33 minutes of actual usage, US's records should have shown a maximum of 56 minutes used under the plan for the time period between December 20, 2007 and January 11, 2008. Deducting the

56 minutes used from the 250 minutes purchased should have left a balance of 194 available minutes.

23.     Instead however, as of January 11, 2008, US's website showed a total of 146 available minutes left for the number (see copies of pages from US's website that were printed on January 11, 2008 attached hereto as **Exhibit K**). Therefore, US deducted 48 more minutes than it should have from the plan during the period between December 20, 2007 and January 11, 2008. Attached to this affidavit as **Exhibit L** is a spreadsheet prepared by PlatinumTel that shows the calls that were made from to from the (773) 953-3761 number between the December 21, 2007 and January 11, 2008 and the proper calculation of the declining balance that should have been made by US.

24.     Also as a part of its investigation, a PlatinumTel employee purchased a separate phone from US and was assigned the cellular phone number of (773) 953-3715. 250 minutes of use during peak hours were included with the purchase.

25.     For the period of December 20, 2007 to January 19, 2008, PlatinumTel monitored the calls made to and from the (773) 953-3715 number. During this period, only 8 calls were made and these calls had a combined duration of 14 minutes. The maximum daily connection fee that could be charged during this period was 31 minutes (one minute per day). Thus, the combined total of minutes that could be deducted from the minutes purchased was 45. However, as of January 19, 2008, US's website showed a balance of only 150 minutes remaining in the plan, indicating that 100 minutes had been deducted. Thus, US overstated the deduction by over 50 minutes.

26.     As noted above, EZ and US can only provide their services through Telispire, because Telispire has contractual access to Sprint's nationwide cellular network.

27. I have alerted Telispire to the fact that EZ and US are overstating the minutes used in the plans that EZ and US are selling to consumers. On December 12, 2007, I wrote to Telispire representative Curtis Knobloch regarding this issue and supplied him with documentation demonstrating the inaccurate billing practices that are being employed by EZ and US. As of the date of this affidavit, neither Mr. Knobloch nor anyone else at Telispire has indicated to me that Telispire is taking any steps to halt the inaccurate billing practices employed by EZ and US.

28. The inaccurate billing practices described above are enabling EZ and US to represent to consumers in the Chicago metropolitan area that EZ and US can provide pre-paid wireless services at prices that PlatinumTel cannot match. In practice however, EZ and US are overstating the minutes their customers use so EZ and US do not ultimately provide cell phone minutes at the prices they claim to provide them. In this manner, EZ and US are charging higher rates than they claim to charge.

29. In addition to the non-standard rates EZ and US claim to charge, they also sell rate plans without requiring the initial purchase of a phone. I have never known any company in the wireless service industry besides US and EZ to sell minutes without first requiring the purchase of a phone. I believe at least one reason US and EZ do this is to motivate existing PlatinumTel customers to switch over to rate plans provided by US and EZ. Since the wireless services marketed by US and EZ are (like those sold by PlatinumTel) ultimately supported by Sprint, it is possible to alter phones that were initially sold by PlatinumTel so that they become compatible with rate plans sold by US and/or EZ.

30. The false representations EZ and US have made regarding the price of their services have enabled them to acquire a substantial share of the market for pre-paid wireless

services that exists in the Chicago area. The share of this market that has been acquired by EZ and US has caused PlatinumTel's market share to decrease dramatically.

31.    After years of investment and building a reputation of providing high quality pre-paid wireless services, PlatinumTel became a leading prepaid wireless provider in the United States. However, since the entry of EZ and US into this prepaid market, and their employment of fraudulent advertising in their marketing plans, PlatinumTel's revenue and profitability have declined considerably. PlatinumTel posted substantial, seven-figure losses in 2005 and 2006 as a result of this illegal activity and has significantly reduced its work force as a consequence.

32.    In my opinion, the presence of EZ and US in the market, and their deceptive representations as to the price of the services they provide, is responsible for all or most of the drop off in sales revenue PlatinumTel has experienced. Every day that EZ and US remain in business and continue to make false representations about the price of the wireless services they provide causes PlatinumTel to suffer additional injury.

33.    On information and belief, Ramsey Natour owns and operates US as a corporation or a sole proprietorship. Our investigation suggests that the company may be dissolved. On information and belief, Ramsey Natour also owns and operates the "Quick Com entities" referenced in the complaint filed in this action as corporations or sole proprietorships. Our investigation suggests that many or all of the Quick Com entities are dissolved corporations.

34.    I am an adult over the age of eighteen, have reviewed the COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF filed herein, along with this affidavit, in detail and hereby attest that the factual statements contained therein are true and accurate to the best of my knowledge.

FURTHER AFFIANT SAITH NOT.

_____
Omar M. Aqel

SUBSCRIBED and SWORN to before me this

__15__ day of _February_____ , 2008.

_____
Notary Public

> **OFFICIAL SEAL**
> **MARGARET FURCZON**
> Notary Public - State of Illinois
> My Commission Expires Apr 13, 2010

526-1\#184415.doc

![EZSTREAM]







**$20**
Sanyo 4700
Speakerphone

**$35**
Samsung A460
Flip Phone

**$60**
Sanyo 5300
Camera

**$65**
LG 5225
Color Display

**$75**
Samsung A620
Camera w/ Flash

# LOWEST PRICES!

## Starter Card Promotion

# 100 Minutes

# Free Nights & Weekends



# PHONE PURCHASE NOT REQUIRED!

# (888) 845-4729

EXHIBIT

A

Customer Receipt



*cell phones R us !*

| Invoice #: | 5716 | | | Invoice Type: Pre-Paid Activation | |
|---|---|---|---|---|---|
| Invoice Date: | | | | | |
| | | PHONE PLACE INC. 2454 S CALIFORNIA AVE. | | | |
| Store | | CHICAGO, IL 60607 | | | |
| | | Phone: 773-247-7722 | | | |
| | | Fax: 773-247-7722 | | | |
| Sales Rep | | A. BABB | | | |

| Customer Information | Home Phone: (773) 012-1230 |
|---|---|
| prepaid customer | Work Phone: |
| 2454 s california | Mobile Phone: (773) 012-1230 |
| CHICAGO, IL 60608 | |

| Item | ESN # | Price ($) | Sales Tax ($) |
|---|---|---|---|
| LG EZ STREAM LG 1200 | 0681266/074 | 50.00 | EXEMPT |
| Mobile Number: 7735591140  Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |
| MOTOROLA C290 | 02702380299 | 50.00 | EXEMPT |
| Mobile Number: 7734944532  Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |
| SANYO 9300 EZ STREAM | 00408331251 | 99.00 | EXEMPT |
| Mobile Number: 7736558963  Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |

| | | |
|---|---|---|
| | Subtotal: | $200.00 |
| | Tax: | $0.00 |
| | Total | $200.00 |
| | Amount Tendered | $200.00 |
| | ChangeDue: | $0.00 |

| Payment Type | Amount | PaymentDate | Employee Who Entered Payment | Comment |
|---|---|---|---|---|
| Cash | $200.00 | 11/21/2007 5:41:35 PM | A. BABB | |
| Total Non-Terms Payments | **$200.00** | | | |
| Total Returned in Credit Memos | **$0.00** | | | |
| Total Currently Due | **$0.00** | | | |

2 LOCATIONS TO SERVE YOU BETTER : 2871 W CERMAK RD, CHICAGO, IL 60623 TEL 773-376-1600 2454 S CALIFORNIA AVE, CHICAGO, IL 60608 TEL 773-247-7722

Crimson Data Control Systems, Inc.  All rights reserved. Data Control Systems Proprietary and Confidential.
Terms of Use can be found at http://www.datacontrolsystems.com

**EXHIBIT**

*tabbies*  B



EZSTREAM    EZ STREAM MAINTENANCE AND RESOURCE TOOL

ACTIVATE ACCOUNT    **LOOKUP ACCOUNT**

LOOKUP ACCOUNT

REPORTS

Welcome, ▮▮▮▮▮▮▮▮▮ ! |  Logout
Dealer Bank Balance: ▮▮▮▮▮▮

**Phone No:** (773)494-4532

**Subcriber Usage Details:** 12/27/2007 to 01/30/2008

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 12/27/2007 | 09:52:54 AM | (708)307-5607 | (773)494-4532 | 3 |
| 12/27/2007 | 10:58:28 AM | (708)307-5607 | (773)494-4532 | 16 |
| 12/27/2007 | 01:08:30 PM | (708)307-5607 | (773)494-4532 | 3 |
| 01/11/2008 | 11:10:54 AM | (773)494-4532 | (708)307-5607 | 3 |
| 01/11/2008 | 11:13:00 AM | (708)307-5607 | (773)494-4532 | 3 |
| 01/11/2008 | 01:19:12 PM | (773)494-4532 | (708)307-5607 | 5 |
| 01/14/2008 | 11:44:32 AM | (708)307-5607 | (773)494-4532 | 4 |
| 01/14/2008 | 02:20:33 PM | (708)307-5607 | (773)494-4532 | 2 |
| 01/14/2008 | 02:28:54 PM | (708)307-5607 | (773)494-4532 | 4 |
| 01/28/2008 | 01:48:08 PM | (708)466-7681 | (773)494-4532 | 2 |
| 01/28/2008 | 01:50:59 PM | (708)636-3113 | (773)494-4532 | 4 |
| 01/28/2008 | 01:54:50 PM | (708)839-4100 | (773)494-4532 | 4 |
| 01/28/2008 | 02:12:03 PM | (708)307-5607 | (773)494-4532 | 3 |
| 01/28/2008 | 02:13:56 PM | (708)698-4112 | (773)494-4532 | 4 |

**EXHIBIT**

C

EZStream/POS Dealer Lookup Tools

| | | | | |
|---|---|---|---|---|
| 01/28/2008 | 02:23:41 PM | (708)415-1130 | (773)494-4532 | 4 |
| 01/28/2008 | 04:21:09 PM | (708)499-1999 | (773)494-4532 | 5 |
| ✱ 01/30/2008 | 12:20:59 PM | (708)307-5607 | (773)494-4532 | 8 |
| ✱ 01/30/2008 | 01:24:50 PM | (708)307-5607 | (773)494-4532 | 8 |
| ✱ 01/30/2008 | 01:34:34 PM | (773)494-4532 | (708)307-5607 | 8 |
| ✱ 01/30/2008 | 01:53:17 PM | (708)307-5607 | (773)494-4532 | 14 |
| ✱ 01/30/2008 | 02:04:00 PM | (708)307-5607 | (773)494-4532 | 12 |
| ✱ 01/30/2008 | 02:14:24 PM | (708)307-5607 | (773)494-4532 | 74 |

**Total Minutes:** **143**

Copyright 2006 EZSTREAM Inc. All Rights Reserved

EZSmart Version 1.0.0.10   Date 03/03/06

1/30/2008 3:07 PM



My **T--Mobile·**

Not your phone?    Tour My T-Mobile

Hello: NAHEEL HINNAWI
708.307.5607

**CURRENT BALANCE**

Total due by 12/20/07

## $162.98



Paperless Billing

**FREQUENTLY ASKED QUESTIONS**

■ **MINUTES USED**

Account number    273080503

Mobile number

Summary of Unbilled Services as of    12/27/07 10:58:44 AM

| Feature | Time Period | Type | Included | Used | Remaining |
|---|---|---|---|---|---|
| | | Messages | | | |
| | | Minutes | | | |
| | | Minutes | | | |
| | | Messages | | | |
| | | Minutes | | | |
| | | Minutes | | | |
| | | Minutes | | | |

Unbilled charges exceeding your rate plan

| Category | Units | Amount |
|---|---|---|
| Messages | 8 | $1.20 |
| **Total unbilled charges exceeding your rate plan:** | | **$1.20** |

| Date | Destination | Time | Number | Call Type | Minutes |
|---|---|---|---|---|---|
| | | 10:25 AM | 773-494-4592 | | 11 |
| | | 6:55 AM | 773-494-4592 | | 2 |
| | | 9:34 AM | 312-927-0910 | | 9 |
| | | | 773-455-1522 | | 1 |
| | | | 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 | | 2 |
| | | | 708-307-5607 | | 1 |
| | | | 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 | | 1 |
| | | | 773-455-8704 | | 1 |
| | | | 708-150-4228 | | 1 |
| | | | 708-150-4798 | | 1 |
| | | | 708-150-4798 | | 1 |
| | | | 909-972-2938 | | |
| | | | 773-763-5648 | | |
| | | | 773-763-5961 | | 1 |
| | | | 773-493-9647 | | 1 |
| | | | 800-599-0028 | | |
| | | | 800-600-2979 | | |
| | | | 909-423-2501 | | |
| | | | 708-950-5375 | | 1 |
| | | | 773-493-1109 | | |
| | | | 909-423-2501 | | |



**EXHIBIT**

D

12/27/2007 12:52 PM

1 of 3

Print Complete Bill

https://bm11.t-mobile.com/my/TMobile/User/allowed/AccountSum4.1

T

This print out of your online T-Mobile invoice is provided for informational purposes only and may not reflect all your current charges. Your actual T-Mobile invoice will be sent in the mail to the address you have provided for billing purposes. Contact Customer Care to obtain an official copy of your invoice. From your T-Mobile phone, dial 611 free of charge. From all other phones, dial 1-800-937-8997 toll free.

Print    Close Window

( Start Date: 01/24/08 - End Date: 02/23/08 )

## Summary of Unbilled Services

| Feature | Time Period | Type | Included | Used | Remaining |
|---|---|---|---|---|---|
| Text Messages | Whenever | Messages | Unlimited | 208.0 | Unlimited |
| Call Forward Conditional | Whenever | Minutes | 500.0 | 0.0 | 500.0 |
| T-Mobile to T-Mobile | Whenever | Minutes | Unlimited | 226.0 | Unlimited |
| Use Them Or Lose Them | Off Peak | Minutes | Unlimited | 224.0 | Unlimited |
| Use Them Or Lose Them | Week End | Minutes | Unlimited | 431.0 | Unlimited |
| Incl Minutes | Whenever | Minutes | 2000.0 | 196.0 | 1804.0 |

## Unbilled charges exceeding your rate plan

| Category | Units | Amount |
|---|---|---|
| Messages | 22.0 | $3.30 |
| Total unbilled charges exceeding your rate plan: | | $3.30 |

The "Charges Exceeding Your Rate Plan" section is intended to reflect charges in addition to your monthly recurring charge for your plan such as overage, roaming, long distance, and directory assistance charges. Taxes and fees, downloaded materials, roadside assistance, equipment protection, and other such charges are excluded. Some charges, such as roaming, may be delayed and may appear in subsequent bill cycles.

## Local Airtime, Long Distance and International Charges

| Date | Destination | Time | Number | Call Type | Minutes |
|---|---|---|---|---|---|
| 1/30/08 | INCOMING | 2:14 PM | 773-494-4532 | | 10 |
| 1/30/08 | INCOMING | 2:04 PM | 773-494-4532 | | 8 |
| 1/30/08 | INCOMING | 1:53 PM | 773-494-4532 | | 6 |
| 1/30/08 | CHICAGO, IL | 1:34 PM | 773-494-4532 | | 5 |
| 1/30/08 | INCOMING | 1:25 PM | 773-494-4532 | | 5 |
| 1/30/08 | VM Retrieval | 12:34 PM | 123 | (F) | 1 |
| 1/30/08 | INCOMING | 12:21 PM | 773-494-4532 | | 5 |
| 1/30/08 | LA GRANGE, IL | 12:08 PM | 708-698-4112 | | 1 |
| 1/30/08 | INCOMING | 11:43 AM | 708-698-4112 | | 1 |
| 1/30/08 | ORLAND, IL | 9:13 AM | 708-645-7361 | | 1 |
| 1/30/08 | TINLEY PARK, IL | 8:24 AM | 708-802-3745 | (F) | 1 |
| 1/30/08 | LA GRANGE, IL | 8:18 AM | 708-415-1130 | (F) | 1 |
| 1/30/08 | INCOMING | 11:23 PM | 708-415-8171 | (F) | 2 |
| 1/29/08 | INCOMING | 11:15 PM | 708-415-8171 | (F) | 5 |
| 1/29/08 | LA GRANGE, IL | 11:04 PM | 708-415-1130 | (F) | 1 |
| 1/29/08 | SUMMIT, IL | 10:52 PM | 708-372-2386 | | 1 |
| 1/29/08 | LA GRANGE, IL | 10:49 PM | 708-698-4112 | | 1 |
| 1/29/08 | INCOMING | 10:35 PM | 708-698-4112 | | 2 |
| 1/29/08 | INCOMING | 10:30 PM | 708-912-2553 | (F) | 3 |
| 1/29/08 | INCOMING | 10:24 PM | 708-802-3745 | (F) | 1 |
| 1/29/08 | TINLEY PARK, IL | 10:19 PM | 708-802-3745 | (F) | 1 |

Company: EZSTREAM        CTN: 773-494-4532
ESN: 2702380299

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|------|-----------|----------------|--------------|----------|---------------------|------------------------------|
| 12-27-07 | 10:58 AM | 708-307-5607* | Peak | 11 minutes | 16 | 12 |
| 01-30-08 | 12:21 PM | 708-307-5607 | Peak | 4:23 seconds | 8 | 6 |
| 01-30-08 | 1:24 PM | 708-307-5607 | Peak | 4:47 seconds | 8 | 6 |
| 01-30-08 | 1:34 PM | 708-307-5607 | Peak | 4:23 seconds | 8 | 6 |
| 01-30-08 | 1:53 PM | 708-307-5607 | Peak | 8:18 seconds | 14 | 10 |
| 01-30-08 | 2:04 PM | 708-307-5607 | Peak | 7:14 seconds | 12 | 9 |
| 01-30-08 | 2:14 PM | 708-307-5607 | Peak | 15:16 seconds | 24 | 17 |
| | | | Totals | 59 | 90 | 66 |

A total of 59 actual minutes were used, EZSTREAM charged 90 minutes, and 66 were supposed to be charged according to the EZSTREAM billing system.



EXHIBIT

E



# EZSTREAM

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

**ACTIVATE ACCOUNT**

 

**LOOK UP ACCOUNT**

Welcome, ██████████ ! | Logout |

**REPORTS**

Dealer Bank Balance: ██████

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO | GET USAGE |

**Phone No:** (773)494-4532

**Subcriber Usage Details:** 11/22/2007 to 12/12/2007

| | Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|---|
| | 11/23/2007 | 04:10:11 PM | (773)241-9076 | (773)494-4532 | 2 |
| | 11/26/2007 | 02:46:40 PM | (708)563-5915 | (773)494-4532 | 2 |
| | 11/26/2007 | 02:48:48 PM | (708)563-5915 | (773)494-4532 | 4 |
| | 11/26/2007 | 02:54:31 PM | (800)998-9802 | (773)494-4532 | 4 |
| | 11/26/2007 | 03:00:18 PM | (708)563-5915 | (773)494-4532 | 2 |
| | 11/26/2007 | 03:01:19 PM | (586)859-1148 | (773)494-4532 | 2 |
| | 11/26/2007 | 05:34:29 PM | (888)788-3282 | (773)494-4532 | 2 |
| | 11/27/2007 | 11:53:36 AM | (773)559-1140 | (773)494-4532 | 2 |
| | 11/27/2007 | 11:58:54 AM | (773)655-8063 | (773)494-4532 | 4 |
| | 11/28/2007 | 03:20:55 PM | (888)788-3282 | (773)494-4532 | 2 |
| | 11/28/2007 | 04:45:10 PM | (888)845-4729 | (773)494-4532 | 4 |
| | 11/28/2007 | 05:00:12 PM | (708)698-4112 | (773)494-4532 | 4 |
| ✳ | 11/29/2007 | 09:12:20 AM | (708)415-1130 | (773)494-4532 | 4 |
| ✳ | 11/29/2007 | 09:15:20 AM | (773)494-4532 | (708)415-1130 | 4 |



**EXHIBIT**

**F**

12/12/2007 2:07 PM

Company: EZSTREAM        CTN: 773-494-4532
ESN: 2702380299

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|------|-----------|----------------|--------------|----------|---------------------|------------------------------|
| 11/29/07 | 9:12:20 AM | 708-415-1130 | Peak | 1:30 seconds | 4 | 3 |
| 11/29/07 | 9:15:20 AM | 708-415-1130 | Peak | 1:57 seconds | 4 | 3 |
| 11/29/07 | 10:56:49 AM | 773-655-8063 | Peak | 52 seconds | 4 | 2 |
| 11/29/07 | 11:01:06 AM | 773-655-8063 | Peak | 52 seconds | 4 | 2 |
| 11/29/07 | 1:12:54 PM | 708-698-4112 | Peak | 58 seconds | 4 | 2 |
| 12/07/07 | 3:45:13 PM | 773-655-8063 | Peak | 1:32 seconds | 4 | 3 |
| 12/10/07 | 10:39:20 AM | 708-307-5607* | Peak | 1:25 seconds | 4 | 3 |
| 12/10/07 | 12:38:31 PM | 773-655-8063 | Peak | 1:44 seconds | 4 | 3 |
| 12/10/07 | 12:41:30 PM | 773-655-8063 | Peak | 10:30 seconds | 14 | 12 |
|  |  |  | **Totals** | **24** | **46** | **33** |

A total of 24 actual minutes were used, EZSTREAM charged 46 minutes, and 33 were supposed to be charged according to the EZSTREAM billing system.



http://www.ezstreampcs.com/Admin/LookupTools.aspx

EZStreamPCS Dealer Lookup Tools



EZSTREAM

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

**ACTIVATE ACCOUNT**

LOOKUP ACCOUNT

**LOOK UP ACCOUNT**

Welcome, ▓▓▓▓▓▓ ! [ Logout ]

**REPORTS**

Dealer Bank Balance: ▓▓▓▓

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO | OF ISSUE |

**Phone No:** (773)559-1140

**Subcriber Usage Details:** 11/21/2007 to 12/12/2007

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 11/23/2007 | 04:02:26 PM | (773)241-9076 | (773)559-1140 | 2 |
| 11/23/2007 | 04:02:58 PM | (773)241-9076 | (773)559-1140 | 2 |
| 11/23/2007 | 04:11:51 PM | (773)655-8063 | (773)559-1140 | 2 |
| 11/26/2007 | 03:08:12 PM | (708)563-5915 | (773)559-1140 | 2 |
| 11/26/2007 | 03:09:10 PM | (800)998-9812 | (773)559-1140 | 2 |
| 11/26/2007 | 03:13:18 PM | (800)998-9802 | (773)559-1140 | 4 |
| 11/27/2007 | 11:53:37 AM | (773)559-1140 | (773)494-4532 | 2 |
| 11/27/2007 | 11:54:49 AM | (800)998-9802 | (773)559-1140 | 2 |
| 11/27/2007 | 11:56:05 AM | (773)559-1140 | (773)655-8063 | 2 |
| ✶11/27/2007 | 12:13:04 PM | (800)998-9802 | (773)559-1140 | 4 |
| ✶11/27/2007 | 12:14:48 PM | (888)845-4729 | (773)559-1140 | 4 |
| 12/10/2007 | 02:55:55 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/10/2007 | 03:06:24 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/10/2007 | 03:28:03 PM | (773)772-4470 | (773)559-1140 | 2 |



EXHIBIT

H

12/12/2007 2:16 PM

| | | | | |
|---|---|---|---|---|
| 12/10/2007 | 03:29:20 PM | (773)559-1140 | (773)559-1140 | 5 |
| 12/12/2007 | 12:55:12 PM | (773)559-1140 | (773)319-1429 | 2 |
| | | | **Total Minutes:** | **45** |

Copyright 2006 EZSTREAM Inc. All Rights Reserved                F2Smart Version 1.0.0.10 - Date:03/02/06

 **EZSTREAM**            EZ STREAM MAINTENANCE AND RESOURCE TOOL

**ACTIVATE ACCOUNT**     LOOKUP ACCOUNT

**LOOK UP ACCOUNT**

**REPORTS**

Welcome, ██████████ ! | Logout |
Dealer Bank Balance: ████

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO. | RECHARGE |

**Phone No:** (773)655-8063

**Subcriber Usage Details:** 11/20/2007 to 12/12/2007

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 11/23/2007 | 04:12:07 PM | (773)655-8063 | (773)559-1140 | 2 |
| 11/26/2007 | 02:46:16 PM | (708)563-5915 | (773)655-8063 | 2 |
| 11/26/2007 | 02:46:39 PM | (888)788-3282 | (773)655-8063 | 2 |
| ✳ 11/26/2007 | 02:52:06 PM | (888)845-4729 | (773)655-8063 | 4 |
| ✳ 11/26/2007 | 02:55:15 PM | (888)845-4729 | (773)655-8063 | 4 |
| 11/26/2007 | 03:13:07 PM | (773)494-4532 | (773)655-8063 | 2 |
| 11/26/2007 | 04:12:34 PM | (888)845-4729 | (773)655-8063 | 6 |
| 11/27/2007 | 11:19:15 AM | (800)998-9802 | (773)655-8063 | 2 |
| 11/27/2007 | 11:56:14 AM | (773)559-1140 | (773)655-8063 | 2 |
| ✳ 11/27/2007 | 11:58:56 AM | (773)655-8063 | (773)494-4532 | 4 |
| 11/27/2007 | 12:05:49 PM | (888)845-4729 | (773)655-8063 | 5 |
| 11/28/2007 | 09:19:15 AM | (773)655-8063 | (910)322-3366 | 2 |
| 11/28/2007 | 09:20:35 AM | (910)322-3366 | (773)655-8063 | 2 |
| 11/28/2007 | 10:05:29 AM | (773)655-8063 | (773)655-8063 | 2 |


EXHIBIT
I

12/12/2007 2:33 PM

czstreamcos Dealer Lookup Tools.    http://www.czstreampcs.com/dealerLookupTools.aspx

| | | | | |
|---|---|---|---|---|
| 11/28/2007 | 10:06:11 AM | (773)559-1140 | (773)655-8063 | 2 |
| 11/28/2007 | 10:07:21 AM | (708)691-7019 | (773)655-8063 | 2 |
| 11/28/2007 | 10:09:37 AM | (708)691-7019 | (773)655-8063 | 4 |
| 11/28/2007 | 10:22:21 AM | (773)655-8063 | (910)322-3366 | 2 |
| 11/28/2007 | 10:23:37 AM | (910)322-3366 | (773)655-8063 | 2 |
| ✗ 11/28/2007 | 12:08:00 PM | (888)845-4729 | (773)655-8063 | 4 |
| ✗ 11/28/2007 | 12:34:33 PM | (708)691-7019 | (773)655-8063 | 4 |
| ✗ 11/28/2007 | 04:42:11 PM | (708)691-7019 | (773)655-8063 | 4 |
| 11/28/2007 | 04:49:05 PM | (800)998-9802 | (773)655-8063 | 2 |
| 11/28/2007 | 04:50:37 PM | (888)845-4729 | (773)655-8063 | 6 |
| ✗ 11/29/2007 | 10:56:48 AM | (773)494-4532 | (773)655-8063 | 4 |
| ✗ 11/29/2007 | 11:01:04 AM | (773)494-4532 | (773)655-8063 | 4 |
| 11/30/2007 | 06:22:38 PM | (773)341-6509 | (773)655-8063 | 2 |
| ✗ 11/30/2007 | 06:26:23 PM | (773)341-6509 | (773)655-8063 | 16 |
| ✗ 11/30/2007 | 07:21:01 PM | (773)803-0391 | (773)655-8063 | 11 |
| ✗ 11/30/2007 | 07:57:23 PM | (800)998-9802 | (773)655-8063 | 4 |
| 11/30/2007 | 08:15:19 PM | (773)341-6509 | (773)655-8063 | 4 |
| 11/30/2007 | 08:25:35 PM | (773)557-9821 | (773)655-8063 | 4 |
| 11/30/2007 | 08:35:29 PM | (800)998-9802 | (773)655-8063 | 4 |
| 11/30/2007 | 08:39:53 PM | (312)731-7902 | (773)655-8063 | 2 |
| 11/30/2007 | 08:43:34 PM | (773)655-8063 | (773)655-8063 | 4 |
| 11/30/2007 | 08:48:19 PM | (411)000-0000 | (773)655-8063 | 15 |
| 11/30/2007 | 08:55:00 PM | (800)998-9802 | (773)655-8063 | 2 |

EZStream PCS Dealer Lookup Tools

| | | | | |
|---|---|---|---|---|
| 12/04/2007 | 11:16:43 AM | (800)998-9802 | (773)655-8063 | 2 |
| 12/04/2007 | 11:17:29 AM | (888)845-4729 | (773)655-8063 | 4 |
| 12/04/2007 | 11:25:29 AM | (888)845-4729 | (773)655-8063 | 4 |
| 12/04/2007 | 11:57:24 AM | (888)845-4729 | (773)655-8063 | 5 |
| 12/04/2007 | 09:31:07 PM | (708)307-5607 | (773)655-8063 | 0 |
| 12/04/2007 | 10:13:32 PM | (708)307-5607 | (773)655-8063 | 0 |
| 12/04/2007 | 10:14:22 PM | (708)372-2386 | (773)655-8063 | 0 |
| 12/04/2007 | 10:15:31 PM | (708)645 6171 | (773)655-8063 | 0 |
| 12/04/2007 | 10:19:45 PM | (815)834-0455 | (773)655-8063 | 0 |
| 12/04/2007 | 10:39:42 PM | (773)655-8063 | (815)210-7726 | 0 |
| 12/04/2007 | 10:49:57 PM | (516)747-0837 | (773)655-8063 | 0 |
| 12/04/2007 | 10:51:31 PM | (229)291-1327 | (773)655-8063 | 0 |
| 12/04/2007 | 10:53:16 PM | (310)475-4500 | (773)655-8063 | 0 |
| 12/04/2007 | 10:54:07 PM | (323)876-7651 | (773)655-8063 | 0 |
| 12/04/2007 | 10:56:39 PM | (411)000-0000 | (773)655-8063 | 13 |
| 12/04/2007 | 11:15:32 PM | (708)912-2333 | (773)655-8063 | 0 |
| 12/04/2007 | 11:27:47 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/05/2007 | 04:22:30 PM | (773)655-8063 | (773)476-8817 | 2 |
| 12/05/2007 | 04:24:47 PM | (708)912-2333 | (773)655-8063 | 4 |
| 12/05/2007 | 04:59:27 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/05/2007 | 05:00:06 PM | (773)655-8063 | (708)912-2333 | 2 |
| 12/05/2007 | 05:01:03 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:08:21 AM | (773)655-8063 | (773)655-8063 | 2 |

EZStreamPCS Dealer Lookup Tools    http://www.ezstreampcs.com/dealerLookupTools.aspx

| | | | | |
|---|---|---|---|---|
| 12/06/2007 | 10:09:28 AM | (773)264-7209 | (773)655-8063 | 2 |
| 12/06/2007 | 10:10:42 AM | (708)912-2333 | (773)655-8063 | 5 |
| 12/06/2007 | 10:14:26 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:17:30 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:17:59 AM | (773)655-8063 | (708)912-2333 | 2 |
| 12/06/2007 | 10:19:32 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:20:17 AM | (773)655-8063 | (708)912-2333 | 2 |
| 12/06/2007 | 10:58:24 AM | (630)684-2191 | (773)655-8063 | 2 |
| ✳12/07/2007 | 10:33:06 AM | (708)307-5607 | (773)655-8063 | 4 |
| ✳12/07/2007 | 10:51:05 AM | (708)912-2333 | (773)655-8063 | 5 |
| ✳12/07/2007 | 03:45:15 PM | (773)655-8063 | (773)494-4532 | 4 |
| ✳12/10/2007 | 12:38:29 PM | (773)494-4532 | (773)655-8063 | 4 |
| ✳12/10/2007 | 12:41:15 PM | (773)494-4532 | (773)655-8063 | 14 |
| 12/10/2007 | 01:14:31 PM | (708)912-2333 | (773)655-8063 | 2 |
| ✳12/10/2007 | 02:55:56 PM | (773)655-8063 | (773)559-1140 | 4 |
| ✳12/10/2007 | 03:06:26 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/11/2007 | 02:18:46 PM | (773)494-4532 | (773)655-8063 | 4 |

**Total Minutes:** **257**

Copyright 2006 EZSTREAM Inc. All Rights Reserved    EZSmart Version 1.0.0.10   Date:03/03/06

EZSTREAM claims they have a one minute connection fee on all Peak calls. The following table represents the calls in which more than one additional minute was charged.

Company: EZSTREAM        CTN: 773-655-8063
ESN:   00408331251

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|------|-----------|----------------|--------------|----------|---------------------|------------------------------|
| 11/26/07 | 2:52:06 PM | 888-845-4729 | Peak | 1:38 seconds | 4 | 3 |
| 11/26/07 | 2:55:15 PM | 888-845-4729 | Peak | 1:20 seconds | 4 | 3 |
| 11/27/07 | 11:58:56 AM | 773-494-4532 | Peak | 1:39 seconds | 4 | 3 |
| 11/28/07 | 12:08:00 PM | 888-845-4729 | Peak | 1:17 seconds | 4 | 3 |
| 11/28/07 | 12:34:33 PM | 708-691-7019 | Peak | 1:35 seconds | 4 | 3 |
| 11/28/07 | 4:42:11 PM | 708-691-7019 | Peak | 1:30 seconds | 4 | 3 |
| 11/29/07 | 10:56:48 AM | 773-494-4532 | Peak | 1:08 seconds | 4 | 3 |
| 11/29/07 | 11:01:04 AM | 773-494-4532 | Peak | 1:30 seconds | 4 | 3 |
| 11/30/07 | 6:26:23 PM | 773-341-6509 | Peak | 12:09 seconds | 16 | 14 |
| 11/30/07 | 7:21:01 PM | 773-803-0391 | Peak | 8:12 seconds | 11 | 10 |
| 11/30/07 | 7:57:23 PM | 800-998-9802 | Peak | 1:02 seconds | 4 | 3 |
| 12/07/07 | 10:33:06 AM | 708-307-5607 | Peak | 1:20 seconds | 4 | 3 |
| 12/07/07 | 10:51:05 AM | 708-912-2333 | Peak | 2:57 seconds | 5 | 4 |
| 12/07/07 | 3:45:15 PM | 773-494-4532 | Peak | 1:30 seconds | 4 | 3 |
| 12/10/07 | 12:38:29 PM | 773-494-4532 | Peak | 1:41 seconds | 4 | 3 |
| 12/10/07 | 12:41:15 PM | 773-494-4532 | Peak | 10:40 seconds | 14 | 12 |
| 12/10/07 | 2:55:56 PM | 773-559-1140 | Peak | 1:49 seconds | 4 | 3 |
| 12/10/07 | 3:06:26 PM | 773-559-1140 | Peak | 1:37 seconds | 4 | 3 |
| | | | **Totals** | 64 | 102 | 82 |

EXHIBIT

J



EXHIBIT

K

Case 1:08-cv-01062    Document 11    Filed 02/21/2008    Page 46 of 51
US Mobile claims they have a one minute daily connection fee. The following table
represents the calls in which the account was charged additional airtime, or more than a
one minute daily connection fee

Company    US Mobile    CTN- 773-953-3761
ESN        14116302845

| Date | Time of call | Number Called | Duration | Type of call | Start Balance | End Balance | What balance should be |
|------|------|------|------|------|------|------|------|
| 12-21-07 | 2:59 PM | 773-953-3715 | 46 seconds | Peak | 248 | 238 | 247 |
| 12-24-07 | 12:23 PM | 773-641-4243 | 9 seconds | Peak | 238 | 237 | 237 |
| 12-24-07 | 12:27 PM | 773-953-3715 | 2:30 seconds | Peak | 237 | 233 | 234 |
| 12-24-07 | 12:42 PM | 773-559-1140 | 1:11 seconds | Peak | 233 | 230 | 232 |
| 12-24-07 | 2:53 PM | 773-655-8063 | 1:42 seconds | Peak | 230 | 227 | 231 |
| 12-26-07 | 10:34 AM | 708-307-5607 | 5:30 seconds | Peak | 227 | 220 | 221 |
| 12-24-07 | 11:42 AM | 773-559-1140 | 44 seconds | Peak | 220 | 211 | 218 |
| 12-27-07 | 11:04 AM | 708-415-1130 | 36 seconds | Peak | 210 | 209 | 209 |
| 12-28-07 | 12:12 PM | 773-655-8063 | 1:13 seconds | Peak | 207 | 204 | 205 |
| 12-28-07 | 12:14 PM | 773-953-3761 | 2:15 seconds | Peak | 204 | 200 | 201 |
| 12-31-07 | 11:38 AM | 708-912-2333 | 15 seconds | Peak | 191 | 190 | 190 |
| 12-31-07 | 3:42 PM | 708-912-2333 | 3:09 seconds | Peak | 190 | 185 | 186 |
| 01-02-08 | 2:43 PM | 773-641-4243 | 1:13 seconds | Peak | 179 | 176 | 177 |
| 01-02-08 | 3:16 PM | 773-655-8063 | 2:05 seconds | Peak | 176 | 172 | 173 |
| 01-02-08 | 3:18 PM | 773-655-8063 | 10 seconds | Peak | 172 | 171 | 171 |
| 01-03-08 | n/a | n/a | n/a | n/a | 168 | n/a | 167 |
| 01-04-08 | n/a | n/a | n/a | n/a | 165 | n/a | 166 |
| 01-07-08 | n/a | n/a | n/a | n/a | 157 | n/a | 165 |
| 01-08-08 | n/a | n/a | n/a | n/a | 154 | n/a | 164 |
| 01-09-08 | n/a | n/a | n/a | n/a | 151 | n/a | 163 |
| 01-10-08 | n/a | n/a | n/a | n/a | 148 | n/a | 162 |
| 01-11-08 | n/a | n/a | n/a | n/a | 146 | n/a | 161 |

Totals Minutes Used-                                    33
Total Daily Charges (12/20/07-01-11/08) -               23
Total minutes that should have been deducted-           **56**

Start Balance                                           250
End Balance                                             146
Minutes Deducted                                        **104**

Total Minutes Deducted                                  104
Total usage and daily charges                           56
**Minutes unaccounted for-**                            **48**



EXHIBIT

JPL/BAO/JLL                Firm I.D. 33179                526-1-8-38

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLATINUMTEL COMMUNICATIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZEFCOM, LLC d/b/a TELISPIRE, )<br>TELISPIRE, INC., U.S. MOBILE, INC., EZ )<br>STREAM, INC., QUICK COM, INC., )<br>QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION, EZ COM, )<br>CHICAGO, INC., d/b/a QUICK COM )<br>CHICAGO, and RAMSEY NATOUR, )<br>individually and d/b/a U.S. MOBILE, INC., )<br>QUICK COMM, INC. a/k/a QUICK COM, )<br>INC., QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION and/or )<br>QUICK COM CHICAGO, )<br>)<br>Defendants. ) | Court No.: 08 CV 1062 |

### Affidavit of Areej Malley

Areej Malley, being first duly sworn on her oath, deposes and states as follows:

1.    I am currently employed by PlatinumTel Communications LLC (hereinafter referred to as "PlatinumTel") in Sales Support.  I have been employed by PlatinumTel for approximately the last four years.

2.    I took part in an investigation that PlatinumTel conducted regarding the services provided by "EZ Stream" (hereinafter referred to as "EZ") and US Mobile PCS" (hereinafter referred to as "US").  As part of this investigation, I, along with three other PlatinumTel employees (Aracely Morales, Nadia Deeb and Naheel Hinnawi), purchased cell phones and



minutes of cell phone use from EZ and US. Thereafter, we timed the calls made to and from the phones we purchased to see if EZ and US were accurately reporting the length of the calls that were made using their products.

3.    For $50.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 559-1140. For $60.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 494-4532. For $90.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 665-8063. All three phones were purchased on November 21, 2007 from the Phone Plus store at 2454 S. California Avenue in Chicago, Illinois.

4.    Between December 27, 2007 and January 30, 2008, certain calls were made between the (773) 494-4532 number and another cellular phone maintained through T-Mobile.

5.    EZ maintains a website that shows EZ's records as to the length of calls that were made using EZ's wireless services. Retail dealers of EZ products can access this website. Only, with the assistance of a dealer of EZ's products, a consumer of EZ's services can use this website to monitor how many usage minutes have been expended under the phone or rate plan the consumer has purchased. T-Mobile maintains a website (which consumers can access directly without a dealer's assistance) that shows the length of calls made to or from a T-Mobile phone.

6.    As part of the investigation, we checked the websites maintained by EZ and T-Mobile in order to see what each company had recorded as to the length of the calls between the (773) 494-4532 number provided by EZ and the T-Mobile phone.

7.    After checking these records, it was clear that EZ had overstated the length of seven separate calls. The seven calls in question had an actual duration of approximately 59 minutes. EZ's website indicated that these calls had expended 90 minutes of cellular service. As part of its usage terms and conditions, EZ charges a one-minute per call connection fee

(regardless of the call's actual length). Since 7 calls were made, the one-minute per call connection fee should have only added 7 minutes to the 59 minute actual duration of the calls. Thus, EZ's records should have shown a maximum of 66 minutes was expended for the seven calls in question. Instead, as noted above, the EZ's website showed 90 minutes were expended, which made a total overcharge of 24 minutes. EZ's website recorded the times for the individual calls as follows: a call that lasted 11 minutes was shown as lasting 16 minutes; two calls that lasted 4 minutes and 23 seconds each were both shown as lasting 8 minutes; one call that lasted 4 minutes and 47 seconds was shown as lasting 8 minutes; one call that lasted 8 minutes and 18 seconds was shown as lasting 14 minutes; one call that lasted 7 minutes and 14 seconds was shown as lasting 12 minutes; and, one call that lasted 15 minutes and 16 seconds was shown as lasting 24 minutes.

8.    Our investigation also revealed that EZ inaccurately calculated the minutes in connection with nine calls that were made between November 29, 2007 and December 10, 2007 using the phone with the (773) 494-4532 number. The nine calls in question lasted a total of approximately 24 minutes. However, EZ's website indicated that 46 minutes were used during these calls. Even after EZ's one-minute per call connection fee is factored in, a maximum amount of 33 minutes should have been expended in connection with the calls.

9.    As part of the investigation, we also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 559-1140. EZ's website shows that on November 27, 2007, two calls were made from the (773) 559-1140 number within a very short time of each other. The first call was commenced at 12:13:04 p.m. The second call was commenced at 12:14:48, which is 1 minute and 44 seconds after the first call was commenced. EZ's website showed that 4 minutes were expended with each call. Even factoring in EZ's one-

minute per call connection fee, EZ's recording of the minutes that were expended on the first call cannot be correct. The first call lasted a maximum of 1 minute and 44 seconds, but EZ's records show 4 minutes being used.

10.    I called EZ's customer service line to protest EZ's calculation of minutes used for the call made at 12:13:04 p.m. on November 27, 2007. I was put in contact with a woman named "Marlene" who represented she was a "manager" at EZ. I explained to Marlene that EZ's calculation of the minutes used for the call in question was clearly inaccurate. Marlene directed me to take up the matter with Sprint and also indicated that she would send an e-mail to Sprint regarding the billing error. I asked to speak to Marlene's superior but Marlene indicated she was the only person present in customer service office. I asked if I could leave a voice mail message for EZ's owner, but Marlene indicated EZ's owner did not have a voice mailbox.

11.    As part of the investigation, we also checked EZ's records concerning the length of calls placed to and from the phone that had number (773) 655-8063 during the period of November 23, 2007 to December 11, 2007. We monitored the actual duration of the calls made using the phone during this time period. EZ's website overstated the minutes used on a total of seventeen calls that were made during that time period. The actual duration of the seventeen calls was 64 minutes. Even including EZ's one minute per call connection fee, the maximum amount of minutes used in connection with the seventeen calls should have been 82 minutes. EZ's website inaccurately showed 102 minutes were used in connection with the seventeen calls.

12.    In addition to the conversation described in paragraph 10 above, I also contacted EZ's customer service department on several occasions to complain about the overcharging described above. On each occasion, the EZ customer service representatives with whom I spoke insisted that no overcharging was taking place.

13.    I am an adult over the age of eighteen and could competently testify to the facts contained in this affidavit if called upon to do so.

FURTHER AFFIANT SAITH NOT.

Areej Malley

SUBSCRIBED and SWORN to before me this 15th day of February _____, 2008.

_Margaret Furczon_
Notary Public

OFFICIAL SEAL
MARGARET FURCZON
Notary Public - State of Illinois
My Commission Expires Apr 13, 2010

526-1\#184415.doc