JPL/BAO/JLL                                                        526-1-8

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PLATINUMTEL    COMMUNICATIONS,    )
LLC,                              )
                                  )
            Plaintiff,            )
                                  )
v.                                )   Court No.: 08 CV 1062
                                  )
ZEFCOM,  LLC  d/b/a  TELISPIRE,   )
TELISPIRE, INC., U.S. MOBILE, INC., EZ  )
STREAM, INC., QUICK COM, INC.,    )
QUICK COM II, INC., QUICK COM     )
CELLULAR CORPORATION, EZ COM,     )
CHICAGO,  INC.,  d/b/a  QUICK COM  )
CHICAGO,   and  RAMSEY  NATOUR,   )
individually and d/b/a U.S. MOBILE, INC.,  )
QUICK COMM, INC. a/k/a QUICK COM,  )
INC., QUICK COM II, INC., QUICK COM  )
CELLULAR   CORPORATION  and/or    )
QUICK COM CHICAGO,                )
                                  )
            Defendants.           )

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff, PLATINUMTEL COMMUNICATIONS, LLC, by its attorneys, John P. Lynch,

Jr., Brian A. O'Gallagher, Jessica L. Lesniewski and CREMER, KOPON, SHAUGHNESSY &

SPINA, LLC, and for its Complaint against Defendants, ZEFCOM, LLC d/b/a TELISPIRE, U.S.

MOBILE, INC., EZ STREAM, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK

COM II, INC., QUICK COM CELLULAR CORPORATION, EZ COM, CHICAGO, INC., d/b/a

QUICK COM CHICAGO, and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE,

INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM

CELLULAR CORPORATION and/or QUICK COM CHICAGO states as follows:



EXHIBIT
A

## NATURE OF THE ACTION

1.      This action arises from a systematic scheme by the Defendants to deceive and/or mislead consumers who use pre-paid wireless voice and data services to the Defendants' economic advantage.  In violation of Section 43(a) of the Lanham Act, the Illinois Uniform Deceptive Trade Practices Act, and the Illinois Consumer Fraud and Deceptive Business Practices Act, the Defendants have intentionally, willfully and deceitfully not provided consumers of their services with the wireless minutes that the Defendants promised them.

2.      The consumer fraud perpetrated by the Defendants injures both the consumer and this Plaintiff, in that the Plaintiff competes with the Defendants in the same industry and market.

3.      The Defendants' deceptive practices have damaged consumers because the consumer ultimately pays a higher rate per minute for the calls than promised by the Defendants, because the number of minutes actually delivered is substantially less than represented.

4.      The Plaintiff is injured because consumers have elected not to purchase the Plaintiff's services because the Defendants' plans are represented as being less expensive, i.e. more minutes are being provided at a lower cost, according to the Defendants' misrepresentations.

5.      The prepaid wireless business includes in its target market teenagers, individuals with credit problems and those in economically less affluent communities.  As such, the Defendants' deception preys on those segments of our population that are often less sophisticated in commercial matters such as this, or are otherwise less likely to challenge these deceptive business practices.

## PARTIES AND JURISDICTION

6.    Plaintiff, PLATINUMTEL COMMUNICATIONS, LLC ("PlatinumTel") is a Delaware Corporation with its principal place of business located at 8106 South Roberts Road, Justice, Illinois 60458 and is in the business of providing prepaid wireless voice and data services to consumers.

7.    On information and belief, Defendant ZEFCOM, LLC d/b/a TELISPIRE ("Telispire"), is a limited liability company with its principal place of business at Galaxy Center 2, Suite G, 4309 Jacksboro Highway, Wichita Falls, Texas 76302, and is a nationwide provider of wireless voice and data services, providing private label branding to and partnering with companies including, but not limited to, Defendants U.S. MOBILE, INC. and EZ STREAM, INC. who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

8.    In the alternative, on information and belief, Defendant TELISPIRE, INC., ("Telispire"), is a foreign corporation with its principal place of business at Galaxy Center 2, Suite G, 4309 Jacksboro Highway, Wichita Falls, Texas 76302, and is a nationwide provider of wireless voice and data services, providing private label branding to and partnering with companies including, but not limited to, Defendants U.S. MOBILE, INC. and EZ STREAM, INC. who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

9.    On information and belief, Defendant U.S. MOBILE, INC. ("U.S. Mobile") is or was an Illinois corporation with its principal place of business located at 350 North Cicero, Chicago, Illinois 60644.

3

10. On information and belief, Defendant RAMSEY NATOUR is doing business as U.S. MOBILE, INC., and is an Illinois resident residing at 16317 South Terrace Court, Orland Hills, Illinois 60477.

11. On information and belief, Defendant EZ STREAM, INC. ("EZ Stream") is an Illinois corporation with its principal place of business located at 1880 West Fullerton Avenue, Building A, Lot J, Chicago, Illinois 60614.

12. On information and belief, Defendant QUICK COMM, INC. a/k/a QUICK COM, INC., is or was an Illinois corporation with its principal place of business located at 12316 S. Halsted, Calumet Park, Illinois 60409 and/or 5245 West Madison, Chicago, Illinois 60644 and/or 358 North Laramie, Chicago, Illinois 60644.

13. On information and belief, Defendant QUICK COM II, INC., is or was an Illinois corporation with its principal place of business located at 4042 West Lawrence, Chicago, Illinois 60630.

14. On information and belief, Defendant QUICK COM CELLULAR CORPORATION, is or was an Illinois corporation with its principal place of business located 3755 West 26th Street, Suite B, Chicago, Illinois 60623.

15. On information and belief, Defendant EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO is an Illinois corporation with its principal place of business located at 7957 S. Kilbourn, Chicago, Illinois 60652.

16. On information and belief, Defendant RAMSEY NATOUR is doing business as QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and/or EZ COM, CHICAGO, INC., d/b/a QUICK COM

4

CHICAGO and is an Illinois resident residing at 16317 South Terrace Court, Orland Hills, Illinois 60477.

17.    On information and belief, Defendants U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO are all owned and operated by Defendant RAMSEY NATOUR and, therefore, share common ownership, marketing and advertising plans and schemes.

18.    As Defendants are engaged in a massive fraud on the public, this is a complaint for false advertising, and unfair and deceptive trade practices under: the Trademark Act of 1946, 15 USC §§ 1051 et seq. (The Lanham Act); 815 ILCS 505/1 (The Illinois Consumer Fraud and Deceptive Business Practices Act); 815 ILCS 510/1 (The Illinois Uniform Deceptive Trade Practices Act); and for civil conspiracy.

19.    This Court has original jurisdiction over this action under 15 USC §§ 1116, 1121, and 1125. This Court has jurisdiction over the state law claims pursuant to 28 USC §§ 1338(b) and 1367(a), and the doctrine of pendent jurisdiction.

20.    This Court has personal jurisdiction over the Defendants because they have their principal places of business in this district, live in this district, have committed acts of false advertising and unfair competition and deceptive trade practices in this district, and/or have sufficient minimum contacts with this district.

21.    Venue is proper in this Court pursuant to 28 USC §§ 1391 because a substantial part of the injury, acts of false advertising, and deceptive trade practices took place in this district.

22.    PlatinumTel is a well recognized and respected provider of retail prepaid wireless voice and data services. It has been in the prepaid wireless services industry since 2002.

23.    Telispire is a nationwide provider of wireless voice and data services, providing private label branding of such services to and partnering with companies including, but not limited to, Defendants U.S. Mobile, EZ Stream and Natour who in turn sell prepaid wireless voice and data services to consumers in the same market as PlatinumTel.

24.    U.S. Mobile is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff.

25.    EZ Stream is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff.

26.    Natour is in the business of providing retail wireless voice and data services to consumers in the Chicago area and is a direct competitor of the Plaintiff

27.    Defendants QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, and EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO, (hereinafter "Quick Com entities") and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO (hereinafter "Natour"), sell U.S. Mobile cell phones and U.S. Mobile-sponsored wireless voice and data services to consumers throughout retail stores in the Chicago area.

28.    Telispire, U.S. Mobile, EZ Stream, Natour and PlatinumTel sell prepaid wireless voice and data services in the same wireless marketplaces including the Chicago area, and accordingly, compete in the sale of prepaid wireless voice and data services in the same wireless marketplaces

29.    Telispire markets and sells prepaid wireless voice and data services through its business partners, such as U.S. Mobile and EZ Stream, and through direct retail sales. As part of its so-called "resale" agreements with business partners, such as U.S. Mobile and EZ Stream, on information and belief, Telispire provides the technological platform for its partners to set rates, coordinate billing, prepare Call Detail Reports ("CDRs") and add or deduct minutes from their customers' accounts.

30.    PlatinumTel's cell phones and services are sold nationwide at authorized retail stores and on its Online Store. The Plaintiff has devoted a substantial amount of time, effort, money and resources to the promotion, advertising, and marketing of its pre-paid wireless services and continues to do so.  A combination of the low price and high quality of PlatinumTel's services generated considerable consumer loyalty.  However, this loyalty is being lost as a result of the Defendants' unlawful activities.

31.    The purchaser of prepaid wireless services buys access to wireless telephone minutes and as the consumer uses up the minutes he or she has or should have the ability to access through the internet a Call Detail Report ("CDR") that identifies the minutes remaining along with details regarding each call placed. The detail includes the date, time and length of the call along with the phone number called. Since the services are prepaid, the consumer does not receive invoices with detailed information regarding the calls.

32.    Once the consumer has exhausted the minutes purchased, he or she has the option of purchasing additional minutes to add to his or her prepaid wireless program.

33.    On information and belief, in 2005 EZ Stream entered the prepaid wireless services market in the Chicago region.  Shortly thereafter, PlatinumTel began to notice EZ

Stream advertisements that made little or no economic sense. Prepaid wireless minutes were being offered by EZ Stream at prices that simply could not be profitable.

34.   On information and belief, in 2006 U.S. Mobile and Natour entered the prepaid wireless services market in the Chicago region. Shortly thereafter, PlatinumTel began to notice U.S. Mobile advertisements that made little or no economic sense. U.S. Mobile and Natour were offering prepaid wireless minutes at prices that simply could not be profitable.

35.   PlatinumTel began to investigate the services provided by U.S. Mobile, Natour and EZ Stream. It purchased phones from U.S. Mobile and EZ Stream along with their prepaid wireless services. (See attached Affidavits of Omar Aqel and Areej Malley incorporated herein as Exhibits "1" and "2", respectively.)

36.   PlatinumTel is without comprehensive knowledge as to the details and complexity of Telispire's relationship with the other named defendants. However, the wireless data and services provided to PlatinumTel by U.S. Mobile and EZ Stream were purchased by those Defendants from Telispire.

37.   On information and belief, Telispire was aware of the prepaid wireless programs being offered by Defendants U.S. Mobile and EZ Stream through, among other sources, billing and reconciliation documents pertaining to U.S. Mobile and EZ Stream that Telispire received from Sprint PCS and U.S. Mobile and EZ Stream. Like PlatinumTel, Telispire acquires its minutes from Sprint PCS.

38.   With Telispire's knowledge and assistance, U.S. Mobile represents to its customers that a one-minute, per day connection fee would be assessed to the consumer. In other words, one minute would be automatically deducted from the account per day. U.S. Mobile, however, refuses to produce a copy of its terms and conditions to consumers and directs its

customers to obtain the terms and conditions from the dealer who sold the customers the phone. When attempts are made to obtain those terms and conditions from dealers, dealers advise there are no such terms and conditions.   No terms and conditions for U.S. Mobile prepaid services appear on its website.

39.    In many circumstances, the dealers advising U.S. Mobile customers that there are no terms and conditions for U.S. Mobile cellular programs are Quick Com entities owned and operated by Natour, who also owns and operates U.S. Mobile.

40.    With Telispire's knowledge and assistance, U.S. Mobile significantly and routinely misrepresents the minutes available under its prepaid wireless programs to consumers including:  imposing more than a one minute, per day connection fee in violation of its policies, contrary to its representations and without notice to the customer; arbitrarily adding time to calls, without notice to the customer, such that the minutes erode from the program more quickly than represented; and not providing the minutes promised under its various plans.   This fraud generates a significant profit for U.S. Mobile and Telispire.

41.    U.S. Mobile also misleads its customers into believing that it has a Customer Service Program, when in facts the customer service number listed on its website is frequently disconnected as it has been since at least February 8, 2008. Notably, the U.S. Mobile website states: "PCS Network provided by Telispire."

42.    Many if not most of the U.S. Mobile phones and prepaid programs are advertised and sold by Quick Com entities at its retail stores throughout Chicago.   As such, the Quick Com entities provide a venue for the fraudulent scheme, and participate in and profit from it.

43.    With Telispire's knowledge and assistance, EZ Stream engages in some of the same conduct as U.S. Mobile.  EZ Stream represents in advertisements that "calls made or

received during peak time are billed at a one minute connection fee on all Talk More plans." However, EZ Stream routinely, arbitrarily, willfully and without notice to its customers imposes on its customers a connection fee of substantially more than one minute.

44.    With Telispire's knowledge and assistance, EZ Stream significantly and routinely misrepresents the minutes available under its prepaid wireless programs including:  imposing more than a one minute connection fee in violation of its policies and without notice to the customer; arbitrarily adding time to calls, without notice to the customer, such that the minutes erode from the program more quickly than represented; and not providing the minutes promised under its various plans.  This fraud generates a significant profit for EZ Stream and Telispire. On information and belief, EZ Stream's website (which is accessible only by dealers) also contains references to Telispire.

45.    After years of investment and building a reputation of providing high quality pre-paid wireless services, PlatinumTel became a leading prepaid wireless provider in the United States.  However, since the entry of EZ Stream, U.S. Mobile and Natour into the prepaid wireless market in the Chicago region and their employment of fraudulent advertising in their marketing plans with Telispire's knowledge and assistance, PlatinumTel's revenue and profitability have declined considerably.  PlatinumTel posted substantial, seven-figure losses in 2005 and 2006 as a result of this activity.

46.    Because PlatinumTel cannot compete with Defendants' fraudulent and deceptive marketing efforts, and will not engage in similar conduct, it has been forced to terminate the employment of nearly half of its employees over the last 24 months.

47.    Upon discovering the fraudulent activity of the Defendants, PlatinumTel contacted Telispire, which has knowledge of the Defendants' scheme and is economically

10

benefiting from it.  PlatinumTel contacted Curtis Knobloch, Telispire's CEO, and requested that Telispire intervene and stop the conduct of U.S. Mobile and EZ Stream.   Telispire has refused to take any action and instead continues to provide services to U.S. Mobile and EZ Stream in furtherance of their fraud, and accept the profits that result from it.

48.     Upon information and belief, while providing U.S. Mobile and EZ Stream with prepaid wireless services and data, Telispire substantially assists U.S. Mobile and EZ Stream in falsely advertising to, and committing fraud upon, consumers.

49.     Unless the Defendants' conduct is stopped immediately, PlatinumTel will continue to lose millions of dollars in sales and its market share.  The Defendants' consumer fraud is also causing irreparable harm to PlatinumTel's reputation.  Consumers have been and continue to be misled into believing that PlatinumTel's services are not as economically competitive as those of the Defendants, but those consumers are not receiving the minutes the Defendants claim they will provide.  The consumers will also continue to be harmed without an appropriate injunction.

## FACTS SPECIFIC TO EZ STREAM

50.     Upon information and belief, EZ Stream creates, disseminates and distributes advertising to promote the sale of its prepaid wireless services.

51.     Upon information and belief, EZ Stream's advertising consists of point of purchase posters and literature, flyers, website advertisements, packaging and voice prompts.

52.     Upon information and belief, EZ Stream's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

53.    Upon information and belief, the minutes actually delivered to consumers by EZ Stream are significantly less than those marketed in EZ Stream advertising and, as such, said advertising is false, misleading and deceptive.

## FACTS SPECIFIC TO U.S. MOBILE

54.    Upon information and belief, U.S. Mobile creates, disseminates and distributes advertising to promote the sale of its prepaid wireless services.

55.    Upon information and belief, U.S. Mobile's advertising consists of point of purchase posters and literature, website advertisements, and voice prompts.

56.    Upon information and belief, U.S. Mobile's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost and provide certain customer services.

57.    Upon information and belief, the minutes actually delivered to consumers by U.S. Mobil are significantly less than those marketed in U.S. Mobile advertising and, as such, said advertising is false, misleading and deceptive.

58.    Upon information and belief, U.S. Mobile does not provide the represented customer services.

## FACTS SPECIFIC TO THE QUICK COM ENTITIES

59.    Upon information and belief, the Quick Com entities create, disseminate and distribute advertising to promote the sale of the prepaid wireless services and cell phones on behalf of and in concert with U.S. Mobile.

60.    Upon information and belief, the Quick Com entities' advertising on behalf of and in concert with U.S. Mobile consists of sales presentations, point of purchase posters, literature, advertisements, and packaging.

61.    Upon information and belief, the Quick Com entities' advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

62.    Upon information and belief, the Quick Com entities assist U.S. Mobile in its effort to avoid consumer questions and complaints.

63.    Upon information and belief, the minutes actually delivered to consumers by U.S. Mobile are significantly less than those marketed in the Quick Com entities' advertising on behalf of and in concert with U.S. Mobile and, as such, said advertising is false, misleading and deceptive.

64.    Upon information and belief, the Quick Com entities' profit from and participate in the false, misleading and deceptive advertising and marketing in question.

## FACTS SPECIFIC TO RAMSEY NATOUR

65.    Upon information and belief, Natour creates, disseminates and distributes advertising to promote the sale of the prepaid wireless services and cell phones on behalf of and in concert with entities including U.S. Mobile and the Quick Com entities, which are businesses owned and operated by him.

66.    Upon information and belief, the Natour advertising on behalf of and in concert with entities including U.S. Mobile and the Quick Com entities consists of point of purchase posters, literature, advertisements, packaging and voice prompts.

67.    Upon information and belief, the Natour's advertising falsely communicates to consumers that they will receive certain numbers of minutes for a certain cost.

68.    Upon information and belief, the minutes actually delivered to consumers by Natour are significantly less than those marketed in said advertising and, as such, said advertising is false, misleading and deceptive.

69.    Upon information and belief, the Quick Com entities' profit from and participate in the false, misleading and deceptive advertising and marketing in question.

### FACTS SPECIFIC TO TELISPIRE

70.    Upon information and belief, Telispire is and has been aware of the false advertising of U.S. Mobile and EZ Stream relative to their prepaid wireless services from numerous sources, including billing and reconciliation documentation pertaining to U.S. Mobile and EZ Stream, received by Telispire from Sprint PCS and the other defendants.

71.    Upon information and belief, Telispire knowingly benefits financially from the sales of U.S. Mobile and EZ Stream programs and their false advertising scheme to defraud consumers of wireless minutes.

72.    Upon information and belief, that despite its knowledge of the fraudulent practices of U.S. Mobile and EZ Stream, and the fact that it benefits from the fraudulent activity, Telispire has refused to take any action to stop it and, rather, continues to support the Defendants' fraudulent scheme and profit from it.

73.    Upon information and belief, by providing U.S. Mobile and EZ Stream with prepaid wireless services and data, the technological platform to manage their accounts and website support, Telispire substantially assists U.S. Mobile and EZ Stream in falsely advertising to, and committing fraud upon, consumers.

74.    Upon information and belief, Telispire has the ability and obligation to stop the fraudulent business practices of U.S. Mobile and EZ Stream but refuses to do so.

### COUNT I
### False Advertising under the Lanham Act

75.    Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1 through 74 as if fully set forth herein.

76.    Defendants' advertising and connection with prepaid wireless services constitutes use in commercial advertising or promotion of false and misleading descriptions of fact, and false and misleading representations of fact, which misrepresent the characteristics and qualities of their respective goods and services, in violation of 15 USC §§ 1125(a)(1).

77.    Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

78.    PlatinumTel is without an adequate remedy at law.

79.    As a result of Defendants' actions alleged above, PlatinumTel has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation and goodwill, and will sustain serious loss of revenues, profits, and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT II
### Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act

80.    PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 74 as if fully set forth herein.

81.    Defendants have engaged in false and deceptive advertising, as set forth above, in connection with their respective prepaid wireless services in violation of 815 ILCS 505/2.

82.    Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

83.    Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers, and the Plaintiff, as to the true characteristics and qualities of Defendants' products.

84.     PlatinumTel is without an adequate remedy at law.

85.     As a result of Defendants' acts as alleged above, consumers of the State of Illinois have been deceived and mislead.

86.     As a result of Defendants' acts as alleged above, PlatinumTel has suffered and will continue to suffer irreparable harm in the form of damage and injury to its business, reputation, and good will, and will sustain serious loss of revenues, profits and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising and marketing practices.

**COUNT III**
**Violations of the Illinois Uniform Deceptive Trade Practices Act**

87.     PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 74 as if fully set forth herein.

88.     Defendants have engaged in false and deceptive advertising, as set forth above, in connection with their respective prepaid wireless services in violation of 815 ILCS 510/2.

89.     Defendants' false and deceptive advertising is likely to mislead consumers with respect to the number of minutes they receive for the price they pay.

90.     Defendants' acts of false advertising described herein were intended to cause and have caused deception of the public, misleading prospective purchasers as to the true characteristics and qualities of Defendants' products.

91.     PlatinumTel is without an adequate remedy at law.

92.     As a result of Defendants' actions alleged above, consumers of the State of Illinois have been deceived and mislead.  As a result of Defendants' actions alleged above, PlatinumTel has suffered and will continued to suffer irreparable harm in the form of damage and injury to its business, reputation, and good will, and will sustain serious loss of revenues,

profits and market share, and will continue to do so unless the Defendants are preliminarily and permanently restrained and enjoined by the Court from further false advertising practices.

## COUNT IV
### Civil Conspiracy – Telispire and EZ Stream

93.     PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 74 as if fully set forth herein.

94.     In agreeing to provide prepaid wireless data and services and technological support to EZ Stream with knowledge of the fraudulent schemes being carried out by EZ Stream, Telispire has agreed and conspired with EZ Stream to engage in the fraud on consumers as described in this complaint and accompanying affidavits.

95.     Telispire and EZ Stream have willfully become members of this conspiracy.

96.     Both Telispire and EZ Stream have committed overt acts in furtherance of the conspiracy to defraud consumers, as described in this complaint and accompanying affidavits, and have benefited therefrom.

97.     PlatinumTel has been damaged as a direct and proximate result of this conspiracy.

## COUNT V
### Civil Conspiracy – Telispire, U.S. Mobile and Quick Com Entities

98.     PlatinumTel repeats and realleges the allegations set forth above in Paragraphs 1 through 74 as if fully set forth herein.

99.     In agreeing to provide prepaid wireless data and services and technological support to U.S. Mobile and the Quick Com Entities with knowledge of the fraudulent schemes being carried out by U.S. Mobile and the Quick Com Entities, Telispire has agreed and conspired with U.S. Mobile and the Quick Com Entities to engage in the fraud on consumers as described in this complaint and accompanying affidavits.

100.    Telispire, U.S. Mobile, the Quick Com entities and Natour have agreed and conspired to engage in the fraud on the consumers as described in this complaint.

101.    Telispire, U.S. Mobile, the Quick Com entities and Natour have willfully become members of this conspiracy.

102.    Telispire, U.S. Mobile, the Quick Com entities and Natour have committed overt acts in furtherance of the conspiracy to defraud consumers, as described in this complaint and accompanying affidavits, and have benefited therefrom.

103.    PlatinumTel has been damaged as a direct and proximate result of this conspiracy.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff asks this Court to:

(1)    Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendants and any principals, officers, agents, servants, employees, attorneys, representatives, successors and assigns of all Defendants, and all those in privity, concert or participation with Defendants; from

    (a)    Using any false or misleading description that can or is likely to misrepresent to the trade or public, or individual members thereof, the characteristics or qualities of any product or service advertised, promoted, offered or sold by Defendants, including but not limited to descriptions on or in point-of-purchase advertising, sales presentations, television commercials, radio commercials, print advertising, and voice prompts;

    (b)    Engaging in any other activity constituting unfair competition with the plaintiff;

    (c)    Destroying or otherwise disposing of any of the aforementioned advertising or any documents pertaining to such advertising or to any sales of products or services or purchase of wireless minutes or services heretofore made;

    (d)    Supporting, assisting, aiding, or abetting other persons or business entities in engaging or performing any of the activities enumerated in this complaint.

(2)    Grant a preliminary injunction and thereafter a permanent injunction restraining and enjoining Defendant, Telispire and any principals, officers, agents, servants,

employees, attorneys, representatives, successors and assigns, and all those in privity, concert or participation with Telispire, from providing any wireless minutes, services or otherwise engaging in business with Defendants U.S. Mobile, Natour and EZ Stream and any of their principals, officers, agents, servants, employees, successors and assigns.

(3)    Find that the Defendants have used false representations and competed unfairly under federal law and state law, and have damaged Plaintiff by the acts complained of herein.

(4)    Issue an order requiring recall of all false advertising distributed and requiring Defendants to issue notices to all current distributors and sellers of their products and all distributors with whom they have done business in the past 12 months in order to effect said recall.

(5)    Issue an order requiring the Defendants to provide a copy of said injunctive order to all the Defendants' current distributors and sellers of their products and all distributors and sellers of their products with whom they have done business in the past 12 months.

(6)    Direct Defendants to file with this Court and serve on counsel for Plaintiffs, within fourteen (14) days after entry of the Preliminary Injunction, a written report setting forth in detail the manner in which Defendants have complied with the foregoing paragraphs.

(7)    Direct Defendants to produce to the Plaintiff all contract, billing, reconciliation and all other documentation reflecting their business relationship, transactions, and customs and practices with each other and Sprint PCS from January 1, 2005 to the present, within fourteen (14) days.

(8)    Find Defendants liable and award to the Plaintiff monetary relief in amount to be fixed by the Court in its discretion as just, including all damages sustained by the Plaintiff, and/or all of Defendants' profits or gains of any kind resulting from their unlawful practices, said amount to be trebled and exemplary damages in view of the intentional nature of the acts complained of herein.

(9)    Order an accounting and render judgment against Defendants for all profits wrongfully derived by Defendants by reason of their false statements and representations, conspiracy and unfair competition.

(10)    Award all damages to compensate Plaintiff for Defendants' acts of false statements and representations, conspiracy and unfair competition.

(11)    Require Defendants to pay Plaintiff's prejudgment and post judgment interest at the applicable rates on all amounts awarded.

(12)   Require Defendants to disseminate corrective advertising, at Defendants' expense, that informs consumers, the trade and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and or require Defendants to pay Plaintiff's costs in producing and disseminating such corrective advertising.

(13)   Require Defendants to pay Plaintiff's costs and attorneys fees incurred in the prosecution of this action.

(14)    Grant to Plaintiff such other and further relief, as this Court may deem just, proper and equitable under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims so triable.

CREMER, KOPON, SHAUGHNESSY & SPINA, LLC.


By: _____/s/ John P. Lynch, Jr._____

Attorneys for Plaintiff


John P. Lynch, Jr.
Brian A. O'Gallagher
Jessica L. Lesniewski
CREMER KOPON SHAUGHNESSY & SPINA, LLC
180 North La Salle Street
Suite 3300
Chicago, Illinois 60601
(312) 726-3800 – Telephone
(312) 726-3818 – Facsimile
#184422

## **PROOF OF SERVICE**

I, the undersigned attorney, certify that I filed this Proof of Service and the documents identified herein through the Court's ECM/CF document filing system, which will cause electronic notification of the filing to be sent to all counsel of record.

/s/ John P. Lynch, Jr.

JPL/BAO/JLL                    Firm I.D. 33179                    526-1-8-38

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLATINUMTEL     COMMUNICATIONS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>ZEFCOM, LLC d/b/a TELISPIRE, TELISPIRE, INC., U.S. MOBILE, INC., EZ STREAM, INC., QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION, EZ COM, CHICAGO, INC., d/b/a QUICK COM CHICAGO, and RAMSEY NATOUR, individually and d/b/a U.S. MOBILE, INC., QUICK COMM, INC. a/k/a QUICK COM, INC., QUICK COM II, INC., QUICK COM CELLULAR CORPORATION and/or QUICK COM CHICAGO,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No.: 08 CV 1062 |

**Affidavit of Omar M. Aqel**

Omar M. Aqel, being first duly sworn on his oath, deposes and states as follows:

1.    I am currently employed as the Vice President of PlatinumTel Communications LLC (hereinafter referred to as "PlatinumTel") and have held that position since PlatinumTel began operating in 2002.

2.    PlatinumTel is in the business of providing pre-paid wireless services. As part of those services, PlatinumTel sells cellular phones and rate plans that allow consumers to use cell phones on a "pay as you go" basis. Under the "pay as you go" structure, a consumer pays a fixed fee and in return obtains a set number of minutes of cellular phone service. For example, under



PlatinumTel's basic "starter plan", a consumer will obtain 250 minutes of cell phone use over 30 days (plus unlimited cell phone minutes on nights and weekends) in exchange for a payment of $35.00.

3.      PlatinumTel has a direct contract with Sprint PCS that enables PlatinumTel to support the wireless services PlatinumTel sells to consumers through Sprint's nationwide cellular network.

4.      Although PlatinumTel has the capacity to provide services to consumers on a nationwide basis, the majority of PlatinumTel's customers reside in the Chicago metropolitan area. PlatinumTel markets its products and services in a number of retail stores located in and around Chicago.

5.      During 2005, PlatinumTel became aware that a new business entity known as "EZ Stream" (hereinafter referred to as "EZ") was selling pre-paid wireless services in the Chicago area. During 2006, PlatinumTel became aware that a new business entity known as "US Mobile PCS" (hereinafter referred to as "US") was also selling pre-paid wireless services in the Chicago area.

6.      On information and belief, the services EZ and US sell are supported by a company known as Telispire. Telispire, like PlatinumTel, has a direct contract with Sprint that allows Telispire to support the consumer services sold on its behalf through Sprint's nationwide cellular network.

7.      Through its sales force and its contacts with retailers of wireless services in the Chicago area, PlatinumTel learned information regarding the rate plans that EZ and US were selling. Based on PlatinumTel's general knowledge of the industry and specific knowledge regarding the cost of supporting wireless services through Sprint, PlatinumTel did not believe it

was possible for EZ and US to actually charge the rates they claimed to charge. Essentially, EZ and US were selling "pay as you go" cell phone plans at below market rates. PlatinumTel knew the cost of obtaining support through Sprint would essentially make it impossible for EZ or US to make a profit if they were actually providing the minutes they claimed to provide for the prices they were charging. For example, attached to this Affidavit, as **Exhibit A** is a copy of an advertising flier EZ has distributed to retailers in the Chicago area. It claims that EZ is selling 100 minutes of cell phone use during peak hours, plus unlimited cell phone use on nights and weekends, for $5.00.

8.    Based on these suspicions, PlatinumTel conducted an investigation of the services provided by EZ and US. Four PlatinumTel employees, Aracely Morales, Areej Malley, Nadia Deeb and Naheel Hinnawi purchased cell phones and rate plans marketed by EZ and US. Thereafter, PlatinumTel timed the calls made to and from the phones to see if EZ and US were accurately reporting the length of the calls that were made using their products.

9.    For $50.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 559-1140. For $60.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 494- 4532. For $90.00, the PlatinumTel employees purchased a phone from EZ that was assigned the cellular phone number of (773) 665- 8063. All three phones were purchased on November 21, 2007 from the Phone Plus store at 2454 S. California Avenue in Chicago, Illinois. A receipt for the purchase of the phones is attached hereto as **Exhibit B.**

10.    Between December 27, 2007 and January 30, 2008, certain calls were made between the (773) 494- 4532 number and another cellular phone a PlatinumTel employee maintained through T-Mobile.

3

11.    EZ maintains a website that shows EZ's records as to the length of calls that were made using EZ's wireless services. Retail dealers of EZ products can access this website. Only with the assistance of a dealer of EZ's products, a consumer of EZ's services can use this website to monitor how many usage minutes have been expended under the phone or rate plan the consumer has purchased. T-Mobile maintains a website (which consumers can access directly without a dealer's assistance) that shows the length of calls made to or from a T-Mobile phone.

12.    PlatinumTel checked the websites maintained by EZ and T-Mobile in order to see what each company had recorded as to the length of the calls between the (773) 494- 4532 number provided by EZ and the T-Mobile phone.

13.    After checking these records, it was clear that EZ had overstated the length of seven separate calls. The seven calls in question had an actual duration of approximately 59 minutes. EZ's website indicated that these calls had expended 90 minutes of cellular service. As part of its usage terms and conditions, EZ charges a one-minute per call connection fee (regardless of the call's actual length). Since 7 calls were made, the one-minute per call connection fee should have only added 7 minutes to the 59 minute actual duration of the calls. Thus, EZ's records should have shown a maximum of 66 minutes was expended for the seven calls in question. Instead, as noted above, EZ's website showed 90 minutes were expended, which made a total overcharge of 24 minutes. EZ's website recorded the times for the individual calls as follows: a call that lasted 11 minutes was shown as lasting 16 minutes; two calls that lasted 4 minutes and 23 seconds each were both shown as lasting 8 minutes; one call that lasted 4 minutes and 47 seconds was shown as lasting 8 minutes; one call that lasted 8 minutes and 18 seconds was shown as lasting 14 minutes; one call that lasted 7 minutes and 14 seconds was shown as lasting 12 minutes; and, one call that lasted 15 minutes and 16 seconds was shown as

lasting 24 minutes.

14.     Attached to this affidavit as **Exhibit C** is a copy of the page from EZ's website that shows EZ's records as to the purported length of the calls described in paragraph 13. Attached to the affidavit as **Exhibit D** is a copy of the page from T-Mobile's website that shows T-Mobile's records as to the length of the calls described in paragraph 13.   Attached to this affidavit as **Exhibit E** is a spreadsheet prepared by PlatinumTel that summarizes the discrepancy in the records and calculates what PlatinumTel believes to be the overcharge by EZ on the seven calls in question.

15.     Platinum's investigation also revealed that EZ inaccurately calculated the minutes in connection with nine calls that were made between November 29, 2007 and December 10, 2007 using the phone with the (773) 494- 4532 number.  The nine calls in question lasted a total of approximately 24 minutes.   However, EZ's website indicated that 46 minutes were used during these calls.  Even after EZ's one-minute per call connection fee is factored in, a maximum amount of 33 minutes should have been expended in connection with the calls.  Attached to this affidavit as **Exhibit F** is a copy of the page from EZ's website that shows EZ's records as to the purported length of the nine calls described in this paragraph.   Attached to this affidavit as **Exhibit G** is a spreadsheet prepared by PlatinumTel that shows (1) when each of the nine calls was made, (2) the actual length of each call and (3) the length of the call as shown by EZ's website.

16.     As part of its investigation, PlatinumTel also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 559-1140.  EZ's website shows that on November 27, 2007, two calls were made from the (773) 559-1140 number within a very short time of each other.   The first call was commenced at 12:13:04 p.m.  The second call

was commenced at 12:14:48, which is 1 minute and 44 seconds after the first call was commenced. EZ's website showed that 4 minutes were expended with each call (see attached **Exhibit H**). Even factoring in EZ's one-minute per call connection fee, EZ's recording of the minutes that were expended on the first call cannot be correct. The first call lasted a maximum of 1 minute and 44 seconds, but EZ's records show 4 minutes being used.

      17.    PlatinumTel employee Areej Malley called EZ's customer service line to protest EZ's calculation of minutes used for the call made at 12:13:04 p.m on November 27, 2007. Ms. Malley was put in contact with a woman named "Marlene" who represented she was a "manager" at EZ. Ms. Malley explained to Marlene that EZ's calculation of the minutes used for the call in question was clearly inaccurate. Marlene directed Ms. Malley to take up the matter with Sprint and also indicated that she would send an e-mail to Sprint regarding the billing error. Ms. Malley asked to speak to Marlene's superior but Marlene indicated she was the only person present in customer service office. Ms. Malley asked if she could leave a voice mail message for EZ's owner, but Marlene indicated EZ's owner did not have a voice mailbox.

      18.    As part of its investigation, PlatinumTel also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 655-8063. Attached to this affidavit as **Exhibit I** is a copy of a page from EZ's website that purports to show the minutes used by this phone during the period of November 23, 2007 to December 11, 2007. PlatinumTel monitored the actual duration of the calls made using the phone during this time period. EZ's website overstated the minutes used on a total of seventeen calls that were made during that time period. The actual duration of the seventeen calls was 64 minutes. Even including EZ's one minute per call connection fee, the maximum amount of minutes used in connection with the seventeen calls should have been 82 minutes. EZ's website inaccurately

showed 102 minutes were used in connection with the seventeen calls. Attached to this affidavit as **Exhibit J** is a spreadsheet prepared by PlatinumTel that shows (1) when each of the seventeen calls was made, (2) the actual length of each call and (3) the length of the call as shown by EZ stream's website.

19.    In addition to the conversation described in paragraph 15 above, PlatinumTel's employees have contacted EZ's customer service department on several occasions to complain about the overcharging described above.    On each occasion, EZ's customer service representatives insisted that no overcharging was taking place.

20.    As noted above, PlatinumTel also conducted an investigation of the services provided by US.    A PlatinumTel employee purchased a cellular phone from US that was assigned the cellular phone number of (773) 953-3761.    It was represented to PlatinumTel that 250 minutes of cell phone access during peak hours accompanied the purchase of the phone.

21.    US maintains a website where a consumer of US's services can monitor how many minutes have been used under the phone or plan purchased from US. As of January 11, 2008, US's website showed 146 minutes were remaining from the 250 minutes that were originally included in the purchase of the phone with the (773) 953-3761 number.

22.    During the period between December 20, 2007 and January 11, 2008, a total of 15 calls were made to or from the (773) 953-3761 number.    Those calls lasted a maximum of 33 minutes.    The US plan also has a "one minute daily connection fee."    Between December 20, 2007 and January 11, 2008, the maximum daily connection fee that could be charged was 23 minutes (one minute per day).    Combining the 23 minute daily connection fee with the 33 minutes of actual usage, US's records should have shown a maximum of 56 minutes used under the plan for the time period between December 20, 2007 and January 11, 2008.    Deducting the

56 minutes used from the 250 minutes purchased should have left a balance of 194 available minutes.

23.    Instead however, as of January 11, 2008, US's website showed a total of 146 available minutes left for the number (see copies of pages from US's website that were printed on January 11, 2008 attached hereto as **Exhibit K**). Therefore, US deducted 48 more minutes than it should have from the plan during the period between December 20, 2007 and January 11, 2008. Attached to this affidavit as **Exhibit L** is a spreadsheet prepared by PlatinumTel that shows the calls that were made from to from the (773) 953-3761 number between the December 21, 2007 and January 11, 2008 and the proper calculation of the declining balance that should have been made by US.

24.    Also as a part of its investigation, a PlatinumTel employee purchased a separate phone from US and was assigned the cellular phone number of (773) 953-3715. 250 minutes of use during peak hours were included with the purchase.

25.    For the period of December 20, 2007 to January 19, 2008, PlatinumTel monitored the calls made to and from the (773) 953-3715 number. During this period, only 8 calls were made and these calls had a combined duration of 14 minutes. The maximum daily connection fee that could be charged during this period was 31 minutes (one minute per day). Thus, the combined total of minutes that could be deducted from the minutes purchased was 45. However, as of January 19, 2008, US's website showed a balance of only 150 minutes remaining in the plan, indicating that 100 minutes had been deducted. Thus, US overstated the deduction by over 50 minutes.

26.    As noted above, EZ and US can only provide their services through Telispire, because Telispire has contractual access to Sprint's nationwide cellular network.

27.    I have alerted Telispire to the fact that EZ and US are overstating the minutes used in the plans that EZ and US are selling to consumers. On December 12, 2007, I wrote to Telispire representative Curtis Knobloch regarding this issue and supplied him with documentation demonstrating the inaccurate billing practices that are being employed by EZ and US. As of the date of this affidavit, neither Mr. Knobloch nor anyone else at Telispire has indicated to me that Telispire is taking any steps to halt the inaccurate billing practices employed by EZ and US.

28.    The inaccurate billing practices described above are enabling EZ and US to represent to consumers in the Chicago metropolitan area that EZ and US can provide pre-paid wireless services at prices that PlatinumTel cannot match. In practice however, EZ and US are overstating the minutes their customers use so EZ and US do not ultimately provide cell phone minutes at the prices they claim to provide them. In this manner, EZ and US are charging higher rates than they claim to charge.

29.    In addition to the non-standard rates EZ and US claim to charge, they also sell rate plans without requiring the initial purchase of a phone. I have never known any company in the wireless service industry besides US and EZ to sell minutes without first requiring the purchase of a phone. I believe at least one reason US and EZ do this is to motivate existing PlatinumTel customers to switch over to rate plans provided by US and EZ. Since the wireless services marketed by US and EZ are (like those sold by PlatinumTel) ultimately supported by Sprint, it is possible to alter phones that were initially sold by PlatinumTel so that they become compatible with rate plans sold by US and/or EZ.

30.    The false representations EZ and US have made regarding the price of their services have enabled them to acquire a substantial share of the market for pre-paid wireless

services that exists in the Chicago area. The share of this market that has been acquired by EZ and US has caused PlatinumTel's market share to decrease dramatically.

31.    After years of investment and building a reputation of providing high quality pre-paid wireless services, PlatinumTel became a leading prepaid wireless provider in the United States. However, since the entry of EZ and US into this prepaid market, and their employment of fraudulent advertising in their marketing plans, PlatinumTel's revenue and profitability have declined considerably. PlatinumTel posted substantial, seven-figure losses in 2005 and 2006 as a result of this illegal activity and has significantly reduced its work force as a consequence.

32.    In my opinion, the presence of EZ and US in the market, and their deceptive representations as to the price of the services they provide, is responsible for all or most of the drop off in sales revenue PlatinumTel has experienced. Every day that EZ and US remain in business and continue to make false representations about the price of the wireless services they provide causes PlatinumTel to suffer additional injury.

33.    On information and belief, Ramsey Natour owns and operates US as a corporation or a sole proprietorship. Our investigation suggests that the company may be dissolved. On information and belief, Ramsey Natour also owns and operates the "Quick Com entities" referenced in the complaint filed in this action as corporations or sole proprietorships. Our investigation suggests that many or all of the Quick Com entities are dissolved corporations.

34.    I am an adult over the age of eighteen, have reviewed the COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF filed herein, along with this affidavit, in detail and hereby attest that the factual statements contained therein are true and accurate to the best of my knowledge.

FURTHER AFFIANT SAITH NOT.

_____
Omar M. Aqel

SUBSCRIBED and SWORN to before me this

15 day of February _____, 2008.

_____
Notary Public

OFFICIAL SEAL
MARGARET FURCZON
Notary Public - State of Illinois
My Commission Expires Apr 13, 2010

526-1\#184415.doc

11

    

EZSTREAM

| **$20** | **$35** | **$60** | **$65** | **$75** |
|---|---|---|---|---|
| Sanyo 4700 Speakerphone | Samsung A460 Flip Phone | Sanyo 5300 Camera | LG 5225 Color Display | Samsung A620 Camera w/ Flash |

# LOWEST PRICES!

## Starter Card Promotion

# 100 Minutes
# Free Nights & Weekends
# $5

# PHONE PURCHASE NOT REQUIRED!
# (888) 845-4729

EXHIBIT

tabbies

A

Customer Receipt



*cell phones R us !*

| Invoice #: | 6716 | Invoice Type: | Pre-Paid Activation |
| --- | --- | --- | --- |

Invoice Date: 11/21/2007 5:43:11 PM

PHONE PLUS INC. 2454 S. CALIFORNIA AVE

Store: CHICAGO, IL 60608
Phone: (773) 247-7722
Fax: (773) 247-7244

Sales Rep: A. IHAB

Customer Information:
prepaid customer
2454 s california
CHICAGO, IL 60608

Home Phone: (773) 012-1230
Work Phone:
Mobile Phone: (773) 012-1230

| Item | ESN # | Price ($) | Sales Tax ($) |
| --- | --- | --- | --- |
| LG EZ STREAM LG 1200 | 06812667074 | 50.00 | EXEMPT |
| Mobile Number: 7735591140    Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |
| MOTOROLA C290 | 02702380299 | 60.00 | EXEMPT |
| Mobile Number: 7734944532    Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |
| SANYO 8300 EZ STREAM | 00408331251 | 90.00 | EXEMPT |
| Mobile Number: 7736558063    Contract: 0 Years | | | |
| EZ STREAM PREPAID | | | |

|  | |
| --- | --- |
| Subtotal: | $200.00 |
| Tax: | $0.00 |
| Total: | $200.00 |
| Amount Tendered: | $200.00 |
| ChangeDue: | $0.00 |

| Payment Type | Amount | PaymentDate | Employee Who Entered Payment | Comment |
| --- | --- | --- | --- | --- |
| Cash | $200.00 | 11/21/2007 5:47:05 PM | A. IHAB | |

Total Non-Terms Payments: **$200.00**

Total Returned in Credit Memos: **$0.00**

Total Currently Due: **$0.00**

2 LOCATIONS TO SERVE YOU BETTER : 2871 W CERMAK RD, CHICAGO, IL 60623 TEL 773-376-1600 2454 S
CALIFORNIA AVE, CHICAGO, IL 60608 TEL 773-247-7722

© 2006 Data Guard Systems, Inc. All rights reserved. Data Guard Systems Proprietary and Confidential
Terms of Use can be found at http://www.dataguardsystems.com

**EXHIBIT**

tabbies

*B*



# EZSTREAM

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

**ACTIVATE ACCOUNT**

**LOOK UP ACCOUNT**

**REPORTS**

**LOOKUP ACCOUNT**

Welcome, ~~████████████~~ ! | Logout

Dealer Bank Balance: ~~████~~

**Phone No:** (773)494-4532

**Subcriber Usage Details:** 12/27/2007 to 01/30/2008

| Call Date | Call Time | Called To | Called From | Minutes Used |
|-----------|-----------|-----------|-------------|--------------|
| 12/27/2007 | 09:52:54 AM | (708)307-5607 | (773)494-4532 | 3 |
| 12/27/2007 | 10:58:28 AM | (708)307-5607 | (773)494-4532 | 16 |
| 12/27/2007 | 01:08:30 PM | (708)307-5607 | (773)494-4532 | 3 |
| 01/11/2008 | 11:10:54 AM | (773)494-4532 | (708)307-5607 | 3 |
| 01/11/2008 | 11:13:00 AM | (708)307-5607 | (773)494-4532 | 3 |
| 01/11/2008 | 01:19:12 PM | (773)494-4532 | (708)307-5607 | 5 |
| 01/14/2008 | 11:44:32 AM | (708)307-5607 | (773)494-4532 | 4 |
| 01/14/2008 | 02:20:33 PM | (708)307-5607 | (773)494-4532 | 2 |
| 01/14/2008 | 02:28:54 PM | (708)307-5607 | (773)494-4532 | 4 |
| 01/28/2008 | 01:48:08 PM | (708)466-7681 | (773)494-4532 | 2 |
| 01/28/2008 | 01:50:59 PM | (708)636-3113 | (773)494-4532 | 4 |
| 01/28/2008 | 01:54:50 PM | (708)839-4100 | (773)494-4532 | 4 |
| 01/28/2008 | 02:12:03 PM | (708)307-5607 | (773)494-4532 | 3 |
| 01/28/2008 | 02:13:56 PM | (708)698-4112 | (773)494-4532 | 4 |

**EXHIBIT**

tabbies' C

1/30/2008 3:07 PM

| | | | | |
|---|---|---|---|---|
| 01/28/2008 | 02:23:41 PM | (708)415-1130 | (773)494-4532 | 4 |
| 01/28/2008 | 04:21:09 PM | (708)499-1999 | (773)494-4532 | 5 |
| ✳ 01/30/2008 | 12:20:59 PM | (708)307-5607 | (773)494-4532 | 8 |
| ✳ 01/30/2008 | 01:24:50 PM | (708)307-5607 | (773)494-4532 | 8 |
| ✳ 01/30/2008 | 01:34:34 PM | (773)494-4532 | (708)307-5607 | 8 |
| ✳ 01/30/2008 | 01:53:17 PM | (708)307-5607 | (773)494-4532 | 14 |
| ✳ 01/30/2008 | 02:04:00 PM | (708)307-5607 | (773)494-4532 | 12 |
| ✳ 01/30/2008 | 02:14:24 PM | (708)307-5607 | (773)494-4532 | 24 |
| | | | **Total Minutes:** | 143 |

Copyright 2006 EZSTREAM Inc. All Rights Reserved

EZSmart Version 1.0.0.10 - Date 03/03/06

My T-Mobile



Return to T-Mobile.com

Not your phone?    Tour My T-Mobile

# My T··Mobile·

Hello: NAHEEL HINNAWI
708.307.5607

☐ View my profile  ☐ Logout



SUPPORT FOR MY PHONE

ASK T-MOBILE

☐ MINUTES USED



CURRENT BALANCE

Total due by 12/26/07

Account number:  273080503          Mobile number:  (708) 307-5607

**$162.98**   ☐ PAY NOW

Unbilled services and charges displayed reflect total usage for the entire shared account rather than for your individual line.

Current balance due may not reflect recently made payments.

Summary of Unbilled Services as of:    12/27/07 10:58:44 AM

( Start Date: 12/24/07 - End Date: 01/23/08 )

Paperless Billing



☐ Update your Paperless Billing preferences

| Feature | Time Period | Type | Included | Used | Remaining |
|---|---|---|---|---|---|
| Text Messages | Whenever | Messages | Unlimited | 128.0 | Unlimited |
| Call Forward Conditional | Whenever | Minutes | 500.0 | 0.0 | 500.0 |
| T-Mobile to T-Mobile | Whenever | Minutes | Unlimited | 99.0 | Unlimited |
| Picture Messages | Whenever | Messages | Unlimited | 3.0 | Unlimited |
| Use Them Or Lose Them | Off Peak | Minutes | Unlimited | 300.0 | Unlimited |
| Use Them Or Lose Them | Week End | Minutes | Unlimited | 0.0 | Unlimited |
| Incl Minutes | Whenever | Minutes | 2000.0 | 101.0 | 1899.0 |

FREQUENTLY ASKED QUESTIONS

How do I read my bill?

Unbilled charges exceeding your rate plan

How do I update my billing address?

| Category | Units | Amount |
|---|---|---|
| Messages | 8.0 | $1.20 |
| **Total unbilled charges exceeding your rate plan:** | | **$1.20** |

How can I pay my bill?

Additional help >

The "Charges Exceeding Your Rate Plan" section is intended to reflect charges in addition to your monthly recurring charge for your plan such as overage, roaming, long distance, and directory assistance charges. Taxes and fees, downloaded materials, roadside assistance, equipment protection, and other such charges are excluded. Some charges, such as roaming, may be delayed and may appear in subsequent bill cycles.

View your current plan.

Local Airtime, Long Distance and Roaming Charges  ▼

Activity Details for (708) 307-5607

| Date | Destination | Time | Number | Call Type | Minutes |
|---|---|---|---|---|---|
| 12/27/07 | INCOMING | 10:58 AM | 773-494-4532 | | 11 |
| 12/27/07 | INCOMING | 9:53 AM | 773-494-4532 | | 2 |
| 12/27/07 | CHICAGO, IL | 9:24 AM | 312-027-1910 | | 2 |
| 12/27/07 | INCOMING | 8:43 AM | 708-415-1130 | (F) | 1 |
| 12/26/07 | INCOMING | 5:04 PM | 708-415-1130 | (F) | 2 |
| 12/26/07 | TINLEYPARK, IL | 5:05 PM | 708-307-5607 | (F) | 1 |
| 12/26/07 | HINSDALE, IL | 5:09 PM | 708-912-2933 | (F) | 1 |
| 12/26/07 | HARVEY, IL | 4:32 PM | 708-439-8756 | (F) | 1 |
| 12/26/07 | HARVEY, IL | 4:31 PM | 708-439-8786 | (F) | 1 |
| 12/26/07 | HARVEY, IL | 4:31 PM | 708-439-8786 | (F) | 1 |
| 12/26/07 | HARVEY, IL | 4:31 PM | 708-439-8786 | (F) | 1 |
| 12/26/07 | 1-866-# | 3:26 PM | 866-892-2919 | | 9 |
| 12/26/07 | CHICAGO, IL | 1:09 PM | 773-793-5968 | | 1 |
| 12/26/07 | CHICAGO, IL | 1:09 PM | 773-793-5968 | | 1 |
| 12/26/07 | CHICAGO, IL | 1:09 PM | 773-793-5968 | | 1 |
| 12/26/07 | 1-866-# | 12:05 PM | 866-909-9222 | | 3 |
| 12/26/07 | 1-866-# | 12:03 PM | 866-892-2919 | | 2 |
| 12/26/07 | 1-866-# | 11:57 AM | 866-892-2919 | | 1 |
| 12/26/07 | 1-866-# | 11:57 AM | 866-892-2919 | | 1 |
| 12/26/07 | CHICAGO, IL | 11:58 AM | 773-826-1100 | | 1 |
| 12/26/07 | INCOMING | 11:32 AM | 866-225-8631 | | 1 |

EXHIBIT

tabbies®

D

12/27/2007 12:52 PM

Print/View complete bill                https://ebill.t-mobile.com/myTMobile/user?allewco=2000&app=U...

T

This print out of your online T-Mobile invoice is provided for informational purposes only and may not reflect all your current charges. Your actual T-Mobile invoice will be sent in the mail to the address you have provided for billing purposes. Contact Customer Care to obtain an official copy of your invoice. From your T-Mobile phone, dial 611 free of charge. From all other phones, dial 1-800-937-8997 toll free.

Print    Close Window

### Summary of Unbilled Services

( Start Date: 01/24/08 - End Date: 02/23/08 )

| Feature | Time Period | Type | Included | Used | Remaining |
|---|---|---|---|---|---|
| Text Messages | Whenever | Messages | Unlimited | 208.0 | Unlimited |
| Call Forward Conditional | Whenever | Minutes | 500.0 | 0.0 | 500.0 |
| T-Mobile to T-Mobile | Whenever | Minutes | Unlimited | 226.0 | Unlimited |
| Use Them Or Lose Them | Off Peak | Minutes | Unlimited | 224.0 | Unlimited |
| Use Them Or Lose Them | Week End | Minutes | Unlimited | 431.0 | Unlimited |
| Incl Minutes | Whenever | Minutes | 2000.0 | 196.0 | 1804.0 |

### Unbilled charges exceeding your rate plan

| Category | Units | Amount |
|---|---|---|
| Messages | 22.0 | $3.30 |
| Total unbilled charges exceeding your rate plan: | | $3.30 |

The "Charges Exceeding Your Rate Plan" section is intended to reflect charges in addition to your monthly recurring charge for your plan such as overage, roaming, long distance, and directory assistance charges. Taxes and fees, downloaded materials, roadside assistance, equipment protection, and other such charges are excluded. Some charges, such as roaming, may be delayed and may appear in subsequent bill cycles.

### Local Airtime, Long Distance and International Charges

| Date | Destination | Time | Number | Call Type | Minutes |
|---|---|---|---|---|---|
| 1/30/08 | INCOMING | 2:14 PM | 773-494-4532 | | 16 |
| 1/30/08 | INCOMING | 2:04 PM | 773-494-4532 | | 8 |
| 1/30/08 | INCOMING | 1:53 PM | 773-494-4532 | | 9 |
| 1/30/08 | CHICAGO, IL | 1:34 PM | 773-494-4532 | | 5 |
| 1/30/08 | INCOMING | 1:25 PM | 773-494-4532 | | 5 |
| 1/30/08 | VM Retrieval | 12:34 PM | 123 | (F) | 1 |
| 1/30/08 | INCOMING | 12:21 PM | 773-494-4532 | | 5 |
| 1/30/08 | LA GRANGE, IL | 12:08 PM | 708-698-4112 | | 1 |
| 1/30/08 | INCOMING | 11:43 AM | 708-698-4112 | | 1 |
| 1/30/08 | ORLAND, IL | 9:13 AM | 708-645-7361 | | 3 |
| 1/30/08 | TINLEYPARK, IL | 8:24 AM | 708-802-3745 | (F) | 1 |
| 1/30/08 | LA GRANGE, IL | 8:18 AM | 708-415-1130 | (F) | 1 |
| 1/29/08 | INCOMING | 11:23 PM | 708-415-8171 | (F) | 2 |
| 1/29/08 | INCOMING | 11:15 PM | 708-415-8171 | (F) | 5 |
| 1/29/08 | LA GRANGE, IL | 11:04 PM | 708-415-1130 | (F) | 1 |
| 1/29/08 | SUMMIT, IL | 10:52 PM | 708-372-2386 | | 1 |
| 1/29/08 | LA GRANGE, IL | 10:49 PM | 708-698-4112 | | 1 |
| 1/29/08 | INCOMING | 10:38 PM | 708-698-4112 | | 2 |
| 1/29/08 | INCOMING | 10:30 PM | 708-912-2533 | (F) | 3 |
| 1/29/08 | INCOMING | 10:24 PM | 708-802-3745 | (F) | 1 |
| 1/29/08 | TINLEYPARK, IL | 10:19 PM | 708-802-3745 | (F) | 1 |

Company: EZSTREAM        CTN: 773-494-4532
ESN: 2702380299

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|---|---|---|---|---|---|---|
| 12-27-07 | 10:58 AM | 708-307-5607* | Peak | 11 minutes | 16 | 12 |
| 01-30-08 | 12:21 PM | 708-307-5607 | Peak | 4:23 seconds | 8 | 6 |
| 01-30-08 | 1:24 PM | 708-307-5607 | Peak | 4:47 seconds | 8 | 6 |
| 01-30-08 | 1:34 PM | 708-307-5607 | Peak | 4:23 seconds | 8 | 6 |
| 01-30-08 | 1:53 PM | 708-307-5607 | Peak | 8:18 seconds | 14 | 10 |
| 01-30-08 | 2:04 PM | 708-307-5607 | Peak | 7:14 seconds | 12 | 9 |
| 01-30-08 | 2:14 PM | 708-307-5607 | Peak | 15:16 seconds | 24 | 17 |
| | | | Totals | 59 | 90 | 66 |

A total of 59 actual minutes were used, EZSTREAM charged 90 minutes, and 66 were supposed to be charged according to the EZSTREAM billing system.



EXHIBIT

E



**EZSTREAM**

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

ACTIVATE ACCOUNT

LOOKUP ACCOUNT

LOOK UP ACCOUNT

REPORTS

Welcome, _____ ! |  Logout

Dealer Bank Balance: _____

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO. | GET USAGE |

**Phone No:** (773)494-4532

**Subcriber Usage Details:** 11/22/2007 to 12/12/2007

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 11/23/2007 | 04:10:11 PM | (773)241-9076 | (773)494-4532 | 2 |
| 11/26/2007 | 02:46:40 PM | (708)563-5915 | (773)494-4532 | 2 |
| 11/26/2007 | 02:48:48 PM | (708)563-5915 | (773)494-4532 | 4 |
| 11/26/2007 | 02:54:31 PM | (800)998-9802 | (773)494-4532 | 4 |
| 11/26/2007 | 03:00:18 PM | (708)563-5915 | (773)494-4532 | 2 |
| 11/26/2007 | 03:01:19 PM | (586)859-1148 | (773)494-4532 | 2 |
| 11/26/2007 | 05:34:29 PM | (888)788-3282 | (773)494-4532 | 2 |
| 11/27/2007 | 11:53:36 AM | (773)559-1140 | (773)494-4532 | 2 |
| 11/27/2007 | 11:58:54 AM | (773)655-8063 | (773)494-4532 | 4 |
| 11/28/2007 | 03:20:55 PM | (888)788-3282 | (773)494-4532 | 2 |
| 11/28/2007 | 04:45:10 PM | (888)845-4729 | (773)494-4532 | 4 |
| 11/28/2007 | 05:00:12 PM | (708)698-4112 | (773)494-4532 | 4 |
| ☀ 11/29/2007 | 09:12:20 AM | (708)415-1130 | (773)494-4532 | 4 |
| ☀ 11/29/2007 | 09:15:20 AM | (773)494-4532 | (708)415-1130 | 4 |

1 of 2



EXHIBIT

F

12/12/2007 2:07 PM

Company: EZSTREAM        CTN: 773-494-4532
ESN: 2702380299

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|------|-----------|----------------|--------------|----------|--------------------|-----------------------------|
| 11/29/07 | 9:12:20 AM | 708-415-1130 | Peak | 1:30 seconds | 4 | 3 |
| 11/29/07 | 9:15:20 AM | 708-415-1130 | Peak | 1:57 seconds | 4 | 3 |
| 11/29/07 | 10:56:49 AM | 773-655-8063 | Peak | 52 seconds | 4 | 2 |
| 11/29/07 | 11:01:06 AM | 773-655-8063 | Peak | 52 seconds | 4 | 2 |
| 11/29/07 | 1:12:54 PM | 708-698-4112 | Peak | 58 seconds | 4 | 2 |
| 12/07/07 | 3:45:13 PM | 773-655-8063 | Peak | 1:32 seconds | 4 | 3 |
| 12/10/07 | 10:39:20 AM | 708-307-5607* | Peak | 1:25 seconds | 4 | 3 |
| 12/10/07 | 12:38:31 PM | 773-655-8063 | Peak | 1:44 seconds | 4 | 3 |
| 12/10/07 | 12:41:30 PM | 773-655-8063 | Peak | 10:30 seconds | 14 | 12 |
| | | | Totals | 24 | 46 | 33 |

A total of 24 actual minutes were used, EZSTREAM charged 46 minutes, and 33 were supposed to be charged according to the EZSTREAM billing system.

EXHIBIT
G



# EZSTREAM

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

ACTIVATE ACCOUNT

LOOKUP ACCOUNT

LOOK UP ACCOUNT

REPORTS

Welcome, ████████ ! | Logout 
Dealer Bank Balance: ████████

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO. | GET USAGE |

**Phone No:** (773)559-1140

**Subcriber Usage Details:** 11/21/2007 to 12/12/2007

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 11/23/2007 | 04:02:26 PM | (773)241-9076 | (773)559-1140 | 2 |
| 11/23/2007 | 04:02:58 PM | (773)241-9076 | (773)559-1140 | 2 |
| 11/23/2007 | 04:11:51 PM | (773)655-8063 | (773)559-1140 | 2 |
| 11/26/2007 | 03:08:12 PM | (708)563-5915 | (773)559-1140 | 2 |
| 11/26/2007 | 03:09:10 PM | (800)998-9812 | (773)559-1140 | 2 |
| 11/26/2007 | 03:13:18 PM | (800)998-9802 | (773)559-1140 | 4 |
| 11/27/2007 | 11:53:37 AM | (773)559-1140 | (773)494-4532 | 2 |
| 11/27/2007 | 11:54:49 AM | (800)998-9802 | (773)559-1140 | 2 |
| 11/27/2007 | 11:56:05 AM | (773)559-1140 | (773)655-8063 | 2 |
| 11/27/2007 | 12:13:04 PM | (800)998-9802 | (773)559-1140 | 4 |
| 11/27/2007 | 12:14:48 PM | (888)845-4729 | (773)559-1140 | 4 |
| 12/10/2007 | 02:55:55 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/10/2007 | 03:06:24 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/10/2007 | 03:28:03 PM | (773)772-4470 | (773)559-1140 | 2 |



EXHIBIT

H

tablas'

12/12/2007 2:16 PM

| 12/10/2007 | 03:29:20 PM | (773)559-1140 | (773)559-1140 | 5 |
| 12/12/2007 | 12:55:12 PM | (773)559-1140 | (773)319-1429 | 2 |
| | | | **Total Minutes:** | **45** |

Copyright 2006 EZSTREAM Inc. All Rights Reserved

EZSmart Version 1.0.0.10 · Date:03/03/06

12/12/2007 2:16 PM



# EZSTREAM

## EZ STREAM MAINTENANCE AND RESOURCE TOOL

| ACTIVATE ACCOUNT |
| LOOK UP ACCOUNT |
| REPORTS |

LOOK UP ACCOUNT

Welcome, ████████████ ! | Logout
Dealer Bank Balance: ████████

| LOOKUP SUBSCRIBER | ADD MINUTES | CHANGE ESN | RESET VM | CHANGE PHONE NO. | GET USAGE |

**Phone No:** (773)655-8063

**Subcriber Usage Details:** 11/20/2007 to 12/12/2007

| Call Date | Call Time | Called To | Called From | Minutes Used |
|---|---|---|---|---|
| 11/23/2007 | 04:12:07 PM | (773)655-8063 | (773)559-1140 | 2 |
| 11/26/2007 | 02:46:16 PM | (708)563-5915 | (773)655-8063 | 2 |
| 11/26/2007 | 02:46:39 PM | (888)788-3282 | (773)655-8063 | 2 |
| ✳ 11/26/2007 | 02:52:06 PM | (888)845-4729 | (773)655-8063 | 4 |
| ✳ 11/26/2007 | 02:55:15 PM | (888)845-4729 | (773)655-8063 | 4 |
| 11/26/2007 | 03:13:07 PM | (773)494-4532 | (773)655-8063 | 2 |
| 11/26/2007 | 04:12:34 PM | (888)845-4729 | (773)655-8063 | 6 |
| 11/27/2007 | 11:19:15 AM | (800)998-9802 | (773)655-8063 | 2 |
| 11/27/2007 | 11:56:14 AM | (773)559-1140 | (773)655-8063 | 2 |
| ✳ 11/27/2007 | 11:58:56 AM | (773)655-8063 | (773)494-4532 | 4 |
| 11/27/2007 | 12:05:49 PM | (888)845-4729 | (773)655-8063 | 5 |
| 11/28/2007 | 09:19:15 AM | (773)655-8063 | (910)322-3366 | 2 |
| 11/28/2007 | 09:20:35 AM | (910)322-3366 | (773)655-8063 | 2 |
| 11/28/2007 | 10:05:29 AM | (773)655-8063 | (773)655-8063 | 2 |



EXHIBIT
I

12/12/2007 2:33 PM

| Date | Time | From | To | |
|---|---|---|---|---|
| 11/28/2007 | 10:06:11 AM | (773)559-1140 | (773)655-8063 | 2 |
| 11/28/2007 | 10:07:21 AM | (708)691-7019 | (773)655-8063 | 2 |
| 11/28/2007 | 10:09:37 AM | (708)691-7019 | (773)655-8063 | 4 |
| 11/28/2007 | 10:22:21 AM | (773)655-8063 | (910)322-3366 | 2 |
| 11/28/2007 | 10:23:37 AM | (910)322-3366 | (773)655-8063 | 2 |
| ✳11/28/2007 | 12:08:00 PM | (888)845-4729 | (773)655-8063 | 4 |
| ✳11/28/2007 | 12:34:33 PM | (708)691-7019 | (773)655-8063 | 4 |
| ✳11/28/2007 | 04:42:11 PM | (708)691-7019 | (773)655-8063 | 4 |
| 11/28/2007 | 04:49:05 PM | (800)998-9802 | (773)655-8063 | 2 |
| 11/28/2007 | 04:50:37 PM | (888)845-4729 | (773)655-8063 | 6 |
| ✳11/29/2007 | 10:56:48 AM | (773)494-4532 | (773)655-8063 | 4 |
| ✳11/29/2007 | 11:01:04 AM | (773)494-4532 | (773)655-8063 | 4 |
| 11/30/2007 | 06:22:38 PM | (773)341-6509 | (773)655-8063 | 2 |
| ✳11/30/2007 | 06:26:23 PM | (773)341-6509 | (773)655-8063 | 16 |
| ✳11/30/2007 | 07:21:01 PM | (773)803-0391 | (773)655-8063 | 11 |
| ✳11/30/2007 | 07:57:23 PM | (800)998-9802 | (773)655-8063 | 4 |
| 11/30/2007 | 08:15:19 PM | (773)341-6509 | (773)655-8063 | 4 |
| 11/30/2007 | 08:25:35 PM | (773)557-9821 | (773)655-8063 | 4 |
| 11/30/2007 | 08:35:29 PM | (800)998-9802 | (773)655-8063 | 4 |
| 11/30/2007 | 08:39:53 PM | (312)731-7902 | (773)655-8063 | 2 |
| 11/30/2007 | 08:43:34 PM | (773)655-8063 | (773)655-8063 | 4 |
| 11/30/2007 | 08:48:19 PM | (411)000-0000 | (773)655-8063 | 15 |
| 11/30/2007 | 08:55:00 PM | (800)998-9802 | (773)655-8063 | 2 |

12/12/2007 2:33 PM

| 12/04/2007 | 11:16:43 AM | (800)998-9802 | (773)655-8063 | 2 |
| 12/04/2007 | 11:17:29 AM | (888)845-4729 | (773)655-8063 | 4 |
| 12/04/2007 | 11:25:29 AM | (888)845-4729 | (773)655-8063 | 4 |
| 12/04/2007 | 11:57:24 AM | (888)845-4729 | (773)655-8063 | 5 |
| 12/04/2007 | 09:31:07 PM | (708)307-5607 | (773)655-8063 | 0 |
| 12/04/2007 | 10:13:32 PM | (708)307-5607 | (773)655-8063 | 0 |
| 12/04/2007 | 10:14:22 PM | (708)372-2386 | (773)655-8063 | 0 |
| 12/04/2007 | 10:15:31 PM | (708)645-6171 | (773)655-8063 | 0 |
| 12/04/2007 | 10:19:45 PM | (815)834-0455 | (773)655-8063 | 0 |
| 12/04/2007 | 10:39:42 PM | (773)655-8063 | (815)210-7726 | 0 |
| 12/04/2007 | 10:49:57 PM | (516)747-0837 | (773)655-8063 | 0 |
| 12/04/2007 | 10:51:31 PM | (229)291-1327 | (773)655-8063 | 0 |
| 12/04/2007 | 10:53:16 PM | (310)475-4500 | (773)655-8063 | 0 |
| 12/04/2007 | 10:54:07 PM | (323)876-7651 | (773)655-8063 | 0 |
| 12/04/2007 | 10:56:39 PM | (411)000-0000 | (773)655-8063 | 13 |
| 12/04/2007 | 11:15:32 PM | (708)912-2333 | (773)655-8063 | 0 |
| 12/04/2007 | 11:27:47 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/05/2007 | 04:22:30 PM | (773)655-8063 | (773)476-8817 | 2 |
| 12/05/2007 | 04:24:47 PM | (708)912-2333 | (773)655-8063 | 4 |
| 12/05/2007 | 04:59:27 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/05/2007 | 05:00:06 PM | (773)655-8063 | (708)912-2333 | 2 |
| 12/05/2007 | 05:01:03 PM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:08:21 AM | (773)655-8063 | (773)655-8063 | 2 |

| | | | | |
|---|---|---|---|---|
| 12/06/2007 | 10:09:28 AM | (773)264-7209 | (773)655-8063 | 2 |
| 12/06/2007 | 10:10:42 AM | (708)912-2333 | (773)655-8063 | 5 |
| 12/06/2007 | 10:14:26 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:17:30 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:17:59 AM | (773)655-8063 | (708)912-2333 | 2 |
| 12/06/2007 | 10:19:32 AM | (708)912-2333 | (773)655-8063 | 2 |
| 12/06/2007 | 10:20:17 AM | (773)655-8063 | (708)912-2333 | 2 |
| 12/06/2007 | 10:58:24 AM | (630)684-2191 | (773)655-8063 | 2 |
| ✱12/07/2007 | 10:33:06 AM | (708)307-5607 | (773)655-8063 | 4 |
| ✱12/07/2007 | 10:51:05 AM | (708)912-2333 | (773)655-8063 | 5 |
| ✱12/07/2007 | 03:45:15 PM | (773)655-8063 | (773)494-4532 | 4 |
| ✱12/10/2007 | 12:38:29 PM | (773)494-4532 | (773)655-8063 | 4 |
| ✱12/10/2007 | 12:41:15 PM | (773)494-4532 | (773)655-8063 | 14 |
| 12/10/2007 | 01:14:31 PM | (708)912-2333 | (773)655-8063 | 2 |
| ✱12/10/2007 | 02:55:56 PM | (773)655-8063 | (773)559-1140 | 4 |
| ✱12/10/2007 | 03:06:26 PM | (773)655-8063 | (773)559-1140 | 4 |
| 12/11/2007 | 02:18:46 PM | (773)494-4532 | (773)655-8063 | 4 |
| | | | **Total Minutes:** | **257** |

Copyright 2006 EZSTREAM Inc. All Rights Reserved

EZSmart Version 1.0.0.10 - Date:03/03/06

12/12/2007 2:33 PM

EZSTREAM claims they have a one minute connection fee on all Peak calls. The following table represents the calls in which more than one additional minute was charged.

Company: EZSTREAM    CTN: 773-655-8063
ESN:   00408331251

| Date | Call Time | Called To/From | Type of Call | Duration | Charge (in minutes) | Correct Charges (in minutes) |
|------|-----------|----------------|--------------|----------|---------------------|------------------------------|
| 11/26/07 | 2:52:06 PM | 888-845-4729 | Peak | 1:38 seconds | 4 | 3 |
| 11/26/07 | 2:55:15 PM | 888-845-4729 | Peak | 1:20 seconds | 4 | 3 |
| 11/27/07 | 11:58:56 AM | 773-494-4532 | Peak | 1:39 seconds | 4 | 3 |
| 11/28/07 | 12:08:00 PM | 888-845-4729 | Peak | 1:17 seconds | 4 | 3 |
| 11/28/07 | 12:34:33 PM | 708-691-7019 | Peak | 1:35 seconds | 4 | 3 |
| 11/28/07 | 4:42:11 PM | 708-691-7019 | Peak | 1:30 seconds | 4 | 3 |
| 11/29/07 | 10:56:48 AM | 773-494-4532 | Peak | 1:08 seconds | 4 | 3 |
| 11/29/07 | 11:01:04 AM | 773-494-4532 | Peak | 1:30 seconds | 4 | 3 |
| 11/30/07 | 6:26:23 PM | 773-341-6509 | Peak | 12:09 seconds | 16 | 14 |
| 11/30/07 | 7:21:01 PM | 773-803-0391 | Peak | 8:12 seconds | 11 | 10 |
| 11/30/07 | 7:57:23 PM | 800-998-9802 | Peak | 1:02 seconds | 4 | 3 |
| 12/07/07 | 10:33:06 AM | 708-307-5607 | Peak | 1:20 seconds | 4 | 3 |
| 12/07/07 | 10:51:05 AM | 708-912-2333 | Peak | 2:57 seconds | 5 | 4 |
| 12/07/07 | 3:45:15 PM | 773-494-4532 | Peak | 1:30 seconds | 4 | 3 |
| 12/10/07 | 12:38:29 PM | 773-494-4532 | Peak | 1:41 seconds | 4 | 3 |
| 12/10/07 | 12:41:15 PM | 773-494-4532 | Peak | 10:40 seconds | 14 | 12 |
| 12/10/07 | 2:55:56 PM | 773-559-1140 | Peak | 1:49 seconds | 4 | 3 |
| 12/10/07 | 3:06:26 PM | 773-559-1140 | Peak | 1:37 seconds | 4 | 3 |
| | | | Totals | 64 | 102 | 82 |



EXHIBIT

J



Account Management    Airtime Usage Summary

This section allows you to view your airtime usage. The information shown is updated as a result of partial records coming in which can vary from 30 minutes to 2-3 days.

Select Mobile Number

Bill Cycle End Date

View Usage

Current Plan
Peak Minutes Remaining
Off Peak Minutes Remaining
Features

Payment Due
Cash Balance

| Overage Charges 12/30/2007 - 1/19/2008 | |
|---|---|
| Peak Minutes Used | |
| Off Peak Minutes Used | |
| Peak Minutes Overage | $.00 |
| Off Peak Minutes Overage | $.00 |
| SMS Qty | 0 |
| SMS Overage | $.00 |
| Web Data Qty | |
| Web Data Overage | $.00 |
| MMS Included | |
| MMS Used | |
| MMS Overage | $.00 |
| Directory Assistance Qty | |
| Directory Assistance Overage | $.00 |
| International Long Distance Qty | |
| International Long Distance Overage | $.00 |
| Out of Network Roaming Qty | |
| Out of Network Roaming Overage | $.00 |
| Mobile To Mobile | |
| Mobile To Mobile Overage | $.00 |
| Long Distance | |
| Long Distance Overage | $.00 |



EXHIBIT

K

US Mobile claims the have a 30 second monthly connection fee. The following balance represents the calls in which the account was charged additional airtime, or more than a one minute daily connection fee.

Company:    US Mobile          CTN: 773-953-3761
ESN:        14116302845

| Date | Time of call | Number Called | Duration | Type of call | Start Balance | End Balance | What balance should be |
|------|------|------|------|------|------|------|------|
| 12-21-07 | 2:59 PM | 773-953-3715 | 46 seconds | Peak | 248 | 238 | 247 |
| 12-24-07 | 12:23 PM | 773-641-4243 | 9 seconds | Peak | 238 | 237 | 237 |
| 12-24-07 | 12:27 PM | 773-953-3715 | 2:30 seconds | Peak | 237 | 233 | 234 |
| 12-24-07 | 12:42 PM | 773-559-1140 | 1:11 seconds | Peak | 233 | 230 | 232 |
| 12-24-07 | 2:53 PM | 773-655-8063 | 1:42 seconds | Peak | 230 | 227 | 231 |
| 12-26-07 | 10:34 AM | 708-307-5607 | 5:30 seconds | Peak | 227 | 220 | 221 |
| 12-24-07 | 11:42 AM | 773-559-1140 | 44 seconds | Peak | 220 | 211 | 218 |
| 12-27-07 | 11:04 AM | 708-415-1130 | 36 seconds | Peak | 210 | 209 | 209 |
| 12-28-07 | 12:12 PM | 773-655-8063 | 1:13 seconds | Peak | 207 | 204 | 205 |
| 12-28-07 | 12:14 PM | 773-953-3761 | 2:15 seconds | Peak | 204 | 200 | 201 |
| 12-31-07 | 11:38 AM | 708-912-2333 | 15 seconds | Peak | 191 | 190 | 190 |
| 12-31-07 | 3:42 PM | 708-912-2333 | 3:09 seconds | Peak | 190 | 185 | 186 |
| 01-02-08 | 2:43 PM | 773-641-4243 | 1:13 seconds | Peak | 179 | 176 | 177 |
| 01-02-08 | 3:16 PM | 773-655-8063 | 2:05 seconds | Peak | 176 | 172 | 173 |
| 01-02-08 | 3:18 PM | 773-655-8063 | 10 seconds | Peak | 172 | 171 | 171 |
| 01-03-08 | n/a | n/a | n/a | n/a | 168 | n/a | 167 |
| 01-04-08 | n/a | n/a | n/a | n/a | 166 | n/a | 166 |
| 01-07-08 | n/a | n/a | n/a | n/a | 157 | n/a | 165 |
| 01-08-08 | n/a | n/a | n/a | n/a | 154 | n/a | 164 |
| 01-09-08 | n/a | n/a | n/a | n/a | 151 | n/a | 163 |
| 01-10-08 | n/a | n/a | n/a | n/a | 148 | n/a | 162 |
| 01-11-08 | n/a | n/a | n/a | n/a | 146 | n/a | 161 |

Totals Minutes Used-                                  33
Total Daily Charges (12/20/07-01/11/08) -            23
Total minutes that should have been deducted-        56

Start Balance-                                       250
End Balance-                                         146
Minutes Deducted-                                    104

Total Minutes Deducted                               104
Total usage and daily charges-                        56
**Minutes unaccounted for-**                          48


EXHIBIT

JPL/BAO/JLL                    Firm I.D. 33179                    526-1-8-38

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLATINUMTEL COMMUNICATIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZEFCOM, LLC d/b/a TELISPIRE, )<br>TELISPIRE, INC., U.S. MOBILE, INC., EZ )<br>STREAM, INC., QUICK COM, INC., )<br>QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION, EZ COM, )<br>CHICAGO, INC., d/b/a QUICK COM )<br>CHICAGO, and RAMSEY NATOUR, )<br>individually and d/b/a U.S. MOBILE, INC., )<br>QUICK COMM, INC. a/k/a QUICK COM, )<br>INC., QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION and/or )<br>QUICK COM CHICAGO, )<br>)<br>Defendants. ) | Court No.: 08 CV 1062 |

**Affidavit of Areej Malley**

Areej Malley, being first duly sworn on her oath, deposes and states as follows:

1.      I am currently employed by PlatinumTel Communications LLC (hereinafter referred to as "PlatinumTel") in Sales Support. I have been employed by PlatinumTel for approximately the last four years.

2.      I took part in an investigation that PlatinumTel conducted regarding the services provided by "EZ Stream" (hereinafter referred to as "EZ") and US Mobile PCS" (hereinafter referred to as "US"). As part of this investigation, I, along with three other PlatinumTel employees (Aracely Morales, Nadia Deeb and Naheel Hinnawi), purchased cell phones and



minutes of cell phone use from EZ and US. Thereafter, we timed the calls made to and from the phones we purchased to see if EZ and US were accurately reporting the length of the calls that were made using their products.

3.      For $50.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 559-1140. For $60.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 494-4532. For $90.00, we purchased a phone from EZ that was assigned the cellular phone number of  (773) 665-8063. All three phones were purchased on November 21, 2007 from the Phone Plus store at 2454 S. California Avenue in Chicago, Illinois.

4.      Between December 27, 2007 and January 30, 2008, certain calls were made between the (773) 494-4532 number and another cellular phone maintained through T-Mobile.

5.      EZ maintains a website that shows EZ's records as to the length of calls that were made using EZ's wireless services. Retail dealers of EZ products can access this website. Only, with the assistance of a dealer of EZ's products, a consumer of EZ's services can use this website to monitor how many usage minutes have been expended under the phone or rate plan the consumer has purchased. T-Mobile maintains a website (which consumers can access directly without a dealer's assistance) that shows the length of calls made to or from a T-Mobile phone.

6.      As part of the investigation, we checked the websites maintained by EZ and T-Mobile in order to see what each company had recorded as to the length of the calls between the (773) 494-4532 number provided by EZ and the T-Mobile phone.

7.      After checking these records, it was clear that EZ had overstated the length of seven separate calls. The seven calls in question had an actual duration of approximately 59 minutes. EZ's website indicated that these calls had expended 90 minutes of cellular service. As part of its usage terms and conditions, EZ charges a one-minute per call connection fee

(regardless of the call's actual length). Since 7 calls were made, the one-minute per call connection fee should have only added 7 minutes to the 59 minute actual duration of the calls. Thus, EZ's records should have shown a maximum of 66 minutes was expended for the seven calls in question. Instead, as noted above, the EZ's website showed 90 minutes were expended, which made a total overcharge of 24 minutes. EZ's website recorded the times for the individual calls as follows: a call that lasted 11 minutes was shown as lasting 16 minutes; two calls that lasted 4 minutes and 23 seconds each were both shown as lasting 8 minutes; one call that lasted 4 minutes and 47 seconds was shown as lasting 8 minutes; one call that lasted 8 minutes and 18 seconds was shown as lasting 14 minutes; one call that lasted 7 minutes and 14 seconds was shown as lasting 12 minutes; and, one call that lasted 15 minutes and 16 seconds was shown as lasting 24 minutes.

8.    Our investigation also revealed that EZ inaccurately calculated the minutes in connection with nine calls that were made between November 29, 2007 and December 10, 2007 using the phone with the (773) 494-4532 number. The nine calls in question lasted a total of approximately 24 minutes. However, EZ's website indicated that 46 minutes were used during these calls. Even after EZ's one-minute per call connection fee is factored in, a maximum amount of 33 minutes should have been expended in connection with the calls.

9.    As part of the investigation, we also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 559-1140. EZ's website shows that on November 27, 2007, two calls were made from the (773) 559-1140 number within a very short time of each other. The first call was commenced at 12:13:04 p.m. The second call was commenced at 12:14:48, which is 1 minute and 44 seconds after the first call was commenced. EZ's website showed that 4 minutes were expended with each call. Even factoring in EZ's one-

minute per call connection fee, EZ's recording of the minutes that were expended on the first call cannot be correct. The first call lasted a maximum of 1 minute and 44 seconds, but EZ's records show 4 minutes being used.

10.    I called EZ's customer service line to protest EZ's calculation of minutes used for the call made at 12:13:04 p.m. on November 27, 2007. I was put in contact with a woman named "Marlene" who represented she was a "manager" at EZ. I explained to Marlene that EZ's calculation of the minutes used for the call in question was clearly inaccurate. Marlene directed me to take up the matter with Sprint and also indicated that she would send an e-mail to Sprint regarding the billing error. I asked to speak to Marlene's superior but Marlene indicated she was the only person present in customer service office. I asked if I could leave a voice mail message for EZ's owner, but Marlene indicated EZ's owner did not have a voice mailbox.

11.    As part of the investigation, we also checked EZ's records concerning the length of calls placed to and from the phone that had number (773) 655-8063 during the period of November 23, 2007 to December 11, 2007. We monitored the actual duration of the calls made using the phone during this time period. EZ's website overstated the minutes used on a total of seventeen calls that were made during that time period. The actual duration of the seventeen calls was 64 minutes. Even including EZ's one minute per call connection fee, the maximum amount of minutes used in connection with the seventeen calls should have been 82 minutes. EZ's website inaccurately showed 102 minutes were used in connection with the seventeen calls.

12.    In addition to the conversation described in paragraph 10 above, I also contacted EZ's customer service department on several occasions to complain about the overcharging described above. On each occasion, the EZ customer service representatives with whom I spoke insisted that no overcharging was taking place.

13.    I am an adult over the age of eighteen and could competently testify to the facts contained in this affidavit if called upon to do so.

FURTHER AFFIANT SAITH NOT.

Areej Malley

SUBSCRIBED and SWORN to before me this
15th day of February_____, 2008.

Margaret Furczon
Notary Public

OFFICIAL SEAL
MARGARET FURCZON
Notary Public - State of Illinois
My Commission Expires Apr 13, 2010

526-1\#184415.doc