JPL/BAO/JLL        Firm I.D. 33179        526-1-8-38

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PLATINUMTEL COMMUNICATIONS, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZEFCOM, LLC d/b/a TELISPIRE, )<br>TELISPIRE, INC., U.S. MOBILE, INC., EZ )<br>STREAM, INC., QUICK COM, INC., )<br>QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION, EZ COM, )<br>CHICAGO, INC., d/b/a QUICK COM )<br>CHICAGO, and RAMSEY NATOUR, )<br>individually and d/b/a U.S. MOBILE, INC., )<br>QUICK COMM, INC. a/k/a QUICK COM, )<br>INC., QUICK COM II, INC., QUICK COM )<br>CELLULAR CORPORATION and/or )<br>QUICK COM CHICAGO, )<br>)<br>Defendants. ) | Court No.: 08 CV 1062 |

### Affidavit of Areej Malley

Areej Malley, being first duly sworn on her oath, deposes and states as follows:

1. I am currently employed by PlatinumTel Communications LLC (hereinafter referred to as "PlatinumTel") in Sales Support. I have been employed by PlatinumTel for approximately the last four years.

2. I took part in an investigation that PlatinumTel conducted regarding the services provided by "EZ Stream" (hereinafter referred to as "EZ") and US Mobile PCS" (hereinafter referred to as "US"). As part of this investigation, I, along with three other PlatinumTel employees (Aracely Morales, Nadia Deeb and Naheel Hinnawi), purchased cell phones and



minutes of cell phone use from EZ and US. Thereafter, we timed the calls made to and from the phones we purchased to see if EZ and US were accurately reporting the length of the calls that were made using their products.

3. For $50.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 559-1140. For $60.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 494-4532. For $90.00, we purchased a phone from EZ that was assigned the cellular phone number of (773) 665-8063. All three phones were purchased on November 21, 2007 from the Phone Plus store at 2454 S. California Avenue in Chicago, Illinois.

4. Between December 27, 2007 and January 30, 2008, certain calls were made between the (773) 494-4532 number and another cellular phone maintained through T-Mobile.

5. EZ maintains a website that shows EZ's records as to the length of calls that were made using EZ's wireless services. Retail dealers of EZ products can access this website. Only, with the assistance of a dealer of EZ's products, a consumer of EZ's services can use this website to monitor how many usage minutes have been expended under the phone or rate plan the consumer has purchased. T-Mobile maintains a website (which consumers can access directly without a dealer's assistance) that shows the length of calls made to or from a T-Mobile phone.

6. As part of the investigation, we checked the websites maintained by EZ and T-Mobile in order to see what each company had recorded as to the length of the calls between the (773) 494-4532 number provided by EZ and the T-Mobile phone.

7. After checking these records, it was clear that EZ had overstated the length of seven separate calls. The seven calls in question had an actual duration of approximately 59 minutes. EZ's website indicated that these calls had expended 90 minutes of cellular service. As part of its usage terms and conditions, EZ charges a one-minute per call connection fee

(regardless of the call's actual length). Since 7 calls were made, the one-minute per call connection fee should have only added 7 minutes to the 59 minute actual duration of the calls. Thus, EZ's records should have shown a maximum of 66 minutes was expended for the seven calls in question. Instead, as noted above, the EZ's website showed 90 minutes were expended, which made a total overcharge of 24 minutes. EZ's website recorded the times for the individual calls as follows: a call that lasted 11 minutes was shown as lasting 16 minutes; two calls that lasted 4 minutes and 23 seconds each were both shown as lasting 8 minutes; one call that lasted 4 minutes and 47 seconds was shown as lasting 8 minutes; one call that lasted 8 minutes and 18 seconds was shown as lasting 14 minutes; one call that lasted 7 minutes and 14 seconds was shown as lasting 12 minutes; and, one call that lasted 15 minutes and 16 seconds was shown as lasting 24 minutes.

8.  Our investigation also revealed that EZ inaccurately calculated the minutes in connection with nine calls that were made between November 29, 2007 and December 10, 2007 using the phone with the (773) 494-4532 number. The nine calls in question lasted a total of approximately 24 minutes. However, EZ's website indicated that 46 minutes were used during these calls. Even after EZ's one-minute per call connection fee is factored in, a maximum amount of 33 minutes should have been expended in connection with the calls.

9.  As part of the investigation, we also examined EZ's records concerning the length of calls placed to and from the phone that had number (773) 559-1140. EZ's website shows that on November 27, 2007, two calls were made from the (773) 559-1140 number within a very short time of each other. The first call was commenced at 12:13:04 p.m. The second call was commenced at 12:14:48, which is 1 minute and 44 seconds after the first call was commenced. EZ's website showed that 4 minutes were expended with each call. Even factoring in EZ's one-

minute per call connection fee, EZ's recording of the minutes that were expended on the first call cannot be correct. The first call lasted a maximum of 1 minute and 44 seconds, but EZ's records show 4 minutes being used.

10. I called EZ's customer service line to protest EZ's calculation of minutes used for the call made at 12:13:04 p.m. on November 27, 2007. I was put in contact with a woman named "Marlene" who represented she was a "manager" at EZ. I explained to Marlene that EZ's calculation of the minutes used for the call in question was clearly inaccurate. Marlene directed me to take up the matter with Sprint and also indicated that she would send an e-mail to Sprint regarding the billing error. I asked to speak to Marlene's superior but Marlene indicated she was the only person present in customer service office. I asked if I could leave a voice mail message for EZ's owner, but Marlene indicated EZ's owner did not have a voice mailbox.

11. As part of the investigation, we also checked EZ's records concerning the length of calls placed to and from the phone that had number (773) 655-8063 during the period of November 23, 2007 to December 11, 2007. We monitored the actual duration of the calls made using the phone during this time period. EZ's website overstated the minutes used on a total of seventeen calls that were made during that time period. The actual duration of the seventeen calls was 64 minutes. Even including EZ's one minute per call connection fee, the maximum amount of minutes used in connection with the seventeen calls should have been 82 minutes. EZ's website inaccurately showed 102 minutes were used in connection with the seventeen calls.

12. In addition to the conversation described in paragraph 10 above, I also contacted EZ's customer service department on several occasions to complain about the overcharging described above. On each occasion, the EZ customer service representatives with whom I spoke insisted that no overcharging was taking place.

13. I am an adult over the age of eighteen and could competently testify to the facts contained in this affidavit if called upon to do so.

FURTHER AFFIANT SAITH NOT.

_____
Areej Malley

SUBSCRIBED and SWORN to before me this
15th day of February, 2008.

_____
Notary Public

OFFICIAL SEAL
MARGARET FURCZON
Notary Public - State of Illinois
My Commission Expires Apr 13, 2010

526-1\#184415.doc