## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| PLATINUMTEL COMMUNICATIONS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No. 08-CV-1062 |
| ZEFCOM, LLC d/b/a TELISPIRE, | ) |
| TELISPIRE, INC., US MOBILE, INC., | ) Judge Joan H. Lefkow |
| EZ STREAM, INC., QUICK COM, INC., | ) |
| QUICK COM II, INC., QUICK COM | ) |
| CELLULAR CORPORATION, EZ COM, | ) |
| CHICAGO, INC. d/b/a QUICK COM | ) |
| CHICAGO, and RAMSEY NATOUR, | ) |
| individually and d/b/a US MOBILE, INC., | ) |
| QUICK COMM, INC. a/k/a QUICK COM, | ) |
| INC., QUICK COM II, INC., QUICK COM | ) |
| CELLULAR CORPORATION, and/or | ) |
| QUICK COM CHICAGO, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants, Zefcom, LLC d/b/a Telispire ("Telispire"), EZ Stream, Inc. ("EZ Stream"),

US Mobile, Inc. ("US Mobile") and Ramsey Natour, individually ("Natour") and d/b/a US

Mobile, Quick Com, Quick Com II, Quick Com Cellular Corp, Quick Com Chicago, and EZ

Com (the "Quick Com entities"), have each moved under Federal Rules of Civil Procedure

12(b)(6) and 9(b) to dismiss the amended complaint filed by Platinumtel Communications, LLC

("Platinumtel").  Platinumtel alleges that defendants have disseminated false advertising in

violation of § 43(a) of the Lanham Act (Count I), the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA") (Count II), and the Illinois Uniform Deceptive Trade Practices

Act ("IUDTPA") (Count III). Platinumtel also alleges a civil conspiracy between Telispire and

EZ Stream (Count IV), and Telispire, US Mobile and the Quick Com entities (Count V). For the

reasons discussed herein, Telispire's motion is granted; EZ Stream's motion is denied; and US

Mobile's and Natour's motion is denied

The court has original jurisdiction under The Lanham Act, 15 USC. §§ 1051 et seq. and

supplemental jurisdiction over the state law claims pursuant to 28 USC. §§ 1338(b) and 1367(a).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a

claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital

Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a

Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiff's complaint and

draws all reasonable inferences in favor of plaintiffs. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971,

977 (7th Cir. 1999). Factual allegations must, however, be "enough to raise a right to relief

above the speculative level." *Bell Atlantic Corp.* v. *Twombly*, - US -, 127 S. Ct. 1955, 1965, 167

L. Ed.2d 929 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at

235-236 (3d ed. 2004)).

Additionally, because Platinumtel's claims are based on allegations of consumer fraud in

violation of § 43(a) of the Lanham Act, the ICFA and the IUDTPA, they are subject to the

heightened pleading standard of Rule 9(b). *See MPC Containment Sys, Ltd.* v. *Moreland*, No. 05

C 6973, 2006 US Dist. LEXIS 55780, at *5-6 (N.D. Ill. Aug. 10, 2006) (Rule 9(b) applies to

claims alleging false representation under the Lanham Act) (collecting cases); *Cardionet, Inc.* v.

*Lifewach Corp.*, No. 07 C 6625, 2008 US Dist. LEXIS 15941, at *6-7 (N.D. Ill. Feb. 27, 2008)

(Rule 9(b) applies to claims alleging false advertising under the Lanham Act, as well as to ICFA

and IUDTPA claims sounding in fraud); *Borsellino* v. *Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007) (Rule 9(b) applies to civil conspiracy claims sounding in fraud). Rule 9(b) requires the plaintiff to "to state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In other words, a plaintiff must plead the "who, what, where, when, and how" of the alleged fraud. *Uni*Quality, Inc.* v. *Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotations and citations omitted).

At the same time, however, Rule 9 is to be read in conjunction with Rule 8. *Munch* v. *Sears Roebuck & Co.*, 2008 U.S. Dist. LEXIS 76822, at *10-11 (N.D. Ill. Aug. 27, 2007) (Lefkow, J) (citing *Brown* v. *SBC Communications, Inc.*, 2007 U.S. Dist. LEXIS 14790, at *19 (S.D. Ill. March 1, 1007)). This means that a plaintiff is required to plead "only slightly more than is demanded under ordinary notice pleading." *Id.* More specifically, "a plaintiff must plead the bare bones of a fraudulent scheme, by supplying a brief sketch of how the fraudulent scheme operated, when and where it occurred, and the participants. *Id.* (internal citations and quotations omitted). "The reason, of course, is that under the liberal discovery provisions of the Federal Rules of Civil Procedure, more information can be gathered through discovery." *Id.*

## BACKGROUND

According to the First Amended Complaint ("Amended Complaint"), this case arises from a "systematic scheme by the Defendants to deceive and/or mislead consumers who use prepaid wireless voice and data services." Am. Compl. ¶ 1. Platinumtel sells cellular phones and prepaid wireless services to consumers in the Chicago market. It purchases the minutes it sells to consumers from Sprint PCS. EZ Stream and US Mobile also sell cellular phones and prepaid wireless services directly to consumers in the Chicago market. Unlike Platinumtel, EZ Stream and US Mobile do not purchase minutes directly from Sprint PCS. Rather, they purchase

minutes from Telispire which, like Platinumtel, acquires them from Sprint. In addition to providing them with minutes, Telispire provides EZ Stream, US Mobile and Natour with the technological platform necessary to support the wireless services and data they sell to consumers. Platinumtel alleges that EZ Stream and US Mobile, with Telispire's knowledge and assistance, misrepresent the connection fee charged for calls made on their prepaid wireless plans and arbitrarily deduct additional minutes from their customers' accounts.

Platinumtel became suspicious of EZ Stream's and US Mobile's conduct shortly after they began advertising prepaid wireless plans in 2006 below market rates, at prices Platinumtel contends "simply could not be profitable." *Id.* ¶ 34. One such advertisement is attached to the Amended Complaint. Ex. 1 to Am. Compl., Aqel Aff. ¶ 7. The advertisement states that the EZ Stream "Starter Card Promotion" offers 100 minutes of cell phone use during peak hours, plus unlimited cell phone use on nights and weekends, for $5.00. *See id.* at Ex. A. This and other similar statements led Platinumtel to believe that EZ Stream and US Mobile were profiting in an unadvertised capacity. *Id.* ¶ 7. In order to test its hypothesis, Platinumtel conducted an investigation from November 2007 to January 2008, which it describes in detail through the affidavits of Omar Aqel and Areej Malley.

**I.      Allegations regarding EZ Stream**.

In addition to the minutes actually used by its customers, EZ Stream represents that it charges a "one minute connection fee on all Talk More plans" for all calls placed during peak hours. Am. Compl. ¶ 43. To test whether EZ Stream honored this representation, Platinumtel employees purchased three EZ Stream phones from the Phone Plus store located at 2454 S. California Ave. in Chicago on November 21, 2007. Ex. 1 to Am. Compl., Aqel Aff. ¶ 9. The phones were assigned numbers (773) 559-1140, (773) 494-4532, and (773) 665-8063. *Id.*

Between December 27, 2007 and January 30, 2008, Platinumtel employees made several calls from the (773) 494-4532 number to a T-Mobile phone. The employees then compared EZ Stream's and T-Mobile's records to determine if there was any discrepancy in the length of the calls. Platinumtel found at least seven calls where EZ Stream overstated the duration. Platinumtel contends (and the attached T-Mobile's records show) that the duration of the seven calls was 59 minutes. According to EZ Stream's representations that one additional minute would be charged per connection, in addition to the actual number of minutes used, a maximum of 66 minutes should have been charged. *See id.* at Ex. D. The attached EZ Stream records show, however, that 90 minutes were deducted from the account for the seven calls. *See id.* at Exs. C, E. This results in a 24 minute overcharge. *Id.*

Platinumtel made nine additional calls on the (773) 494-4532 number which it contends lasted approximately 24 minutes. Platinumtel alleges that EZ Stream's records showed that 46 minutes had been expended.[1] Factoring in EZ Stream's connection charge, a total of 33 minutes should have been charged. *See* Ex. 1 to Am. Compl., Aqel Aff, at Ex. G. This results in a 13 minute overcharge. *Id.*

On November 27, 2007, Platinumtel used the (773) 559-1140 number to make two calls within 2 minutes of each other. In apparent error, EZ Stream's statement shows that 4 minutes were charged for each call.[2] *See id.* at Ex. H.

---

[1] Only part of the relevant EZ Stream records are attached.

[2] When a Platinumtel employee called EZ Stream's customer service to dispute the charge, the representative who answered stated that she would take up the matter with Sprint but represented that no EZ Stream supervisors were available. *See* Ex. 1 to Am. Compl., Aqel. Aff. ¶ 17.

Between November 23, 2007 and December 11, 2007, Platinumtel employees used the (773) 655-8063 number to make several calls. Platinumtel focuses on 18 calls which it contends lasted a total of 64 minutes or 82 minutes with the connection charge. EZ Stream's records show 102 minutes charged in reference to those calls, which Platinumtel contends constitutes a 20 minute overcharge. *See id.* at Exs. I and J.

## II. Allegations regarding US Mobile.

US Mobile represents that it charges customers an extra minute per day as a connection fee in addition to the number of minutes used during calls. Am. Compl. ¶ 38. To test the veracity of this statement, Platinumtel employees purchased two cellular phones from a US Mobile store, numbers (773) 953-3761 and (773) 953-3715. At the time of purchase, US Mobile represented that the phones came with 250 peak time minutes. Ex. 1 to Am. Compl., Aqel Aff. ¶¶ 20, 24.

During the 23 day period from December 20, 2007 to January 11, 2008, 15 calls were made using the (773) 953-3761 number. Platinumtel contends that the duration of the calls totaled 33 minutes. Factoring in the minute per day connection fee, Platinumtel asserts US Mobile should have charged a maximum of 56 minutes but alleges that, according to US Mobile records, it was charged 104 minutes, resulting in a 48 minute overcharge. *See id.* at Exs. K, L. During the 31-day period from December 20, 2007 to January 19, 2008, eight calls were made using the (773) 953-3715 number. Platinumtel contends that the duration of the calls totaled 14 minutes, which, with the connection fee, should have resulted in a maximum charge of 45 minutes. Platinumtel asserts that EZ Stream deducted 100 minutes from the account, which resulted in a 55 minute overcharge. *See id.*

In addition to the facts surrounding its investigation into US Mobile, Platinumtel contends that US Mobile withholds the terms and conditions of its prepaid wireless plans and misleads them into believing that it has a functioning customer service hotline. Am Compl. ¶¶ 38, 41.

## III. Allegations regarding Natour and the Quick Com Entities.

Platinumtel alleges that US Mobile and the Quick Com entities are owned by Natour and share common marketing and advertising plans and schemes. *Id*. ¶ 17. Platinumtel also contends that the Quick Com entities act as dealers for US Mobile and as such advertise and sell US Mobile's wireless programs and assist US Mobile in withholding terms and conditions of its wireless plans from consumers. *Id*. ¶¶ 39, 42. Platinumtel further states that its research reveals that US Mobile and the Quick Com entities, with the exception of EZ Com, are dissolved corporations. *Id*. ¶¶ 9-17; Ex. 1 to Am. Compl., Aqel Aff. ¶ 33.

## IV. Allegations regarding Telispire.[3]

Platinumtel alleges that EZ Stream and US Mobile purchase minutes from Telispire, which provides the technological platform on which they set rates, coordinate billing, prepare call detail reports and add or deduct minutes from their customers' accounts. Am Compl. ¶¶ 29, 36. Telispire does not sell prepaid wireless service directly to consumers and Platinumtel does not allege that Telispire made any false representations directly to consumers.[4] Platinumtel

---

[3] Most of Platinumtel's allegations regarding Telispire are made "on information and belief."

[4] Platinumtel alleges that "Telispire markets and sells voice and data services through its business partners . . . . *and* through direct retail sales," Am. Compl. ¶ 29 (emphasis added). None of Platinumtel's allegations concern retail sales by Telispire, however, and Telispire vigorously represents that it does not sell prepaid wireless services directly to consumers in Chicago. *See* Telispire's Mem. in Supp. at 2, referencing the court's May 19, 2008 Stip. Order ¶ 10. Moreover, Platinumtel appears to concede in its response to Telispire's motion that Telispire does not actually sell prepaid wireless services to consumers

alleges that Telispire is aware of the prepaid wireless programs offered by EZ Stream and US Mobile and knowingly assists them in misrepresenting their connection fees and arbitrarily adding time to their customers' calls. *Id.* ¶ 37. On December 12, 2007, Platinumtel contacted Telispire's CEO and requested Telispire intervene. Ex. 1 to Am. Compl., Aqel Aff. ¶ 27. Telispire failed to do so. *Id.*

## DISCUSSION

### I.      Telispire's Motion to Dismiss [#46].

Telispire argues that this is a dispute between Platinumtel and the other defendants and moves to be dismissed from all counts of the complaint.

#### A.      False Advertising under the Lanham Act (Count I).

Telispire makes two main arguments in support of its dismissal from Platinumtel's Lanham Act claim. First, Telispire argues that Platinumtel lacks standing to assert a Lanham Act claim because Platinumtel alleges no competitive injury. Second, Telispire argues that Platinumtel fails to allege any false statements attributable to Telispire.

##### 1.      Whether Platinumtel has standing to sue Telispire.

Making false representations in advertising concerning the qualities of services is a basis of liability under the Lanham Act. *L&S Heath & Son, Inc.* v. *AT&T Information Systems, Inc.*, 9 F.3d 561, 575 (7th Cir. 1993). In order to satisfy the Lanham Act's standing requirement for false advertising claims, "the plaintiff must assert a discernible competitive injury." *Id.* (citing *Waits v. Frito-Lay, Inc.,* 978 F.2d 1093, 1108 (9th Cir. 1992)) (affirming grant of summary judgment to defendant because plaintiff, a candy manufacturer, was not a competitor of AT&T);

---

in the Chicago market. *See* Platinumtel's Resp. to Telispire's Mot. at 3, 7. Accordingly, the court will not accept this allegation as true.

*accord Johnny Blastoff, Inc.* v. *Los Angeles Rams Football Co.*, 188 F.3d 427, 438-39 (7th Cir. 1999) (affirming district court's determination that plaintiff, in the business of creating and marketing cartoon characters, lacked standing to sue defendants, football organizations and football league). In *L&S Heath*, the Seventh Circuit rejected the plaintiff's claim of false advertising on the basis that it was not a competitor of the defendant but did not discuss the discernible injury requirement in detail. *See L&S Heath*, 9 F.3d at 575. Without further guidance from the Seventh Circuit, Telispire turns to caselaw from other circuits to argue that retailers do not have standing to sue their competitors' suppliers or wholesalers for false advertising. *See* Mot. at 6. To support this proposition, Telispire relies on the Third Circuit's opinion in *Conte Bros. Auto., Inc.* v. *Quaker State-Slick 50, Inc.*, 165 F.3d 221 (3d Cir. 1998) (Alito, J.) and the Second Circuit's opinion in *Telecom Int'l Am., Ltd.* v. *AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001).

   *Conte Bros.* involved a false advertising claim brought by retail sellers of engine lubricants against manufacturers of Slick 50 motor oil for exaggerating its effectiveness. The court rejected the district court's legal conclusion that "only direct competitors or their surrogates have standing," instead affirming on the basis that the plaintiff lacked standing under the multi-factor test for antitrust standing set forth by the Supreme Court in *Assoc. Gen. Contractors of Cal., Inc.* v. *Cal. State Council of Carpenters*, 459 U.S. 519, 74 L. Ed. 2d 723, 103 S. Ct. 897 (1983).[5] *Id.* at 232-33. The factors identified in *Assoc. Gen. Contractors* are (1)

---

[5] Before applying antitrust standing case to the facts in *Conte*, the Third Circuit surveyed cases from other courts of appeals and noted that the First and Second Circuits had allowed suits against a defendant who was not in direct competition while cases from the Ninth, Tenth and Seventh Circuits appeared to hold or state the contrary, including *L&S Heath*. *Id.* at 231 (internal citations and quotations omitted).

the nature of the plaintiffs alleged injury: "Is the injury of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws?" *Id.* at 233 (internal quotation marks omitted); (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages. *Id.* at 233. Applying those factors to the facts of *Conte*, the Third Circuit found that they weighed against judicial enforcement of the plaintiffs claim.

In contrast to the approach set out in *Conte*, *Telecom* appears to require that the plaintiff be a direct competitor of the defendant to have standing to allege a false advertising claim. In *Telecom*, the plaintiff was a telephone service reseller and the defendant was a telecommunications services provider. Citing to *L&S Heath*, the Second Circuit applied the rule that "[t]o have standing for a Lanham Act false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury." *Id.* at 197 (internal citations omitted). The court affirmed the dismissal of the plaintiff's claim for lack of standing because it was not a competitor of the defendant in its relevant role as an equipment service provider. *Id.* at 197.[6]

Like the Second Circuit, other judges within this district have required that the plaintiff and defendant be direct competitors, *i.e.*, that the plaintiff "show that it competes at the same level of business as the defendant." *Medallion Prods., Inc.* v. *McAlister*, No. 06 C 2597, 2008 US Dist. LEXIS 95554, at *56 (N.D. Ill. Nov. 20, 2008) (Bucklo, J.) (companies engaged in the

---

[6]The court did not acknowledge *PPX Enterprises, Inc.* v. *Audiofidelity, Inc.* 746 F.2d 120 (2d Cir.1984) (cited in *Conte*, 165 F. 2d at 323, for the proposition that the Second Circuit does *not* require direct competition).

design, manufacture, and marketing of a pet stain removal product to distributors lacked standing

to sue companies engaged in the marketing and selling of pet stain removal products to

consumers, suppliers and retailers); *accord Gail Green Licensing & Design, Ltd.* v. *Accord, Inc.*,

No. 05 C 5303, 2006 US Dist. LEXIS 72713, at *13-16 (N.D. Ill. Oct. 5, 2006) (St. Eve., J)

(companies engaged in developing, acquiring and licensing commercial products lacked standing

to sue retailers and manufacturers of pet accessories and clothing); *Goodloe* v. *Nat'l Wholesale*

*Co., Inc*., No. 03 C 7176, 2004 US Dist. LEXIS 13630, at *33-35 (N.D. Ill. July 16, 2004) (Filip,

J.) (customized computer retailer lacked standing to sue a developer of internet businesses and a

computer and electronic wholesaler, neither of which sold computer products to consumers).[7]

Even if the *Conte* factors were applied here, and if conceded that the alleged harm has

interfered with Platinumtel's ability to compete, Telispire's involvement in that harm is remote,

indirect, and speculative. Standing would certainly raise the policy issue the Third Circuit

expressed:

> [R]ecognizing the right of every potentially injured party in the distribution chain
> to bring a private damages action would subject defendant firms to multiple
> liability for the same conduct and would result in administratively complex
> damages proceedings. Additionally, such a holding could result in an enormous
> number of relatively insignificant cases being litigated in the federal courts. If
> every retailer had a cause of action for false advertising regardless of the amount
> in controversy, regardless of any impact on the retailer's ability to compete,
> regardless of any impact on the retailer's good will or reputation, and regardless
> of the remote nature of the injury suffered, the impact on the federal courts could

---

[7]Platinumtel argues that the competitive injury standing requirement is satisfied where the plaintiff alleges that the parties compete in the same *line* of business, even if they do not compete at the same *level* of business. *See* Resp. at 9. Both cases on which Platinumtel relies, however, involved competitors competing at the same *level* of business. In *Morton Grove Pharmaceuticals, Inc.* v. *The National Pediculosis Assoc.*, 494 F. Supp. 2d 934, 937-38 (N.D. Ill. 2007), both parties sold competing products (lice combs and lice shampoo) to consumers, and in *Euclid Ins. Agencies, Inc.* v. *Scottsdale Ins. Co.*, No. 95 C 3308,1998 U.S. Dist. LEXIS 1471, at *3-4 (N.D. Ill Feb. 5, 1998), both profited directly from sales to consumers (sales of insurance policies and royalties on sales of insurance policies).

be significant.

165 F.3d at 235.  In light of these concerns, it is unlikely that the Seventh Circuit would  open the door wider than *L&S Heath* to permit Platinumtel to sue Telispire on the facts presented here. Accordingly, Platinumtel lacks standing to bring a false advertising Lanham Act claim against Telispire.

> **2.      Whether Platinumtel has alleged facts sufficient to conclude that Telispire could be held liable for the other defendants' false statements.**

 Even if Platinumtel properly alleges standing to sue Telispire, Telispire argues that its claims would still fail because not one of its allegations involves false statements made by Telispire.  Platinumtel does not proceed on that theory, however, but seeks to hold Telispire accountable for the statements made by the other defendants under a theory of joint tortfeasor liability;[8] in other words, Telispire is liable for the false statements of other defendants.[9]

For its definition of joint tortfeasor liability, the Restatement (Second) of Torts states that "one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself."

---

[8] Telispire contends that Platinumtel is attempting to hold Telispire liable on an aiding and abetting theory of liability, but the main case on which Telispire relies to argue that Platinumtel has failed to allege how Telispire could be liable for US Mobile's and EZ Stream's misrepresentations involves joint tortfeasor liability.  *See* Telispire's Mem. in Supp. at 8.  Because Platinumtel argues that Telispire is liable as a joint tortfeasor, Resp. at 10-11, and because the court finds that Platinumtel has not adequately articulated a joint tortfeasor theory of liability, the court will not address Telispire's aiding and abetting argument.

[9] To establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove, *inter alia*, a false statement of fact by the defendant in a commercial advertisement about its own or another's product." *Hot Wax, Inc.* v. *Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). In addition, "a plaintiff must prove both actual damages and a causal link between the defendant's violation and those damages." *Id.*

RESTATEMENT (SECOND) OF TORTS § 876(b).[10]  Joint tortfeasor liability has been applied in the context of unfair competition.  *E.g., Allen Organ Co.* v. *Galanti Organ Builders, Inc.*, 798 F. Supp. 1162, 1172 (E.D. Pa. 1992) (citing cases).

Telispire relies on *Allen Organ* to argue that Platinumtel's allegations are not sufficient to hold Telispire liable as a joint tortfeasor for the alleged false statements made by EZ Stream and US Mobile.  798 F. Supp. 1162 (E.D. Penn. 1992).  In *Allen Organ*, a manufacturer and seller of electric church organs brought a false advertising claim against the manufacturer and distributor of a competing product, the Galanti electronic organ.  *Id*. at 1170.  The plaintiff sought to hold the manufacturer and distributor liable as joint tortfeasors for false representations prepared and disseminated by Galanti Organ Builders, Inc. ("GOBI"), the company responsible for marketing the Galanti organ.[11]  *Id*.  Under the Restatement's rule that a defendant must know that the other's conduct constitutes a breach of duty and give substantial assistance or encouragement to the other, the plaintiff's claim failed at trial.  *Id*. at 1171. The court cited lack of evidence showing that the manufacturer and distributor had reviewed, understood or knew the advertisements to be false.  *Id*. at 1170, 1172.  Like the plaintiff in *Allen Organ*, Platinumtel seeks to hold Telispire liable as a joint tortfeasor for false statements it did not independently prepare and disseminate.  Thus, in order to proceed on its claim against Telispire, Platinumtel

---

[10] *See also Hampton* v. *Hanrahan*, 600 F.2d 600, 627 (7th Cir. 1979) (Joint tortfeasor liability arises when persons "who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit are equally liable." ) (internal quotations and citations omitted).

[11] Plaintiff and GOBI settled before the trial.  *Allen Organ*, 798 F. Supp. at 1170.

must allege that Telispire knew of EZ Stream's and US Mobile's conduct and substantially assisted them in undertaking it.[12]

Platinumtel fails to allege that Telispire was aware of the false advertising at issue. Platinumtel alleges, on information and belief,[13] that Telispire knew of the false statements because it received billing and reconciliation documents regarding EZ Stream and US Mobile from Sprint, and because Telispire provides the technological platform that allows EZ Stream and US Mobile to set rates, coordinate billing, prepare call detail reports and add and deduct minutes from their customers' accounts. Am. Compl. ¶¶ 29, 37. Platinumtel further asserts that it informed Telispire in 2007 that the defendants were making false advertisements and provided Telispire with proof of the same.[14] Platinumtel's Resp. at 11. As Telispire points out, none of these allegations, if proved, would permit the inference that Telispire actually knew of the defendants' false advertising. Telispire's Reply at 7-8. Under the most liberal reading, the

---

[12]The court is not convinced, as Platinumtel contends, that it need only show that Telispire had knowledge of the fraud *or* that it participated in carrying it out. Resp. at 10 (emphasis in original). As set out above, under the Restatement and *Allen Organ*, a plaintiff must allege both knowledge and substantial assistance.

[13] "[A]llegations made 'upon information and belief' are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions." *Uni*Quality*, 974 F.2d at 924.

[14]This statement is misleading because it does not appear from the allegations of the Amended Complaint that Telispire was made aware of the conduct at issue when it was undertaken. For instance, Aqel's affidavit states that he alerted Telispire to the fact that EZ Stream and US Mobile were over billing their customers on December 12, 2007. Ex. 1 to Am. Compl., Aqel Aff. ¶ 27. At that time, Platinumtel was in the midst of its investigation of EZ Stream and had collected evidence that it was over billing customers. *See id.* ¶¶ 9-18. This means that Platinumtel did not alert Telispire about at least some of EZ Stream's misrepresentations until after EZ Stream had made them. In addition, it is not clear that Platinumtel had even begun investigating US Mobile by December 12, 2007 because all of the relevant allegations regarding US Mobile occurred after that date. *See id.* ¶¶ 20- 25. Moreover, Platinumtel does not allege that it provided the information it later gathered regarding US Mobile's conduct to Telispire.

allegations support a permissible inference that Telispire knew that EZ Stream and US Mobile were arbitrarily deducting minutes from their customers accounts–a practice Platinumtel contends was inconsistent with or contrary to their representations to consumers. This allegation is insufficient, however, because Platinumtel fails to allege that Telispire was at the same time aware of the content of EZ Stream's and US Mobile's advertisements.

Platinumtel also fails to allege that Telispire substantially assisted or encouraged EZ Stream's and US Mobile's conduct. Platinumtel alleges, again on information and belief, that Telispire "substantially assists" the other defendants in falsely representing the amount of minutes their customers would be charged and in arbitrarily deducting minutes from customers' accounts by providing EZ Stream and US Mobile with the technological platform to manage their accounts and website support. Am. Compl. ¶ 73. It appears that the act of providing the technological platform is all that Platinumtel can allege as wrongdoing by Telispire. Although at this stage the question is only whether the claim has been adequately pled, the court is not persuaded that this fact alone is sufficient to raise the right to relief above the speculative level. Unless Platinumtel can allege (a) that Telispire knew that EZ Stream and US Mobile intended to misrepresent the amount of minutes their customers would be charged in their advertisements and, knowing that, provided EZ Stream and US Mobile with the technological platform which allowed them to over bill minutes; or (b) that Telispire knew that its technological platform was needed in order for EZ Stream and US Mobile to overbill their customers while simultaneously misrepresenting the amount of minutes which would be billed, therefore enabling EZ Stream and US Mobile to perpetrate the fraud, the allegations will be insufficient to survive a motion to dismiss.

Passively providing EZ Stream and US Mobile with the technological platform to manage their accounts is not sufficient to show that Telispire knew and substantially assisted them in making false representations in advertising. Because Platinumtel does not tie the technological platform provided by Telispire to Platinumtel's alleged injuries, its § 43(a) Lanham Act claim against Telispire fails.

### B. Violations of the ICFA and of the IUDTPA (Counts II and III).

The parties agree that claims brought under the ICFA and IUDTPA are governed by the same criteria as claims brought under the Lanham Act. Resp. to Telispire's Mot. at 10. *See also MJ Partners Restaurant Ltd.* v. *Zadikoff*, 10 F. Supp. 2d 922, 929 (N.D. Ill. 1998) ("[C]ommon law unfair competition claims . . . . must rise or fall based on the Lanham Act."); *Spex, Inc.* v. *Joy of Spex*, 847 F. Supp. 567, 579 (citing *Gimix, Inc.* v. *JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)) ("Claims for unfair competition and deceptive business practices brought under Illinois [consumer fraud] statutes are to be resolved according to the principles set forth under the Lanham Act."). As Platinumtel's Lanham Act claim fails, so too do its ICFA and IUDTPA claims (Counts II and III).

### C. Civil Conspiracy between Telispire and EZ Stream (Count IV) and between Telispire, US Mobile and the Quick Com entities (Count V).

Telispire argues that Platinumtel's civil conspiracy claims must be dismissed because Platinumtel has failed to state a claim against Telispire for committing a violation of the underlying statutes. Telispire's Mem. in Supp. at 13. In Illinois, "[c]ivil conspiracy requires 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.'" *Zic* v. *Italian Government Travel Office*, 130 F. Supp. 2d 991, 996 -997 (N.D. Ill. 2001), quoting *Buckner v. Atlantic Plant*

*Maintenance, Inc.,* 182 Ill. 2d 12, 230 Ill. Dec. 596, 694 N.E.2d 565, 571 (1998).  A plaintiff

may "bring a cause of action for civil conspiracy against an individual who has planned, assisted

or encouraged another individual to commit a wrong against the plaintiff."  *Cumis Ins. Soc'y* v.

*Peters*, 983 F. Supp. 787, 794 (N.D. Ill. 1997) (citing *Adcock* v. *Brakegate, Ltd.*, 163 Ill. 2d 54,

63, 645 N.E.2d 888, 893-94, 206 Ill. Dec. 636 (Ill. 1994)).  "To have a cause of action for civil

conspiracy, an underlying wrong must exist. Accordingly, to state a claim for civil conspiracy,

the plaintiff must sufficiently allege that an underlying wrong existed."  *Cumis Ins. Soc'y*, 983 F.

Supp. at 794. (Citations omitted).  As indicated above, a conspiracy claim sounding in fraud

must be pled with particularity.  Where the plaintiff has failed to sufficiently allege that an

underlying wrong existed, courts will dismiss the corresponding conspiracy claims.  *See*, *e.g.*,

*Zic* v. *Italian Gov't Travel Office*, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001) (granting motion to

dismiss civil conspiracy claim where underlying promissory fraud claim had been rejected);

*Cumis*, 983 F. Supp. at 794 (N.D. Ill. 1997) (granting motion to dismiss civil conspiracy claims

where complaint failed to state a claim for fraud and conversion).

Platinumtel's complaint does not specify the underlying torts that support its conspiracy

claims; however, Platinumtel clarifies in its response that its civil conspiracy claims are based on

Telispire's and the other defendants' alleged violations of the Lanham Act, the ICFA and the

IUDTPA.  Whether this is any different from the joint tortfeasor claim is unclear.  Even if it is,

the question again is whether the only factual allegation, that Telispire provides a technological

platform to EZ Stream and US Mobile that permits them to violate the law (as set out below,

Platinumtel's false advertising claims against EZ Stream and US Mobile survive the motion to

dismiss), is sufficient to raise the right to relief above a speculative level.  The court is persuaded

that it does not, because it would expand the notion of conspiracy to encompass any seller of a

product that was used by its distributor for illegal ends. Because Platinumtel has not sufficiently alleged that Telispire conspired with EZ Stream and US Mobile to violate the Lanham Act, ICFA and IUDTPA, Counts IV and V fail as to all defendants.[15]

**II.     EZ Stream's, US Mobile's and Natour's Motions to Dismiss [#49 & 62]**.

EZ Stream, US Mobile and Natour all move to dismiss the Amended Complaint for failure to plead with specificity the false advertisements they allegedly disseminated in violation of § 43(a) of the Lanham Act, the ICFA and the IUDTPA. Further, Natour contends that Platinumtel has failed to establish a basis for holding him personally liable for the false statements made by US Mobile and the Quick Com entities.

To succeed on a claim under the false or deceptive advertising prong of § 43(a), a plaintiff must prove (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products. *Hot Wax*, 191 F.3d at 819-20 (citing *B. Sanfield, Inc.* v. *Finlay Fine Jewelry Corp.*, 168 F.3d 967, 971 (7th Cir. 1999)). If Platinumtel successfully pleads a Lanham Act false advertising claim against EZ Stream, US Mobile and Natour, its claims against them

---

[15] Platinumtel cannot maintain Count IV, its claim for civil conspiracy between Telispire and EZ Stream, with EZ Stream as the only remaining defendant. Similarly, Platinumtel cannot maintain Count V, its other claim for civil conspiracy between Telispire, US Mobile and the Quick Com entities, with US Mobile and the Quick Com entities as the only remaining defendants because they are commonly owned and operated by Natour and, therefore, are not separate entities. *See infra* at II©.

for false advertising in violation of the ICFA and the IUDTPA will also withstand their motion to dismiss. *See supra* at I(B).

A.    **Whether Platinumtel's allegations regarding EZ Stream's violations of the Lanham Act (Count I), the ICFA (Count II) and the IUDTPA (Count III) are sufficient under Rule 9(b).**

EZ Stream argues that Platinumtel fails to plead facts sufficient to support the first and fourth elements of a false advertising claim under § 43(a). First, EZ Stream contends that Platinumtel does not specifically identify a false statement contained in its advertisements. EZ Stream's Mem. in Supp. at 3-4. Second, EZ Stream asserts that Platinumtel fails to show how its allegedly false statements entered into interstate commerce. *Id.*

Platinumtel identifies the false statements at issue: EZ Stream misrepresents that "calls made or received during peak time are billed at a one minute connection fee on all Talk More plans." Am. Compl. ¶ 43. Not only does Platinumtel generally describe the alleged false advertising scheme undertaken by EZ Stream, it also specifically describes the method through which EZ Stream routinely makes the misrepresentations (point of purchase posters and literature, packaging and voice prompts), *id.* ¶¶ 55, 60, the persons to whom EZ Stream made similar misrepresentations (Aracely Morales, Nadia Deeb and Naheel Hinwai), Ex. 2 to Am. Compl., Malley Aff. ¶ 2, the time when they were made (November 21, 2007), *id.* ¶ 3, where they were made (at the Phone Plus Store located at 2454 S. California Ave.), *id.*, and how they were made (in connection with the purchase of EZ Stream's phones assigned the numbers (773) 559-1140, (773) 494-4532, and (773) 665-8063). *Id.* Accordingly, Platinumtel fulfills its obligation to describe the who, what, when, where, and how of the false advertisements allegedly disseminated by EZ Stream.

Platinumtel also adequately alleges how EZ Stream's allegedly false advertisements enter into interstate commerce. EZ Stream's Mem. in Supp. at 3-4. Citing *Wobble Light* v. *McLain/Smigiel Partnership*, Platinumtel argues that it need only show that falsely advertised goods or services, not the actual advertisements, enter into the stream of interstate commerce. 890 F. Supp. 721, 725 (N.D. Ill. 1995). Platinumtel further argues that it has sufficiently shown that the prepaid cell phones sold by EZ Stream enter into interstate commerce because cellular phones are themselves considered "instruments of interstate commerce." *United States* v. *Clayton*, 108 F.3d 114, 117 (9th Cir. 1997). EZ Stream insists that Platinumtel's allegations are insufficient and contends that "Platinumtel must still establish that EZ Stream's goods entered into interstate commerce" but presents no authority to rebut Platinumtel's position. EZ Stream's Reply at 3. Both EZ Stream and Platinumtel fail to acknowledge that the claims at issue involve statements about prepaid wireless services, not goods. With this distinction in mind, it is clear that EZ Stream's prepaid wireless services "enter" interstate commerce because they are ultimately supported by "Sprint's nationwide cellular network." Ex. 1 to Am. Compl., Aqel Aff. ¶ 6. Accordingly, the court finds that Platinumtel sufficiently establishes the fourth element of a false advertising claim under the Lanham Act.

### B. Whether Platinumtel's allegations regarding US Mobile's and Natour's violations of the Lanham Act (Count I), the ICFA (Count II) and the IUDTPA (Count III) are sufficient under Rule 9(b).

US Mobile and Natour contend, without discussion of the allegations set forth in the Amended Complaint, that Platinumtel fails to plead the alleged fraudulent activity with the specificity required by Rule 9(b). *See* US Mobile and Natour's Mem. in Supp. at 4. As Platinumtel demonstrates, however, it alleges specific facts in support of each element of a false advertising Lanham Act claim and, consequently, the Illinois consumer fraud claims.

Platinumtel states generally that US Mobile and Natour d/b/a the Quick Com entities, through the use of point-of-purchase posters and literature, website advertisements, voice prompts and packaging, Am. Compl. ¶¶ 55, 60, routinely misrepresent that calls made or received during peak time are billed at a one-minute connection fee, *id*. ¶ 40, and that they arbitrarily deduct minutes from their customers accounts to make them erode more quickly. *Id*. Platinumtel also alleges that US Mobile and Natour d/b/a the Quick Com entities further mislead consumers to believe that they offer a customer service hotline when the number is, in fact, frequently disconnected. *Id*. ¶ 41. Platinumtel clearly lays out the who, what, when, where and how of their allegedly fraudulent activity by stating that false representations consistent with the scheme described above were made to its employees at one of the US Mobile locations, in the Chicago area, during December 2007, when the employees purchased US Mobile phones assigned the (773) 953-3761 and (773) 953-3715 numbers. Ex. 1 to Am. Compl., Aqel Aff. ¶¶ 20-25. Accordingly, Platinumtel adequately states a claim against US Mobile and Natour d/b/a the Quick Com entities under § 43(a) of the Lanham Act, the ICFA and the IUDTPA.

**C.   Whether Platinumtel has adequately established a basis for holding Natour personally liable for the false representations allegedly made by US Mobile and the Quick Com entities.**

Natour argues that he should be dismissed as a defendant because Platinumtel fails to make "piercing the corporate veil" allegations sufficient to establish his personal liability for statements made by US Mobile and the Quick Com entities. US Mobile's and Natour's Mem. in Supp. at 4-5. Platinumtel responds that it is not seeking to pierce the corporate veil, because US Mobile and the Quick Com entities, with the exception of EZ Com, are dissolved corporations. Resp. to US Mobile's and Natour's Mot. at 3, 12.

The notice pleading requirements of Rule 8(a), rather than the heightened pleading requirements of Rule 9(b), apply to Platinumtel's allegations regarding Natour's personal liability. *See Flentye* v. *Kathrein*, 485 F. Supp. 2d 903, 912-13 (N.D. Ill. 2007) (Rule 9(b) does not apply to piercing the corporate veil allegations); *see also Graebel/Los Angeles Movers, Inc.* v. *Johnson*, No. 04 C 8282, 2006 US Dist. LEXIS 8273, at *22-24 (N.D. Ill. Mar. 1, 2006) (applying Rule 8(a) notice pleading standards and denying motion to dismiss where plaintiff alleged defendant was a dissolved corporation which conducted business after involuntary dissolution).

Platinumtel alleges that US Mobile uses the Quick Com entities to sell phones and prepaid wireless services, Am. Compl. ¶¶ 17, 27, 42, and that they share common ownership and a common marketing and advertising scheme. *Id*. ¶ 17. Platinumtel further contends that Natour is personally liable for the statements made by US Mobile and the Quick Com entities because they are dissolved corporations.[16] *See* Ex. 1 to Am. Compl., Aqel Aff. ¶ 33; Resp. to US Mobile's and Natour's Mot. at 3, 12. Corporate officers who conduct corporate business during a period of dissolution are personally liable. *See Gonnella Baking Co.* v. *Clara's Pasta Di Casa, Ltd.*, 337 Ill. App. 3d 385, 389, 786 N.E.2d 1058, 1062 (Ill. App. Ct. 1st Dist. 2003). There is no need for Platinumtel to pierce the corporate veil, as Natour is not currently behind one. *See DFS Secured Healthcare Receivables Trust* v. *Caregivers Great Lakes, Inc.*, 384 F.3d 338, 344 (7th

---

[16] Natour filed his motion to dismiss "individually, and d/b/a US Mobile, Quick Com, Quick Com II, Quick Com Cellular Corp., EZ Com, and Quick Com Chicago." He does not contend that these entities are not dissolved, nor does he contend that he does not conduct business under the name of any of the Quick Com entities. Furthermore, as of December 18, 2008, the Illinois Secretary of State's online corporations database revealed that US Mobile, Inc., Quick Comm, Inc., Quick Com II, Inc. and Quick Comm Cellular Corporation had been involuntarily dissolved, while E Z Com Chicago, Inc. d/b/a Quick Com-Chicago is a valid Illinois Corporation in good standing.

Cir. 2004). Platinumtel has satisfied the pleading requirements of Rule 8(a) because it has pled facts sufficient to put Natour on notice that he may be personally liable for false statements made by the US Mobile and the Quick Com entities.

## CONCLUSION AND ORDER

For the foregoing reasons, Telispire's motion to dismiss [#46] is granted, EZ Stream's motion to dismiss [#49] is denied, and US Mobiles' and Natour's motion to dismiss [#62] is denied. Accordingly, Telispire is dismissed as a defendant from Counts I through III, and Counts IV and V are dismissed entirely. Plaintiff will be given one opportunity to replead its claims against Telispire in light of the Memorandum Opinion. Any amended complaint shall be filed by January 23, 2009.

Dated: December 30, 2008          Enter:  _____
                                          JOAN HUMPHREY LEFKOW
                                          United States District Judge